THE STATE EDUCATION DEPARTMENT
UNIVERSITY OF THE STATE OF NEW YORK
------------------------------------------------------------------------X
In the Matter of the Disciplinary Proceeding between

**NEW YORK CITY DEPARTMENT OF EDUCATION**,                    SED File No. 32,002
                               Complainant,
       and                                                                                  **OPINION**
                                                                     AND
**MARGUERITE BAGAROZZI**                                                      **AWARD**
                                  Respondent.

Pursuant to Education Law Section 3020-a
------------------------------------------------------------------------X
Before **LISA C. CHARLES, Hearing Officer**

**APPEARANCES:**

**For the Complainant**
    **Kereen Evans-McKay, Esq.**
    **NYC Department of Education, Office of Legal Services**

**For the Respondent**
    **David Eisenstein, Esq.**
    **Office of Robert T. Reilly**

## INTRODUCTION

Pursuant to the provisions of New York State Education Law §3020-a, I was appointed to hear and decide whether there is just cause for the proposed disciplinary action against Respondent, Marguerite Bagarozzi. The pre-hearing conference was held on October 18, 2017. Hearings were thereafter conducted at the offices of the New York City Department of Education at 100 Gold Street in New York City, New York on December 12, 13, 19, 2017, and January 3, 8, and 10, 2018, when the record was closed.

Both parties were represented by counsel in this proceeding and had a full and fair opportunity to adduce evidence, cross-examine witnesses and make arguments in support

1

of their respective positions.  The evidence adduced, the legal authorities cited and all the positions and arguments set forth by the parties have been fully considered in the preparation and issuance of this Opinion and Award, whether or not specifically mentioned herein.

## CHARGES AND SPECIFICATIONS[1]

**MARGUERITE BAGAROZZI** (hereinafter referred to as "Respondent"), under File No.776305, is a tenured teacher assigned to the Queens Academy High School located in Queens, New York.  During the 2014-2015 and 2016-2017 school years, Respondent engaged in conduct unbecoming her profession and neglected her duties as follows:

### In Particular:

**SPECIFICATION 1**: On or about April 13, 2015, Respondent:

1. Refused to assist student ▌ when he asked for an explanation regarding written feedback given to him by the Respondent for revising an essay.

2. Caused ▌ to experience stress, and/or anxiety, and/or panic, and/or feel uncomfortable.

**SPECIFICATION 2**:  On or about December 22, 2016, Respondent attempted to defraud the New York City Department of Education in order to gain a personal benefit, in that Respondent deliberately staged her own fall, in that she placed a bag on the ground and proceeded to trip over it.

**SPECIFICATION 3**:  On or about December 2016, Respondent attempted to defraud the New York City Department of Education in order to gain a personal benefit, in that Respondent completed and submitted document(s) purporting to explain an incident pertaining to an injury that allegedly occurred back on December 22, 2016, when in fact such incident or injury did not occur.

---

[1] D1. Exhibits will be referred to herein as J for Joint, D for Department, and R for Respondent followed by the number.

**SPECIFICATION 4:** By committing one, some or all of the actions described in Specifications 1, Respondent acted in a manner that had or would have had the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical well-being.

**SPECIFICATION 5:** By committing one, some or all of the actions described in Specifications 1, Respondent knowingly acted in a manner likely to be injurious to the physical mental or moral welfare of a child less than seventeen years old.

### The foregoing Constitutes:
-Just cause for disciplinary action pursuant to Section §3020-a
 of the Education Law:
-Neglect of duty;
-Verbal abuse
- Substantial cause rendering Respondent unfit to perform her obligations properly to the service;
-Conduct unbecoming Respondent's position, or conduct prejudicial to the good order, efficiency, or discipline of the service;
-A violation of the By-laws, Rules and Regulations of the Chancellor, School
 and/or District;
-Just Cause for termination

### BACKGROUND

Respondent Marguerite Bagarozzi is a tenured teacher, who has been employed by the Department since September 2000, and has worked at Queens Academy High School since September 2007, where she teaches English classes. Prior to her employment with the Department, the Respondent was a teacher and/or administrator at several colleges beginning in 1970.  Queens Academy High School (School) is an alternative high school that serves students 16 to 21 years old who are behind in their graduation credits for their age. At all material time, either Vasilios Manolios (Principal Manolios) or Shamari Akil (Principal Akil) were the School's leaders. During the 2014-2015 school year, the timeframe alleged in Specifications 1, Respondent taught a class entitled Man's Inhumanity

to Man, in which student ▇ (hereafter referred to as Student H[2]) was enrolled. Student H claims that Respondent refused to assist him with an essay assignment and he failed the class. During the 2016-2017 school year, the timeframe alleged in Specification 2, the Respondent fell in the hallway outside of her classroom.

## **FACTS**

The Department presented Student H, who testified that he was behind in his graduation credits because he took a leave from high school for health reasons, that he transferred to the School because his brother had attended and had a good experience, that the teachers at the School were better than the ones at his previous high school, and that his grades improved and he participated in extra curriculum activities at the School. Student H said that prior to this incident, he had an Advisory class with the Respondent, that the Respondent supported him on his run for Student Counsel President, and that she wrote him a recommendation for college.

Student H testified that when he took the Respondent's class entitled Man's Inhumanity to Man, she gave the class a rubric, that explained how to write the introduction and the following paragraphs for the final essay assignment, and that he turned in an outline and the Respondent helped him with it. Student H said that he turned in a draft essay on which Respondent wrote comments. She also made comments on the rubric.

---

[2] The full name of each student was provided to Respondent, however to protect student confidentiality, the students will be referred to herein by letter.

The Respondent's comments on Student H's rubric after his first draft are:

> **I reviewed your work with you, went over the outline and checklist, works cited, et al. You have come nowhere near fulfilling the requirements of this essay. Even the format does not approach proper style. I have also modeled every aspect of the assignment-did you not listen? Re-do!**

Student H said that he asked the Respondent for help and she said "no." She told him to follow the comments she had written, but he did not understand what her comments meant. Student H said that the Respondent did not explain why his essay was wrong. She gave him no guidance on how to correct the essay, but she gave that assistance to other students. Student H said that he sought assistance to rewrite the essay from other students, the other English teacher, and the Children's Based Organization (CBO) director who is stationed at the School, and that he rewrote the essay. Student H said that the Respondent told him that he was not allowed to ask students for help and moved one student's seat to prevent him from helping.  Student H stated that that he was unaware of the importance of the final essay grade until a student told him that the essay would be the determining factor for his grade in the class, and that he was panicked about not passing the class because of a low score on the essay.

The Respondent's comments on Student H's second attempt are as follows:

> **You have not met the requirements of this essay. You have refused to accept constructive criticism from your peers and you have ignored me and my attempts to assist you. The result speaks for itself. 1.5**

Student H testified that he, his mother and brother met with the Respondent and Principal Manolios to learn what he could do to pass the class, but the Respondent made a

5

rude comment to his mother and the Respondent left the meeting. Student H said that he filed a complaint that the Respondent refused to assist him.

The Department presented Principal Manolios, who was the interim acting Principal during the 2014-2015 school year. He stated that Student H's mother requested the meeting with him and the Respondent to find out what could be done to help Student H pass the class. Principal Manolios said that he scheduled and attended the meeting with Student H and his family and the Respondent. He quoted the Respondent as saying to Student H's mother, who is partially blind, "Unlike you I can see," and that the Respondent left the meeting.

Principal Manolios testified that he conducted the school-based investigation of Student H's complaint. Principal Manolios said that he interviewed Student H, read the Respondent's comments on Student H's essay and rubric, randomly selected and interviewed other students, interviewed the CBO director, and interviewed the Respondent. The other students and the CBO director confirmed Student H's allegation that the Respondent refused to assist Student H. Principal Manolios stated that the Respondent's written feedback should be instructive for the students to help them revise their work, that it is against the School grading policy for the Respondent to base students' class grade on one essay, and that the Respondent put undue stress on Student H and other students by telling them that they would fail the class if they did not get a passing grade on the final essay.

Principal Manolios testified that teachers attend annual professional development that cover the Chancellor's Regulations, one of which deals with verbal abuse and provides:

> **Chancellor's Regulation A-421**[3]
>
> **II. Definitions**
>
> **A. Verbal abuse is defined as language (written or oral) about or directed toward students that:**
>
> **1. belittles, embarrasses or subjects students to ridicule; or**
>
> **2. has or would have the effect of unreasonably and substantially interfering with a student's educational performance or ability to participate in or benefit from an educational program, school-sponsored activity or any other aspect of a student's education; or**
>
> **3. has or would have the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical well-being; or**
>
> **4. reasonably causes or would reasonably be expected to cause a student to fear for his/her physical safety; or**
>
> **5. reasonably causes or would reasonably be expected to cause physical injury or emotional harm to a student.**

Principal Manolios concluded from his investigation that the Respondent was running the class like a college course and making it difficult for students to do well in the class, that Respondent did not provide Student H with the support he needed, and that the Respondent's written comments to Student H were negative, caused him stress and emotional harm, were abusive, and violated the Chancellor's Regulation.

The Department presented Student G, who stated that he took classes with Respondent to learn how to write better. Student G said he observed Student H ask Respondent for assistance, that some days Respondent was upset and refused to help students, and that she had mood swings.

---

[3] D7

The Department presented Principal Akil, who was the principal during the 2016-2017 school year. He testified that on December 22, 2016 he was alerted that the Respondent fell in the hallway outside of her classroom. Principal Akil testified that the School has two campuses, and that the Respondent works on the fourth floor of a building on the Jamaica Queens campus.  Principal Akil stated that after the fall, the Respondent took him to the area where she fell, that she told him the floor was wet and slippery, that she was "unencumbered" when she fell, and that she had declined medical attention. Principal Akil stated that an incident report is required when there is an injury in the building. He told her to fill out an incident report. The Respondent's incident report stated the following:

> **This morning at approximately 7:45AM as I walked down the hall on the forth floor, I slipped and fell near my classroom 419 injuring my left leg, particularly my left knee. The floor's slickness was the cause of my fall as I was unencumbered and careful. I immediately reported the injury to the School Secretary who gave the form to complete.**

Principal Akil testified that he asked the custodial staff to check the floor, and that the Respondent spoke harshly to the custodial staff about keeping the building clean. The custodial staff checked the floor and found that it was not wet or slippery.  Principal Akil said that he and the custodial staff checked the fourth floor video camera and saw that the Respondent placed a bag on the floor, that her heel got caught in the strap, which caused her fall. Principal Akil stated that he notified the Special Commissioner of Investigation (SCI) about the Respondent's fall the same day because her explanation of what caused the fall was different than what the video showed. He thought her report of the incident was false.

8

The Department presented Frank Byrne, SCI investigator, who investigates criminal activity and corruption in the Department. Byrne testified that he was assigned to investigate the Respondent's incident report, that he interviewed Principal Akil, the custodial staff and the Respondent, and that he viewed the video. Byrne said that the Respondent did not mention the bag that she tripped over, and that her incident report was inconsistent with the video, which showed she was not "careful and unencumbered" as she had written on the incident report. Byrne also said that she blamed the custodial staff. Byrne concluded that the Respondent was not truthful about what caused her fall and recommended her termination.

The Department presented Robert Cetina, the custodial engineer, who stated that he had a cordial relationship with the Respondent, and that he checked the floor after Respondent's fall. He did not find that the floor was slippery, nor had it been recently waxed. In his opinion, nothing about the floor caused the Respondent to fall. He testified that he checked the fourth floor video and saw that she tripped over her bag, and that he told Principal Akil what the video showed. The video was played during the hearing. It confirmed that the Respondent tripped over her bag.

In her defense, the Respondent testified that she moved from teaching at colleges to teaching at city schools because she wanted to give back to the community, that Student H and Student G took her classes but where not in the Man's Inhumanity to Man's class at the same time, and that she was supportive of Student H and wrote him a college recommendation. She said that most of her classes are essay based because the regents are essay based, that she wants her students to get into that mindset. The Respondent said that

she explained her syllabus and grading on the first day of class and when new students joined the class, that class participation and grades on prior assignments were considered, but that students were required to get a minimum of a 3 on the final essay to pass the class.

Respondent stated that in her Man's Inhumanity to Man class, she reviewed the class documents with Student H and all students, that students had two to three weeks to do the essay, that she allowed students two drafts for their final essay, and that she had students work with and teach each other. She testified that she went over Student H's first draft, and that his second draft was better. She gave him time to discuss it with her and with other students. The Respondent stated that Student H did not take the advice of the other students. He did not discuss his second draft with her, and that she would have discussed it with him if he had asked. She said that she advised him to take the weekend to revise the draft, but that he handed it in on a Friday, rather than taking the weekend to work on it.

On cross examination, the Respondent said that she always assists her students, that she is familiar with the Chancellor's Regulation A-412, that she attended the professional development where verbal abuse was stressed, and that she is aware that abuse could be oral or written. She stated that she realizes words matter, and that the type of delivery, including tone and demeanor, can carry different meanings. The Respondent stated that she was not informed about the purpose of the meeting with Student H and his family, that the mother had questions about the grade her son received, and that the brother and the Principal Manolios attended the meeting. The Respondent said that she was not aware that the mother was totally blind. She claims that she said to the mother, "Unlike you I can see

clearly," that the brother got upset about her comment to his mother and was rude to her, and that she left the meeting.

The Respondent stated that she did not stage her fall or submit a fraudulent document to the Department. She said that she wrote a brief statement on the incident report, that she did not write that the floor was wet, that she was not rude to the custodial staff, and that she received no benefit from the fall, such as time off from work.

## POSITION OF THE PARTIES

### Department of Education

The Department asserts it established the charges by the preponderance of the credible record evidence. It argues that a review of the record evidence shows that Respondent refuses to teach and educate students, and students have suffered. It claims that progressive discipline has been given, that she has broken the bond of trust with the Department, that she is beyond remediation, and termination is warranted.

The Department asserts that Respondent refused to assist Student H with the final essay assignment and he failed the class. The Department points out that students were given a few weeks to complete the final essay, and that the Respondent repeatedly refused to help Student H over that timeframe. The Department notes that it is undisputed that Respondent helped Student H with his first draft of the essay, that she wrote comments on his draft and on the rubric, and that she directed Student H to other students to get help. The Department claims that the comments the Respondent wrote were not meaningful to or understood by Student H, that the comments amounted to verbal abuse, and that Respondent's refusal to provide further assistance to Student H was neglect of her duty.

11

The Department argues that the Respondent told other students not to help Student H, that Student H testified that the Respondent told him "no" when he asked her for help, and that the written statements of other students corroborated Student H's testimony about his confrontations with the Respondent about her refusal to assist him. The Department points out that Student H sought assistance from peers, teachers and other resources to complete the essay, that Respondent's refusal to assist him caused him stress, anxiety, and embarrassment since Respondent assisted other students. The Department notes that it was undisputed that the Respondent was fully aware of Chancellor's Regulation A-421, and that verbal abuse could be oral or written.

The Department insists that Principal Manolios spoke to Respondent about providing support to students, that in his testimony he described her demeanor with students as unsympathetic and without compassion, and that her grading did not conform to the grading guidelines. The Department claims that the Respondent has been warned by prior School Principals about her unprofessional behavior toward students, and has a letter to her file about it. The Department points out that the Respondent's purpose is to teach students, but the syllabus for her class is college level, the lessons are vague, the issues do not fit the student population, and without support these students cannot do the work she expects, which resulted in Student H failing her class.

The Department also asserts that Respondent deliberately staged her own fall, submitted a false explanation about the cause of the fall, and attempted to defraud the Department for her personal benefit. The Department argues that the Respondent's testimony conflicted with what was seen on the video, that she refused to accept the responsibility for her fall, and that her benefit could have been instinct, such as describing

12

her actions as "unencumbered and careful," rather than a financial benefit. The Department claims that the Respondent's refusal to take responsibility for the fall speaks to her character, that she broke the bonds of trust with her fraudulent description of what caused the fall, and that she showed no remorse for her behavior, which warrants her termination.

### Respondent

The Respondent argues that the Department has not proven its case, that it has withheld necessary documents, and has violated her due process rights. The Respondent claims that failure to assist a student is different from verbal abuse, that Principal Manolios found her comments on one essay and one rubric inappropriate, which did not rise to the level of misconduct, and that she did not violate Chancellor's Regulation A-421. The Respondent points out that the comments on the essay were relevant, but the essay was not produced.

The Respondent argues that she was charged with a singular incident on an exact date regarding Student H, which is different from a pattern of refusing to assist students, that the Department presented evidence at the hearing to establish a pattern of her failure to assist, which is unrelated to the charge, and that she cannot be held culpable for uncharged misconduct. To support its argument, Respondent cited *Soucy v Board of Education of N. Colonie* (1973), where the Court held that uncharged misconduct could not be considered for penalty purposes.

The Respondent further argues that Student G's transcript was not produced in time for a proper cross examination of him, that Student G's transcript did not list the Man's Inhumanity to Man class, that Student G was not in the same class as Student H, and that

13

Student G's testimony should not be relied upon.

The Respondent claims that the investigation was not fair, that the disciplinary meeting and the parent meeting were convoluted, and that the evidence presented did not clarify which meeting came first. The Respondent points out that due process is a constitutionally protected right, which ensures fairness, and that the unfair investigation prevented preparation of an adequate defense, which violated her due process rights.

The Respondent also argues that there was no evidence that established that she attempted to defraud the Department, or gained any benefit from her fall. The Respondent points out that she did not file for a line-of-duty injury, that she did not take any time off work as a result of the fall, and that the statute of limitation to file a lawsuit regarding the fall is one year and has expired. The Respondent asserts that she filed the injury report as requested, that Principal's Akil's testimony that Respondent indicated that a wet floor caused her fall was not corroborated, and that Principal Akil's assertion that Respondent was rude to the custodial staff was inconsistent with the custodial staff member's testimony.

The Respondent argues that if the Hearing Officer finds her culpable for the allegations against her, her conduct does not warrant severe discipline. The Respondent cited awards by other Hearing Officers, who issued fines or reprimands to address similar behavior, and insists that a letter to file is a sufficient penalty for failure to assist.  The Respondent points out that a tenured teacher has constitutionally protected property rights to her job.

14

**DISCUSSION AND ANALYSIS**

Based on my review of the entire hearing record, including the assessment of witnesses' credibility and the probative value of evidence, I find that the charges set forth in the Specifications are sustained or dismissed as noted below.

**SPECIFICATION 1**

This Specification charges that the Respondent refused to assist Student H, which caused him stress and anxiety. Student H's testimony was credible, detailed and consistent with his complaint that Respondent refused to assist him. Principal Manolios's testimony that he investigated the complaint, interviewed other students who corroborated that Respondent refused to assist Student H, and that he found Respondent's written comments to Student H to be negative, unproductive and harmful. Student H's testimony along with Principal Manolios' investigation provide persuasive evidence that Respondent did not give proper assistance to Student H. It is undisputed that Student H sought assistance from classmates and others, attended a meeting with his family and Respondent to get clarification from the Respondent, and that he failed her class. Student H's actions provide additional evidence that the Respondent did not provide the level of assistance he needed, which made him uncomfortable, especially since she assisted other students.  In addition, the meeting with Student H and his family provided another opportunity for the Respondent to assist Student H but she used the meeting to make an inappropriate comment to the mother, rather than to provide guidance and assistance to Student H. Specification 1 is sustained.

**SPECIFICATION 2**

Specification 2 claims that the Respondent attempted to defraud the Department to gain a personal benefit. The video revealed that the Respondent tripped over her bag, which she had placed on the floor outside of her classroom. However none of the evidence proves an intentional fall, or an effort to gain some benefit. Therefore, the charge is not supported in the record. Specification 2 is dismissed.

**SPECIFICATION 3**

Specification 3 alleges that the Respondent completed and submitted documents about an incident that did not occur. The video established that the fall occurred, although the Respondent's submitted explanation about what caused the fall is inconsistent with the video evidence, the Respondent was not charged with a false or inaccurate explanation of the fall. Specification 3 is dismissed.

**SPECIFICATION 4**

Specification 4 states that Respondent's actions in Specifications 1 could interfere with a student's well being. Student H testified credibly that he was uncomfortable with Respondent's refusal to assist him, and that he was stressed and panicked about passing her class. Principal Manolios found that Respondent's written comments were abusive, that she refused to assist Student H, and that her inappropriate grading system caused Student H undue stress. The evidence established that Student H's well being was negatively impacted. Specification 4 is sustained.

16

**SPECIFICATION 5**

Specification 5 states that Respondent's actions in Specifications 1 were knowingly injurious to the physical, mental and moral welfare of a child. For the reasons stated in Specifications 1 and 4, Specification 5 is sustained

**PENALTY**

Specifications 1, 4 and 5 are sustained.  Specifications 2 and 3 are dismissed. The Complainant has met its burden of proof by the preponderance of evidence that Respondent refused to assist Student H and caused him stress and anxiety. Failure to assist a student is neglect of duty and serious misconduct that warrants discipline. In this case, it left Student H without the support he needed to pass the class. The Respondent's role is to teach by consistently assisting students and providing the support they need to complete assignments to pass her classes. The penalty for this violation must be commensurate with the Respondent's 17 years of service.

**AWARD**

a) Respondent shall pay a fine of $2,000, to be withheld from her salary over a period of two months.

b) Respondent must take training that will impress upon her the need to consistently provide students with the assistance they need to pass her classes in the future. The Department will be responsible for selecting and funding the training.

Dated: January 30, 2018
Princeton, New Jersey

*[signature: Lisa Charles]*

_____
**LISA C. CHARLES**
**Hearing Officer**

**AFFIRMATION**

I, LISA C. CHARLES, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Opinion and Award.

*[signature: Lisa Charles]*

_____
**Lisa C. Charles**
**Hearing Officer**