NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

MARGUERITE M. BAGAROZZI,

Complainant,

v.

CITY OF NEW YORK, DEPARTMENT OF
EDUCATION,

Respondent.

VERIFIED COMPLAINT
Pursuant to Executive Law,
Article 15

Case No.
**10189699**

Federal Charge No. 16GB704061

I, Marguerite M. Bagarozzi, residing at ▮▮▮▮▮▮▮▮▮▮ charge the above named respondent, whose address is Office of Legal Services, 52 Chambers Street, Room 308, New York, NY, 10007 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of age, race/color, opposed discrimination/retaliation.

Date most recent or continuing discrimination took place is 7/3/2017.

The allegations are:

**Please see attached complaint form**

# New York State Division of Human Rights
# Complaint Form

RECEIVED
JUL 21 2017
BROOKLYN REGIONAL OFFICE

## CONTACT INFORMATION

My contact information:

Name: BAGAROZZI, MARGUERITE M.

Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   Apt or Floor #: ▮▮▮

City: ▮▮▮▮▮▮▮   State: ▮▮   Zip: ▮▮▮▮

## REGULATED AREAS

**I believe I was discriminated against in the area of:**

☒ Employment
☐ Education
☐ Volunteer firefighting
☐ Apprentice Training
☐ Boycotting/Blacklisting
☐ Credit
☐ Public Accommodations *(Restaurants, stores, hotels, movie theaters amusement parks, etc.)*
☐ Housing
☐ Commercial Space
☐ Labor Union, Employment Agencies
☐ Internship

**I am filing a complaint against:**

Company or Other Name: NYC DEPT OF EDUCATION - QUEENS ACADEMY HIGH SCHOOL

Address: 142-10 LINDEN BLVD, 4th FLOOR

City: JAMAICA   State: NY   Zip: 11436

Telephone Number: 718 258 2050
(area code)

Individual people who discriminated against me:

Name: MR. SHOMARI AKIL
Title: PRINCIPAL

Name: MS. NATHIFA MORRIS
Title: ASSISTANT PRINCIPAL

MR. DEREK PHILLIPS
ASSISTANT PRINCIPAL

## DATE OF DISCRIMINATION

The most recent act of discrimination happened on:   07 month   3 day   17 year

3

**BASIS OF DISCRIMINATION**
Please tell us why you were discriminated against by checking one or more of the boxes below.

 You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note:** Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Domestic Violence Victim Status is a basis only in Employment complaints). These exceptions are listed next to the types of discrimination below.

### I believe I was discriminated against because of my:

| | |
|---|---|
| ☒ **Age** (Does not apply to Public Accommodations)<br>Date of Birth: ███████ | ☐ **Genetic Predisposition** (Employment only)<br>Please specify: |
| ☐ **Arrest Record** (Only for Employment, Licensing, and Credit)<br>Please specify: | ☐ **Marital Status**<br>Please specify: |
| ☐ **Conviction Record** (Employment and Credit only)<br>Please specify: | ☐ **Military Status:**<br>Please specify: |
| ☐ **Creed / Religion**<br>Please specify: | ☐ **National Origin**<br>Please specify: |
| ☐ **Disability**<br>Please specify: | ☒ **Race/Color or Ethnicity**<br>Please specify: I AM CAUCASIAN. PRINCIPAL AND TWO APs ARE BLACK. |
| ☐ **Pregnancy-Related Condition:**<br>Please specify: | ☐ **Sex**<br>Please specify: ☐ Female ☐ Male<br>☐ Pregnancy<br>☐ Sexual Harassment |
| ☐ **Domestic Violence Victim Status:**<br>(Employment only)<br>Please specify: | ☐ **Sexual Orientation**<br>Please specify: |
| ☐ **Familial Status** (Does not apply to Public Accommodations or Education)<br>Please specify: | ☒ **Retaliation** (if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)<br>Please specify: TARGETING, HARASSMENT, DISCRIMINATION, OSTRACIZATION, EXCLUSION. |

 Before you turn to the next page, please check this list to make sure that you provided information *only* for the type of discrimination that relates to your complaint.

# EMPLOYMENT OR INTERNSHIP DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment or internship. If not, turn to the next page.*

**How many employees does this company have?**
☐ 1-3   ☐ 4-14   ☐ 15 or more   ☒ 20 or more   ☐ Don't know

**Are you currently working for the company?**
☒ Yes
Date of hire: DOE ( _09_ _05_ _00_ )   What is your job title? _TEACHER_
        Month   day   year
        QUEENS
☐ No   ACADEMY _06_       _07_
Last day of work: ( _____ _____ _____ )   What was your job title? _____
             Month   day   year

☐ I was not hired by the company
Date of application: ( _____ _____ _____ )
             Month   day   year

## ACTS OF DISCRIMINATION

**What did the person/company you are complaining against do? Please check all that apply.**
☐ Refused to hire me
☐ Fired me / laid me off
☐ Did not call me back after a lay-off
☐ Demoted me
☒ Suspended me
☐ Sexually harassed me
☒ Harassed or intimidated me (other than sexual harassment)
☒ Denied me training
☐ Denied me a promotion or pay raise
☐ Denied me leave time or other benefits
☐ Paid me a lower salary than other workers in my same title
☒ Gave me different or worse job duties than other workers in my same title
☐ Denied me an accommodation for my disability
☐ Denied me an accommodation for my religious practices
☒ Gave me a disciplinary notice or negative performance evaluation
☒ Other: _FILED FALSE DISCIPLINARY CHARGES AGAINST ME AND OSTRACIZED ME IN MY WORKPLACE IN FRONT OF STAFF AND STUDENTS_

6

**ADDENDUM TO SDHR CHARGE FOR MARGUERITE M. BAGAROZZI**

1. I have been employed as an high school English teacher at Queens Academy High School in Queens, New York for the 2016-17 school year, under Principal Shomari Akil.

2. I have been generally rated Satisfactory or Effective/Highly Effective throughout my 17 year career for my teaching performance.

3. I am 67 years old and of Caucasian race. Upon information and belief, I am among the oldest faculty members at the school. I have been teaching for the NYCDOE since 2000 and have been at my current school since 2007.

4. My principal Mr. Akil and his Assistant Principals are all of black race and significantly younger than I. Mr. Akil has been the principal of the school for the past two school years.

5. During the second half of the 2016-17 school year, I suddenly started to receive lower ratings on my evaluations than I ever received in my career.

6. I also received disciplinary letters regarding petty incidents during the 2016-17 school year, and found out that negative material had been added to my personnel file in violation of the UFT-DOE contract as of July 3, 2017.

7. I also received notice of potential false disciplinary Section 3020-a charges against me on or in May 2017, and have been removed from my teaching assignment since May 25, 2017.

8. I did not receive an overall rating for the 2016-17 school year.

9. Because of my reassignment from duties, I have not been able to work per session and summer school, causing me significant economic loss.

10. I believe I am being targeted based on age and race discrimination.

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing), as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

_Marguerite M. Bagazzi_
Sign your full legal name

Subscribed and sworn before me
This 24 day of July, 20 17

_____
Signature of Notary Public

County: Rockland     Commission expires: 1/22/18

BRYAN GLASS
Notary Public, State of New York
No. 02GL6068078
Qualified in Rockland County
Commission Expires 1/22/2018

***Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.***

9

DESCRIPTION OF DISCRIMINATION…MARGUERITE M. BAGAROZZI

--7/3/17

- I returned to the school this day to view the additional contents placed in my file.  AP Phillips was at the security desk, having a social conversation with the two School Safety Agents who were at the desk.  When I told him why I had visited, he told me: "School is over.  I'm not going to go through files…school is over."  I told him that I had a right to see what had been placed in my file.  He adamantly refused to show me my file three more times, repeating his mantra that school was over, and he did not want to go through that stuff.  I final took out my phone, telling him that I would call the UFT and the Special Commissioner of investigation if he continued to deny me access.  AP Phillips finally gave me access.  There was information in my file relative to the ▇▇▇▇ ▇▇▇▇ matter that should have been removed and given to me as I had asked be done on three occasions via e-mail.—it's being there  DELIBERATELY violated the UFT contract because its being there violated the 90-Day Rule and was uncontractual.  The administration including AP Phillips are well aware of this.  There was additional information that should have been sent to me and was not-—another uncontractual action on the part of administration.  AP Phillips refused to remove the material, saying he had to check with the principal—an action which he had promised to do in early June.  When I told him that I would be back on Wednesday, July 3rd, AP Phillips replied that he would be at August Martin High School where some of our students would be attending summer school.  When I noted that he had mentioned that some of our students were attending summer school at Flushing High School, directly across the street from Queens Academy, and that he would have to be of service to them as well, asking when that would be, Phillips replied that he did not know.  In addition, I asked Phillips when he would be at Orientation for new students and their parents—would he not need be present at the school then as well—no answer.  I will continue to try to overcome this obvious denial of my civil, human, and contractual rights.

--6/30/17

- Upon visiting the school on another matter, I was informed by School Secretary Lorraine Sasso-Russo that additional material had been placed in my file without my knowledge.  I asked her to show me the file which she could not do because Principal Akil had removed the key to that file cabinet from her possession.  I asked where AP Phillips was on this work day and was told that he was not in the building and no one knew where he was.

--6/28/17

- I sent an e-mail to school secretary Paulette Guilford-Crawford asking that she forward me via registered mail the evidence AP Morris was to send me relative to charges filed against me and asking that she contact me when she had completed this task.  She never responded.

--6/28/17

- I was not invited to the school's graduation ceremony to which every other faculty member was.
- As a senior faculty member, I was denied the right in addition to recommend students for the English awards at graduation—there is only one other English teacher at the Jamaica site who

had never taught there prior to the term before graduation (Spring, 2017) and had not had most of the students in her classes, knowing very little about their suitability for awards.

--6/26/17

- Third Notice sent to Principal Akil requesting my right to obtain evidence re charges against me, particularly re ▮▮▮▮ which violated the UFT contract by being placed there at all.

--6/8/17

- I was prohibited from attending the ESKOLTA Conference to which every other faculty member was invited as were numerous staff.  There were no students in attendance, and I alone was denied my contractual right to professional development.

---6/1/17

- I sent an email to AP Nathifa Morris asking that she forward me a copy of an e-mail that I was supposedly sent by "an administrator" directing me to "revise lesson plans, unit plans, and curriculum maps using the scope and sequence model and the New Visions Curriculum" (the latter of which was never supplied to me nor was it approved for use by the district superintendent).  I never received the original e-mail because it was never sent, and AP Morris never furnished me with the copy.

--5/26/17

- Sent SECOND Request e-mail to Principal Akil to provide evidence in findings re ▮▮▮▮ matter.  The point should be moot because AP Phillips continued an investigation with a substantiated finding after the initial disciplinary meeting in which the evidence was insufficient to corroborate.  The time limit expired shortly thereafter, but AP Phillips continued to investigate in violation of the Ninety-Day Rule imposed contractually by the UFT.  A third request followed on 6/26/17.

--5/25/17-present

- Deleted me from the staff address book on the Department of Education website, thereby excluding me from receiving pertinent information such as reporting times, end of term checklists, recommendations for student award recipient for graduation when the only other English teacher had recently transferred from the other site and had taken a leave for the entire fall term and barely knew the students, and similar important matters pertinent to me even as someone re-assigned to administrative duties…I was totally ostracized.
- Total exclusion in some manner from summer school activities at other schools, including the school where I had taught summer school for the last three summers…I did not receive one call or email asking my availability when in the past I had received numerous requests to consider positions and/or appear for interviews.

--6/27/17

- Abruptly cancelled without notice a disciplinary hearing relative to new charges in my case, causing continued and anxiety to me and extreme inconvenience to my UFT Representative who

is assigned to the other site a number of miles away—I was informed by the secretary as well that the principal did not know when the meeting would be re-scheduled

--6/28/17

- Excluded me entirely from the graduation ceremony without consideration or notice when all other faculty and staff were invited

--6/23/17

- AP, IA Nathifa Morris emailed all faculty except me that Tuesday, the 27th, is an instructional day and the instructional schedule of 9 AM-3:20 PM is to be observed.  We had previously been observing the Regents Week schedule of 8:30 AM-3:20 PM.

--6/21/17

- Exclusion from Staff Potluck Luncheon and all correspondence relative to it—all other staff at the site were included and were sent e-mails by AP, IA Nathifa Morris and School Secretary Paulette Guilford-Crawford concerning same on the following dates:  6/20/17; 6/16/17; some staff replied on the following dates:  6/20/17, 6/19/17.  I was the only person not included on the e-mail chain—see addressees.  Approximately one-and one-half hours after the luncheon began, AP,IA Morris came to my holding area to ask if I "wanted a plate" after everything had been picked over and most of the food had been consumed.  She brought Guidance Counselor Brandon Alfred as a witness to verify that I had been asked—itself discriminatory and demeaning.

--6/21/17

- Queens Transition Center Principal Fritzi Sannon-Brown who is responsible for the school safety meetings for both our schools informed me when I asked her why I had not been invited to that day's school safety meeting that Queens Academy AP, IA Nathifa Morris told Ms. Brown when she inquired if I were attending the meeting told Principal Brown "no" and that I was not permitted to leave the fourth floor where Queens Academy is located.  I am not the Queens Academy representative as such but serve as the Queens Academy UFT representative to the meeting for the school's faculty as a surrogate for the school's chapter leader Ms. Jenny Squires and had done so for the entire year.  Prior to this, on the occasion of the last two school safety meetings, Queens Academy Principal Shomari Akil called QTC AP Marrotta-Perretti who chaired the meetings that she was to table Queens Academy business until he arrived–once he arrived fifty minutes late, the next he did not arrive at all.
Neither Ms. Morris nor Mr. Akil had the authority to dictate policy where the UFT and its representative are concerned.  I was prohibited, even after I voiced complaints about the inappropriateness of their actions, from expressing the concerns of the faculty.

- I informed Mr. Akil verbally and Ms. Morris via e-mail that their actions were uncontractual and that I was reporting them to the UFT.

--6/19/17

- Exclusion from Professional Development activity on bi-polar disorder, the last part of a continuing series on mental health for students and faculty.

--6/19, 20, 21/17

- Consistent scheduling of events in Room 419 (my classroom) to ensure that I did not have access to the room to prepare it and its contents for a prospective move. All other faculty with assigned classrooms were given multiple opportunities over a number of days to accomplish related tasks.

--6/16/17

- AP, IA Morris and Principal Shomari Akil assigned me to a holding area at the school at which I teach with instructions to have no student contact after removing me from the classroom on May 25, 2017. My movements were extremely limited because we are on one floor only of a four story building housing another school. The room (431B)has windows that either don't open or don't open easily; does not have air conditioning or proper ventilation; is dirty and dusty; contains a copy machine and two riso machines, a bookcase of unwanted books, and various other detritus that renders it uncomfortable at best and hazardous at worst. After making the best of the situation for 15 days, when the weather turned to the high eighties and nineties, I moved myself to the faculty lounge which is ventilated and has air conditioning, resolving my health concerns somewhat. I had a doctor's note in my personnel file attesting to my need for some very minor accommodations. I also anticipated the need for an updated note and secured one on May 30, 2017. Ms. Morris sent me an e-mail on this date, stating that I did not have permission to move. I replied, outlining the reason for the move. She then e-mailed AP Derek Phillips at the other site where the personnel files are housed, asking him if he had seen the original note. Morris then asked me for a copy of the updated note which I sent immediately. All this interaction took place in less than an hour of my leaving school; therefore, she could not accuse me of obtaining a new note and having the doctor pre-date it.

--5/19/17

- I reported to Principal Akil's office with my UFT representative Ms. Jenny Squires. When we arrived, I was presented with a copy of a letter dated 5/16/17 informing Chancellor Carmen Farinha that an investigation conducted by The Special Commissioner of Investigation for the New York City School District substantiated a complaint filed by Principal Akil on December 22, 2016, that I falsified a report relative to my falling at school that day and recommending that I cobe terminated. I submitted a report, continued working, blamed no one, did not seek medical

attention, and considered the matter closed.  What the principal did not include was that he tried to erase the scuff mark made by my shoe on the slippery floor, providing evidence of the nature of the fall.

--5/25/17

- I was told to report to Principal Akil's office by Nathifa Morris, AP, IA.  I was given another letter in which the principal substantiated the charge and removed me from the classroom.
- I was relocated to Room 431B—the copy room—which is not air conditioned, is poorly ventilated, dirty, dusty, and contains retired books, machines, computers and other detritus, two riso machines, and a copy machine--these three machines generating a great deal of heat and chemical exhaust—further contributing to the unhealthy atmosphere in the room.

--5/24/17

- While I was teaching my Period 6 class, I was interrupted by AP,IA Morris who demanded that I report to the Principal's Office immediately—no reason was given.  When I appeared, a student, his mother, his aunt, the principal, and the AP interrogated me relative to the student's  no longerperformance, grades, my behavior toward him, my teaching style, and the like.   I received no notice at all, was addressed disrespectfully by all concerned, and, according to all protocols of appropriate behavior, was not treated fairly and was verbally abused by all.  A similar meeting had been held the prior week of so with another teacher who is Puerto Rican but who had been given at least a day and a half's notice to prepare for the meeting.
- I was also observed this day with no notice—four other teachers (three of whom were minorities including the Puerto Rican teacher) had also been observed but had been given prior notice of at least one day.  I never received notice of when I was being observed.

--03/27/17

- AP, IA Nathifa Morris harassed me twice this day.  Once, she pulled me out of class to meet with a parent and student whom I had just seen the night before at Parent/Teacher Conferences.  The student had poor attendance and had failed the first marking period.  I was never notified that the student had a heart condition and was being treated medically—the school notoriously withholds this information even in general terms—and I told the parent and student that now that I  called me out of my Period 2knew, I would accommodate the student in any and every way.  I was taken at my word which was later borne out.  Morris called the parent and insisted that she come to school the following day to confront me about the grade, giving the parent no choice because of the severity of the situation as was presented by Morris.  The parent and student waved to me and said they would see me later.  I was summoned shortly thereafter and interrogated by Morris for approximately twenty minutes.  I tried to tell her that the issue was no longer of concern to anyone, but she kept intensifying her unprofessional, abusive rant.  I told her that I had to return to class.  The parent and student stopped by my room on their way out, apologizing profusely for what had occurred.  The parent mentioned that Morris had been

  relentless in her insistence that they appear that day.  The parent told me that something was going on passed what had occurred just prior and that if I needed her to speak in support of me, she would be happy to do so.
- AP, IA Morris came looking for me and was on her way to the rest room where I had just gone to retrieve me for a Monday Professional Development meeting.  Other teachers told her that I had just left the room, but she refused to listen.

03/14/17

- When I inquired, the Principal told me in a common planning meeting that a student who had threatened me with harm, thrown a stapler at another student in class, and menaced yet another student in my Period Six class had been suspended.  Not only was the student not suspended, but she was returned to my class shortly after the incident—the principal had never filed the ORRS report.

02/2017

- All faculty at both campuses had received their scholarship reports for the prior term—I was the only one who had not.  I requested it numerous times before I finally received it.

01/17/17

- A student appeared for a Regents examination which I was proctoring.  She had two black eyes and was visibly upset.  I reported this to the ATR Guidance Counselor Yasmeen Troutman and special education teacher Yisenia Leon who were sitting in the hall chatting.  They informed me that the student was eighteen years old but had just given birth and that I should report it—that the incident had occurred the prior week.  I asked them why they had not reported it when it first happened; they did not answer.  I reported the matter to the principal and the guidance counselor Brandon Alfred, called the mandated reporter hotline, then returned to tell the administrators that two other staff had seen this but had not reported it when it occurred.  They told me that I was required to report it…I continued to ask why the other two staff had not and was told to drop it.

--9/29/17-11/17

-  DoE Access Inquiry Institute—I obtained a $90,000 grant for three years ($30,000 per year) to provide materials, trips, advisement meetings, guest speaker, et al.  I wrote the access plan and attended all the meetings then was denied access not only to funds but to even seeing the what the budget lines were, and where/how much money was allocated on each line, et al.

--11/2/16

- The Principal called me out of my Period 2 class to speak with a parent, refusing to wait until the end of class.  In this meeting, he literally yelled at me thrice in front of the parent and the student and refused to let me rebut the student's accusations.  I did so regardless, speaking over him and his rudeness to and disrespect of me.  I had documentation for everything that I

claimed, pointing out that the student had not been telling the truth—at all.  The parent was mollified, but no apology was forthcoming from the principal.

--10/5/16-5/24/17

- I was observed nine times.  The principal observed me six of those times, never giving me any feedback—positive or negative until the last class day when he arrived to conduct a post-observation without prior notice and then proceeded to leave the room, stating that he would return which he did not do until late afternoon.  We briefly discussed Andrew Carnegie's "Gospel of Wealth"; he suggested that I should have used DuBose a black author instead to be more culturally attuned to our students.  When I said that the Common Core dictates work from various centuries and that I had used Carnegie from the 19th Century, he stated that I still should have used Dubose.  Dubose is considered 2oth Century—he did not know this.  In addition, he asked why I do argumentation in class.  When I explained that it was a major component of the Common Core ELA Regents and the students needed scaffolded assignments to prepare them, he replied that there were four essays, why focus on argumentation.  There is only one essay on the Common Core ELA Regents—argumentation.  He did not know this.
- I was rated "Highly Effective" for the academic year 2015-2016 by Principal Akil.  This academic year 2016-2017, many of my Danielson Rubric components have been rated "Developing" or "Ineffective" by the inexperienced, non-appointed AP,IA Nathifa Morris who has never taught high school or been an AP prior to this assignment.  AP Derek Philipps rated me all "Effective" except for one "Developing" in my November 22, 2016 post-observation report—this was because the principal had told me to change my lesson plan format which he later denied saying to AP Philipps when AP Philipps questioned him.

--10/28/16

- Principal observed me unannounced during Period 2 and left the room four times, distracting the students who were present—a number of whom were special education students.  The Principal had his walkie-talkie on during the entire time—it crackled continuously disturbing the students further as did the messages he was receiving over the device.

--10/17/17—present

- I filed numerous ORRS Reports for serious reasons— a minimum of two of which were the most egregious threats to my personal safety:  one, a student had pushed with both her arms and then hit me with her tote bag; another, a student who threatened me with harm if I spoke with his mother and girlfriend about his abusive behavior and verbal abuse of me on a consistent basis.  There were    ORRS in total.

--9, 10, 11/16

- I broke and dislocated the ring toe of my left foot; in addition, I have a neuroma in that foot.  Despite my difficulty, I did not miss one minute of work.  I had not received a DoE street parking

pass yet so I had to walk (limp) from wherever I found parking, sometimes three-four city blocks away.  I asked Principal Akil if I could be accommodated in the school lot in the rear of the building; he refused to do so, yet offered parking in the rear lot to the new African-American female teacher, the substitute African-American male teacher, and the new Puerto Rican special education teacher.  I filed a grievance which he disallowed.

--9/16

- The Principal took away my access to YouTube when numerous other mostly minority faculty members had access to it.  I teach English, and in order to differentiate and offer various entry points as well as visual learning opportunities to students, particularly special education students, I was forced to show them speeches and the like on my mobile phone.
- The Principal repeatedly initiated meetings with me before and after school, on my prep and lunch periods for which I was not compensated.
- Attempted to require me to participate in two full-time Circular Six assignments which is a decided violation of the UFT contract.  I would have been required to be the College Advisor for one period and a participant in Common Planning as well.  The principal required me to attend a meeting with two staff members (both minorities—one African-American male; one Sikh female) in which he verbally chastised me, raised his voice to me, and disrespected me by not permitting me to rebut obvious lies and purposeful misstatements on the part of the other participants regarding college advisement.  He refused to reprimand Gurpreet Grawal (Sikh female) and Brandon Alfred (African-American male) for refusing to meet with me to develop plans for college advisement.
- Told me to re-arrange my room to separate latecomers and chronic absentees from the main body of students in the class and to give these students alternative lessons and assignments; he also recommended that I change my lesson plan format to include such elements as empathy and to include only one learning objective…these requests are in violation of the UFT Contract.  He "approved" the final copy and then denied doing so in 11/16 when AP Derek Philipps questioned him about what had transpired because that was the only area in which Mr. Philipps had rated me "Developing" in his November, 2016, observation report.  All other elements were rated "Effective."

HABITUAL:

- refuses to address me by my EARNED TITLE of DR. but addressed  a student's aunt repeatedly in a meeting with me by the title while referring to me by my first natee or "Ms."  Repeatedly addressed the substitute music teacher by the term, bu constantly referring to me by my first name or Ms.  Both these people are black.
- Regularly called me "Margarita", not "Marguerite" even after he was corrected numerous time over a two-year period.