18-cv-04893 (RA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARGUERITE BAGAROZZI,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
SHOMARI AKIL, PRINCIPAL of QUEENS
ACADEMY HIGH SCHOOL; NATHIFA MORRIS,
ASSISTANT PRINCIPAL of QUEENS ACADEMY
HIGH SCHOOL,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DEPARTMENT OF EDUCATION'S
MOTION TO DISMISS THE AMENDED
COMPLAINT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorneys for Defendant*
*New York City Department of Education*
*City of New York*
*100 Church Street, Rm. 2-184*
*New York, New York  10007*

*Of Counsel:  Evan M. Piercey*
*Tel:  (212) 356-2428*
*Matter No.:  2018-038284*

Donald C. Sullivan,
Evan M. Piercey,
Of Counsel.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

       A.     Plaintiff's Grievances....................................................................4

       B.     Plaintiff's §3020-a Hearing...........................................................5

       C.     Plaintiff's Public Employment Relations Board
             Decision .........................................................................................7

       D.     Plaintiff's New York State Division of Human
             Rights & EEOC Charges ...............................................................8

ARGUMENT

     POINT I

          THE AMENDED COMPLAINT FAILS TO
          STATE A CLAIM OF RACE OR AGE
          DISCRIMINATION ..................................................................... 9

          1.   Plaintiff's Deficient Race and Age
              Discrimination Claims.......................................................... 9

              A.   Virtually None of Plaintiff's Allegations
                    Rise to the Level of Adverse Employment
                    Actions Sufficient to Support Her Claims .................................10

              B.   Plaintiff Fails to Plausibly Allege
                    Discriminatory Animus....................................................11

               C.   Plaintiff Fails to Plead that Her §3020-a
                    Disciplinary Charges Occurred Under
                    Circumstances Giving Rise to
                    Discrimination...................................................................13

               D.   Plaintiff's Alleged Discriminatory Denial
                    of Per-Session Opportunities is
                    Nevertheless Deficient As a Matter of Law................................14

          2.   Plaintiff's Deficient Hostile Work Environment
               Claim.................................................................................. 16

**Page**

POINT II

    PLAINTIFF FAILS TO ESTABLISH FIRST
AMENDMENT RETALIATION ............................................................... 18

    1.  Plaintiff Spoke as a Public Employee, Not a
Private Citizen ................................................................. 19

        A.  Plaintiff's Purported Grievance on Behalf
of Students with Special Needs was Part
and Parcel of Her Duties as a Teacher ....................................... 20

    2.  A Majority of Plaintiff's Purported Speech Did
Not Touch on Matters of Public Concern ......................................... 22

POINT III

    PLAINTIFF'S SHRL and CHRL CLAIMS MUST
BE DISMISSED BECAUSE PLAINTIFF FAILED
TO COMPLY WITH THE NOTICE OF CLAIM
REQUIREMENTS IN EDUCATION LAW
§3813(1) ............................................................................... 24

CONCLUSION ........................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Pages**

*Agyeman v. Roosevelt Union Free Sch. Dist.*,
    254 F. Supp. 3d 524 (E.D.N.Y. 2017) ...................................................................... 20-21, 22

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002)...........................................................................................16

*Austin v. Ford Models*,
    149 F.3d 148 (2d Cir. 1998)...........................................................................................9

*Bermudez v. City of New York*,
    783 F.Supp.2d 560 (S.D.N.Y. 2011)..............................................................................14

*Blige v. City Univ. of New York*,
    2017 U.S. Dist. LEXIS 8345 (S.D.N.Y. Jan. 19, 2017).................................................13

*Bohnet v. Valley Stream Union free Sch. Dist. 13*,
    30 F.Supp.3d 174 (E.D.N.Y. 2014) ...............................................................................12

*Carmellino v. Dist. 20 of the N.Y. City Dep't of Educ.*,
    2006 U.S. Dist. LEXIS 63705 (S.D.N.Y. Sept. 6, 2006)........................................15

*Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*,
    641 Fed. Appx. 60 (2d Cir. 2016) ..................................................................................9

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)...........................................................................................3

*Chung v. City Univ. of N.Y.*,
    605 Fed. Appx. 20 (2d Cir. 2015) ..................................................................................11

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991)..............................................................................................3

*Davis v. Goodwill Indus. Of Greater N.Y. & N.J.*,
    2017 U.S. Dist. LEXIS 48014 (S.D.N.Y. Mar. 29, 2017) .........................................9

*Dimatracopoulos v. City of New York*,
    26 F,Supp.3d 200, 209 (E.D.N.Y. 2014) ...........................................................2, 15

*Dowrich-Weeks v. Cooper Square Realty, Inc.*,
    535 F. App'x 9 (2d Cir. 2013) .......................................................................................11

*Ehrlich v. Dep't of Educ.*,
    2012 U.S. Dist. LEXIS 17285 (S.D.N.Y. Feb. 6, 2012).........................................21

**<u>Cases</u>**                                                                                                   **<u>Pages</u>**

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)......................................................................................16

*Fleming v. MaxMara USA, Inc.*,
   371 F. App'x 115 (2d Cir. 2010) (Summary Order)................................17

*France v. Touro Coll.*,
   2016 U.S. Dist. LEXIS 20006 (E.D.N.Y. Feb. 16, 2016)........................16

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006).................................................................................18, 23

*Garcia v. Hartford Police Dept*,
   706 F.3d 120 (2d Cir. 2013)........................................................................18

*Giordano-Forkan v. New York City Dep't of Educ.*,
   2014 U.S. Dist. LEXIS 153977 (S.D.N.Y. Oct. 17, 2014) ......................15

*Haggood v. Rubin & Rothman, LLC*,
   2014 U.S. Dist. LEXIS 161674 (E.D.N.Y. Nov. 17, 2014).................10, 13

*Haiai Yang v. Dep't of Educ.*,
   2016 U.S. Dist. LEXIS 97496 (E.D.N.Y. July 21, 2016) ........................10

*Halebian v. Berry*,
   644 F.3d 122 (2d Cir. 2011)..........................................................................3

*Henry v. NYC Health & Hosp. Corp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014)...........................................................13

*Hyek v. Field Support Servs. Inc.*,
   702 F.Supp.2d 84 (E.D.N.Y. 2010) ............................................................10

*Jackler v. Byrne*,
   658 F.3d 225 (2d Cir. 2011).......................................................................23

*Jones v. Target Corp.*,
   2016 U.S. Dist. LEXIS 61 (E.D.N.Y. Jan. 4, 2016) ................................10

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
   274 F.3d 706 (2d Cir. 2001)........................................................................18

*Lebowitz v. New York City Dep't of Educ.*,
   2017 U.S. Dist. LEXIS 50950 (E.D.N.Y. Mar. 31, 2017) ......................15

**Cases**                                                                                          **Pages**

*Levich v. Liberty Cent. Sch. Dist.*,
    361 F.Supp.2d 151 (S.D.N.Y. 2004) .......................................................................19

*Lewinter v. New York City Dep't of Educ.*,
    2010 U.S. Dist. LEXIS 68493 (S.D.N.Y. July 9, 2010) .........................................24

*Lewis v. Cowen*,
    165 F.3d 154 (2d Cir. 1999) ...................................................................................22

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) ..............................................................................9, 17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ......................................................................9, 11, 14

*Munoz-Nagel v. Guess, Inc.*,
    2013 U.S. Dist. LEXIS 61710 (S.D.N.Y. Apr. 30, 2013) ......................................12

*N.Y. State Law Officers Union v. Andreucci*,
    433 F.3d 320 (2d Cir. 2006) ...................................................................................22

*Nadolecki v. William Floyd Union Free Sch. District.*,
    2016 U.S. Dist. LEXIS 88399 (E.D.N.Y. July 6, 2016)
    (Report and Recommendation adopted by 2016 U.S. Dist. LEXIS 124221
    (E.D.N.Y., Sept. 13, 2016) ....................................................................................20

*Norton v. Breslin*,
    565 F. App'x 31 (2d Cir. 2014) .............................................................................22

*Ortiz v. Standard & Poor's*,
    2011 U.S. Dist. LEXIS 99122 (S.D.N.Y. Aug. 29, 2011) ......................................14

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) ...................................................................................16

*Payson v. Bd. of Educ. of Mt. Pleasant Cottage Sch.*,
    2017 U.S. Dist. LEXIS 154296 (S.D.N.Y. Sept. 20, 2017) ..............................18, 20

*PBS Building Systems, Inc. v. City of New York*,
    1996 U.S. Dist. LEXIS 15006 (S.D.N.Y. Oct. 8, 1996) .........................................24

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
    702 F.3d 685 (2d Cir. 2012) ...................................................................................16

*Rodriguez v. Int's Leadership Charter Sch.*,
    2009 U.S. Dist. LEXIS 26487 (S.D.N.Y. Mar. 30, 2009) ......................................21

**Cases**                                                                                                 **Pages**

*Ross v. N.Y.C. Dept. of Educ.*,
   935 F.Supp.2d 508 (E.D.N.Y. 2013) ...............................................................19, 23

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d Cir. 2008)...........................................................................18, 22

*Saulpaugh v. Monroe Cmty. Hosp.*,
   4 F.3d 134 (2d Cir. 1993)..................................................................................22

*Sotomayor v. City of New York*,
   862 F. Supp. 2d 226 (E.D.N.Y. 2012) ..............................................................9, 17

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
   663 F.3d 556 (2d Cir. 2011)...............................................................................11

*Thomas v. N.Y.C. Dep't of Educ.*,
   938 F. Supp. 2d 334 (E.D.N.Y. 2013) ................................................................24

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)................................................................................10

*Wang v. Palmisano*,
   51 F. Supp. 3d 521 (S.D.N.Y. 2014)...................................................................9

*Ward v. Shaddock*,
   2016 U.S. Dist. LEXIS 106438 (S.D.N.Y. Aug. 11, 2016) ...................................11

*Weintraub v. Board of Education of the City School District of the City of New
   York*,
   593 F.3d 196 (2d Cir. 2010)...........................................................................18, 20

*Woodlock v. Orange Ulster B.O.C.E.S.*,
   281 Fed. Appx. 66 (2d Cir. 2008) (Summary Order) ...........................................20

**Statutes**

42 U.S.C. §1983................................................................................................1, 2

Education Law § 209-a(1)(a) ..................................................................................7

Education Law § 209-a(1)(c) ..................................................................................7

Education Law §3020-a ....................................................2, 5, 6, 7, 10, 11, 13, 14

**<u>Statutes</u>**                                                                                                    **<u>Pages</u>**

Education Law § 3813 ...................................................................................................1, 24

Education Law § 3813(1)...................................................................................................24

Fed. R. Civ. P. 12(b)(6).......................................................................................................1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

MARGUERITE BAGAROZZI,

                                        Plaintiff,

                                                          18-cv-04893 (RA)

               -against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
SHOMARI AKIL, PRINCIPAL of QUEENS
ACADEMY HIGH SCHOOL; NATHIFA MORRIS,
ASSISTANT PRINCIPAL of QUEENS ACADEMY
HIGH SCHOOL,

                                        Defendants.

------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DEPARTMENT OF EDUCATION'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant New York City Department of Education ("DOE") respectfully submits this Memorandum of Law in support of its motion to dismiss the amended complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Section 3813 of the New York State Education Law.[1]

### PRELIMINARY STATEMENT

Marguerite Bagarozzi ("Plaintiff"), a tenured teacher with the New York City Department of Education ("DOE"), commenced this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1983 ("§1983"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the New York State and City Human Rights Laws ("SHRL" and "CHRL" respectively), claiming that she was discriminated against on the basis of her age (68)

---

[1] Upon information and belief, the putative individual defendants have not been properly served in this action. While no appearance is being made on their behalf, the arguments supporting dismissal would also apply to them, had they been served.

and race (white), and was allegedly retaliated against in violation of the First Amendment, enforceable through 42 U.S.C. §1983 for filing unions grievances purportedly on behalf of herself, fellow teachers, and special needs students.

For the reasons stated below, plaintiff's claims are subject to dismissal in their entirety.  Plaintiff's ADEA and Title VII claims of age and race discrimination are deficient for a multitude of reasons.  First, almost none of plaintiff's alleged employment actions rise to the level of adverse employment actions.  Instead, plaintiff primarily complains of receiving letters to file, negative performance ratings, instances where she was not permitted to view her school file, and exclusion from certain school events.  Second, plaintiff has failed to establish an inference of discrimination, as the amended complaint is devoid of any discriminatory comments and relies heavily on the overly vague notion that she was treated disparately from largely unidentified "younger" and "non-white" teachers.  Indeed, while plaintiff was disciplined pursuant to Education Law §3020-a – and received a $2,000 penalty – she notably fails to plead any facts plausibly establishing an inference of discrimination.  Third, despite claiming that she was denied the opportunity to engage in certain per session work,[2] plaintiff readily acknowledges that she did, in fact, earn per session income, and appears to rely on the vague suggestion that she could have earned more.  However, she fails to allege that she actually applied for – or asked about – any such additional opportunities, and that they were then actually denied.

Plaintiff's First Amendment retaliation claim – which is premised on the filing of five separate union grievances by plaintiff – fails as a matter of law because none of plaintiff's grievances constitute protected speech.  It is well established in this Circuit that union grievances

---

[2] Generally, "[p]er session work is a job performed by teachers before or after school hours, such as supervising or leading extracurricular activities or offering extra academic help." *Dimatracopoulos v. City of New York*, 26 F, Supp.3d 200, 209 (E.D.N.Y. 2014) (internal quotations omitted).

do not constitute speech made as a private citizen and, moreover, all of plaintiff's speech was part and parcel of her duties as a teacher.  Finally, plaintiff's SHRL and CHRL claims are subject to dismissal because plaintiff fails to plead that she filed a notice of claim, a necessary precondition for bringing suit against the DOE.

Accordingly, plaintiff's amended complaint should be dismissed in its entirety. Further, because Plaintiff has already taken the opportunity to amend her complaint, the Amended Complaint should be dismissed, with prejudice.

## STATEMENT OF FACTS

For the purposes of this motion only, the well-pled factual allegations in the amended complaint, the relevant portions of which are summarized below, are deemed to be true.  This statement of facts is supplemented, where appropriate, by information drawn from the exhibits attached to the Declaration of Evan M. Piercey ("Piercey Decl.").[3]

On or about 2000, Plaintiff, who self-identifies as 68 years old and white, commenced her employment with the DOE.  *See* Amended Complaint ("Am. Compl.") a copy of which is annexed to the Piercey Decl. as Exhibit A, at ¶¶ 9 and 11.  Since 2007, plaintiff has been employed as an English teacher at Queens Academy High School ("QA").  *See id.* at ¶ 8. In her capacity as an English teacher at QA, plaintiff has taught classes containing special needs

---

[3] Unless otherwise noted, all Exhibits referenced are annexed to the supporting Piercey Decl. The Court may consider these documents on this motion.  The documents attached hereto are admissible evidence because on a motion to dismiss, the Court may consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the amended complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  *See also Halebian v. Berry*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (Court may consider "documents incorporated by reference in the complaint") (internal quotation marks omitted); *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (may consider documents that are "integral to the plaintiff's claim").

students as well as general-education students.  *See* Plaintiff's State Division of Human Rights

Charge, Ex. B at 13-14 (explaining that plaintiff was observed teaching classes containing both

general-education and special education students).

Beginning in the 2015-2016 school year, Shomari Akil, whom plaintiff claims is

"approximately 53 years old and is black," served as the Principal at QA.  *See* Am. Compl. at ¶¶

6 and 15.  At the conclusion of the 2015-2016 school year, plaintiff claims that she received a

"Highly Effective" rating on her Measure of Teacher Practice ("MOTP") and an "Effective"

Overall rating.  *Id.* at ¶¶ 10, 25.  Nathifa Morris, whom plaintiff claims is "40 years old and

black," served as an Assistant Principal at QA during the 2016-2017 school year.  *Id.* at ¶ 7.

## A.    Plaintiff's Grievances

Beginning in the 2016-2017 school year, plaintiff claims that she served as a

"surrogate to the union chapter leader" and acted  "on behalf of and in the stead of the former

union chapter leader, Jennifer Squires," a role which purportedly entailed filing grievances "on

behalf of [plaintiff] herself and others."  *Id.* at ¶¶ 13, 17.

For example, on November 14, 2016, plaintiff claims that she filed a grievance

"regarding parking permits that were not extended to all staff members at the school."  *Id.* at ¶

18.  At some point thereafter, plaintiff claims that all faculty and staff were granted parking

privileges.  *Id.*  On December 1, 2016, plaintiff claims that she filed a grievance on behalf of

students at QA with special needs allegedly not receiving mandated services.  *Id.* at ¶ 19.

Plaintiff claims that, as a result of this grievance, the school hired a "self-contained special

education teacher."  *Id*.  On February 1, 2017, plaintiff claims that she, along with Squires,

"grieved the administration's failure to file an Occurrence Report[4] about an incident with a

---

[4] Plaintiff does not define the term "Occurrence Report" nor does she provide any further details
regarding this alleged incident.  *See* Am. Compl. at ¶ 20.

student." *Id.* at ¶ 20.  On May 1, 2017, plaintiff claims that she filed a grievance for improper

post-evaluation procedures pertaining to two separate observations on April 20 and 26, 2017, *Id.*

at ¶ 21.  On May 23, 2017, plaintiff claims that she filed a grievance "relating to a disciplinary

letter to file" that she received.  *Id.* at ¶ 22.

Plaintiff claims that, after filing these grievances, she was retaliated against in the

following ways: (1) she received "less-than-effective" evaluations and eventually received a

Developing MOTP rating for the 2016-2017 school year (*id.* at ¶¶ 25); (2) received disciplinary

letters to file (*id.* at ¶¶ 29-31, 48); (3) had an "unwarranted investigation" initiated against her by

Principal Akil after plaintiff allegedly fell on the floor at school.  *Id.* at ¶¶ 27-28.  Plaintiff also

claims that she was disparately treated on the basis of her race and age, as she claims that

younger and non-white teachers were afforded advance notice of meetings and classroom

observations and were permitted to park closer to school.  *Id.* at ¶¶ 34-37.  Plaintiff

acknowledges that she did earn per session income during the 2015-2016 and 2016-2017 school

years, but claims that she was denied "certain" per session income during the aforementioned

years, while younger, non-white teachers were purportedly "given" per session opportunities.  *Id.*

at ¶ 37.  Plaintiff does not identify any per session opportunities that she applied for and was

actually denied.  *See generally id.*  Additionally, plaintiff also claims that she was the only

teacher not invited to the school's annual staff potluck (*id.* at ¶ 44) or the school's graduation

ceremony (*id.* at ¶ 45) and had received disciplinary letters to file "in contravention of lawful

procedure.  *Id.* at ¶¶ 46-48.

**B.      Plaintiff's §3020-a Hearing**

On May 25, 2017, plaintiff claims that she was served with five separate

disciplinary charges pursuant to Education Law §3020-a (*id.* at ¶ 38):

**SPECIFICATION 1:** On or about April 13, 2015, [plaintiff]:

1.      Refused to assist student [name redacted] when he asked for an explanation regarding written feedback given to him by [plaintiff] for revising an essay;

2.      Caused [student name redacted] to experience stress, and/or anxiety, and/or panic, and/or feel uncomfortable.

**SPECIFICATION 2:**  On or about December 22, 2016, [plaintiff] attempted to defraud the New York City Department of Education in order to gain a personal benefit, in that [plaintiff] deliberately staged her own fall, in that she placed a bag on the ground and proceeded to trip over it.

**SPECIFICATION 3:**  On or about December 2016, [plaintiff] attempted to defraud the New York City Department of Education in order to gain a personal benefit, in that [plaintiff] completed and submitted document(s) purporting to explain an incident pertaining to an injury that allegedly occurred back on December 22, 2016, when in fact such incident or injury did not occur.

**SPECIFICATION 4:**  By committing one, some or all of the actions described in Specifications 1, [plaintiff] acted in a manner that had or would have had the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical well-being.

**SPECIFICATION 5:**  By committing one, some or all of the actions described in Specifications 1, [plaintiff] knowingly acted in a manner likely to be injurious to the physical mental or moral welfare of a child less than seventeen years old.

*See* §3020-a Opinion and Award, SED File No. 32,002, Ex. C at 2-4.

As a result of these charges, plaintiff claims, her "teaching assignment" was reassigned, but she remained in the building at QA.  *See* Compl. at ¶ 38.  After receiving these disciplinary charges, plaintiff claims that she was denied access to her classroom and personnel file and was not invited to school events.  *See* Compl. at ¶¶ 43-48.  Beginning on December 12, 2017 and continuing December 13 and 19, 2017 and January 3, 8, and 10, 2018, plaintiff's §3020-a hearings were conducted before Lisa C. Charles, a Hearing Officer ("HO Charles").  *See* §3020-a Opinion and Award at 1.  Plaintiff was represented by David Eisenstein, Esq., from the Office of Robert T. Reilly and the DOE was represented by Kareen Evans-McKay.  *Id.* at 1.  At the conclusion of plaintiff's hearings, on January 30, 2018, HO Charles issued an Opinion and

Order, sustaining Specifications 1, 4 and 5, and dismissing 2 and 3.  *Id.* at 16-17.  As a result, HO Charles issued a penalty, requiring that plaintiff pay a $2,000 fine and take training.  *Id.* at 17.

## C.      Plaintiff's Public Employment Relations Board Decision

On or about August 10, 2017, plaintiff claims that she filed an Improper Practice Charge with the Public Employment Relations Board ("PERB").  *See* Am. Compl. at ¶ 32.  On March 14, 2018, a hearing was held before Administrative Law Judge Elena Cacavas ("ALJ Cacavas"), during which plaintiff was represented by Bryan D. Glass and the DOE was represented by Anjanette D. Pierre.  *See* Ex. D, Decision in Case No. U-35863, In the Matter of Marguerite M. Bagarozzi, (hereafter "PERB Decision") at 1 and 12.  ALJ Cacavas found that plaintiff had filed five separate grievances during the 2016-2017 year, mirroring those cited in the amended complaint, and discussed *supra*.  *Compare* PERB Decision at 2-3 *with* Am. Compl. ¶¶ 18-22.  ALJ Cacavas ultimately found that AP Morris had no notice of plaintiff's grievances and complaints, thus, severing any causal connection between actions by Morris and plaintiff's union grievances.  *See id.* at 8-9.  ALJ Cacavas found that Morris had issued plaintiff negative evaluations on February 27 and April 26, 2017 (*id.* at 3), had called plaintiff in for a meeting to discuss grading policy (*id.*), and gave plaintiff notice of a disciplinary meeting that never occurred.  *Id.*

ALJ Cacavas ultimately found that the DOE "violated §§ 209-a(1)a) and (c) of the [Public Employees' Fair Employment Act] when [Principal] Akil initiated an investigation against [plaintiff], when he supported disciplinary charges against her [§3020-a charges], when he denied her per session work, and when he issued [the] May 18, 2017 disciplinary letter."  *Id.* at 11-12.  ALJ Cacavas credited plaintiff's testimony that Akil, in and around the spring of 2017 asked plaintiff "why she could not resolve her issues directly with him, instead of involving the

7

UFT?"  *Id.* at 4-5.  ALJ Cacavas explained that the "investigation" was initiated by Akil in the Spring of 2017 and it pertained to plaintiff's December 2016 slip and fall on school premises and plaintiff's claim that she slipped on a wet floor, which was contradicted by "school custodians and a surveillance video."  *Id.* at 4.  ALJ Cacavas also noted that in and around May 2017, Principal Akil received a report from the Office of Special Investigations, substantiating the claim of "fraudulent reporting" and recommending "that [plaintiff] be removed from the classroom and not participate in per session or summer school work."  *Id.* at 4, 6-7.

**D.     Plaintiff's New York State Division of Human Rights & EEOC Charges**

On August 10, 2017, plaintiff filed a charge with the New York State Division of Human Rights ("SDHR"), alleging race and age discrimination along with retaliation.  *See* Am. Compl. at ¶ 41; *see also* Ex. B (SDHR Charge).  In her SDHR charge, plaintiff set forth allegations of race and age discrimination, mirroring those set forth in the instant Complaint. *Compare* Am. Compl. *with* Ex. B (SDHR Charge at the "Addendum" and "Description").  On January 8, 2018, the SDHR dismissed plaintiff's charge for administrative convenience, explaining that plaintiff "intend[ed] to pursue federal remedies in court."  *See* SDHR Determination and Order of Dismissal for Administrative Convenience, Ex. E.  SDHR declared that plaintiff's charge was filed with the EEOC under Title VII and the ADEA.  *See id.*  On March 5, 2018, plaintiff reportedly received a Notice of Right to Sue from the EEOC.  *See* Am. Compl. at ¶ 53.

On June 1, 2018, plaintiff filed a Complaint in the Southern District of New York. *See generally* Compl., Ex. F.  Thereafter, on August 31, 2018, plaintiff filed an amended complaint.  *See* Ex. A, Am. Compl.

**ARGUMENT**

**POINT I**

**THE AMENDED COMPLAINT FAILS TO STATE A CLAIM OF RACE OR AGE DISCRIMINATION**

**1.      Plaintiff's Deficient Race and Age Discrimination Claims**

"The same framework and pleading standard governs" Title VII, ADEA[5], and SHRL claims.  *See Austin v. Ford Models*, 149 F.3d 148 (2d Cir. 1998) (Title VII and ADEA). To survive a motion to dismiss, an employment discrimination complaint "must be plausibly supported [with] facts alleged in the complaint that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and [establish] at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015).

Under Title VII, the ADEA, and the SHRL, an adverse employment action is one that is a "materially adverse change in the terms and conditions of employment."  *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 253 (E.D.N.Y. 2012) (internal citations omitted); *see also Davis v. Goodwill Indus. Of Greater N.Y. & N.J.*, 2017 U.S. Dist. LEXIS 48014 (S.D.N.Y. Mar. 29, 2017).[6]  Moreover, for ADEA claims, "at the pleading stage, a plaintiff must plausibly allege that (1) [not only] her employer took an adverse employment action against her; [but also]

---

[5] Neither Title VII nor the ADEA provide for individual liability.  *See Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 Fed. Appx. 60, 61-62 (2d Cir. 2016) (Title VII); *Wang v. Palmisano*, 51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014) (ADEA).  Consequently, to the extent that Plaintiff is making any claims under Title VII or the ADEA against the individual defendants, such must be dismissed.

[6] While courts must analyze CHRL discrimination claims independently from state and federal law, "[t]he NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives, or if the defendant proves the conduct was nothing more than petty slights or trivial inconveniences." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109, 113 (2d Cir. 2013).

(2) her age was the 'but-for' cause of the employer's adverse action." *Jones v. Target Corp.*, 2016 U.S. Dist. LEXIS 61 at *11 (E.D.N.Y. Jan. 4, 2016) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).

When bringing suit under a theory that plaintiff was treated less favorably than those outside her protected group, a plaintiff must "show that the employee to whom she compares herself is similarly situated in all material respects." *Hyek v. Field Support Servs. Inc.*, 702 F.Supp.2d 84, 97 (E.D.N.Y. 2010) (internal quotations omitted); *see also Haiai Yang v. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 97496 at *24 (E.D.N.Y. July 21, 2016) (internal quotations omitted). At the pleading stage "a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the [purported] comparators are similarly situated." *Haggood v. Rubin & Rothman, LLC*, 2014 U.S. Dist. LEXIS 161674 at *28 (E.D.N.Y. Nov. 17, 2014) (quotations omitted).

### A.   Virtually None of Plaintiff's Allegations Rise to the Level of Adverse Employment Actions Sufficient to Support Her Claims

Other than Plaintiff's claim that she was brought up on §3020-a charges, which resulted in a $2,000 fine, and her allegation that she was denied per session work – both of which are discussed in greater detail Sections 1(C) and 1(D), *infra*, none of plaintiff's allegations constitute adverse employment actions under federal or State anti-discrimination law. Rather, Plaintiff alleges only that she: (1) received negative performance evaluations (*See* Am. Compl. at ¶¶ 2527, 60, 63, 66, 69);[7] (2) received disciplinary letters to file (*id.* at ¶¶ 29-31, 35, 48); did not receive "advance notice of meetings" and events (*id.* at ¶ 34); (4) was denied a request to park

---

[7] While it appears that plaintiff solely contends these negative evaluations were in retaliation for alleged protected speech, in an excess of caution, defendants analyze these as potential adverse employment actions for the purposes of her discrimination claims. *See* Am. Compl. at ¶¶ 17-33.

closer to school (*id.* at ¶ 36); and (5) was denied access to the school following her reassignment due to §3020-a charges (*id.* at ¶¶ 43-48), none of which constitute adverse employment actions for the purposes of a discrimination claim, at least under federal and State law.[8]   *See e.g. Chung v. City Univ. of N.Y.*, 605 Fed. Appx. 20, 22 (2d Cir. 2015) ("a negative performance review, without more, does not represent an adverse employment action."); *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11-12 (2d Cir. 2013) (negative remarks about plaintiff, moving plaintiff from an office to a cubicle, and not permitting plaintiff to take advantage of an alternative work schedule were not adverse employment actions); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567-572 (2d Cir. 2011) (criticism not adverse employment action); c*f Ward v. Shaddock*, 2016 U.S. Dist. LEXIS 106438, *15-16 & n. 4 (S.D.N.Y. Aug. 11, 2016) (granting motion to dismiss on discrimination claims and holding that assigning plaintiff to allegedly inferior equipment, assigning the plaintiff to a less desirable shift, and reducing plaintiff's supervisory authority did not support such claims).

Moreover, for the reasons discussed Section 1(D), *infra*, plaintiff's allegation that she was denied certain per session opportunities also fails to rise to the level of an adverse employment action because plaintiff fails to allege that she actually applied for – and was denied – any per session opportunities, thus, rendering this allegation insufficient to support her discrimination claims.

### B.   Plaintiff Fails to Plausibly Allege Discriminatory Animus

At the outset, Plaintiff does not allege that any remarks pertaining to her race or age were made, and she provides no specific factual allegations that support the existence of racial or age-based animus.   *See generally* Am. Compl.   Rather, Plaintiff's race and age

---

[8] Even under the CHRL standard, plaintiff must show discriminatory animus, *see Mihalik, supra*, and, as discussed in sub-points 2 and 3 below, she cannot do so.

discrimination claims are rooted in her conclusory allegation that "similarly situated, younger, non-white teachers…have been treated better than Plaintiff," who self-identifies as 68-years old and white.  *See id.* at ¶ 34-37.  In purported support of this allegation, Plaintiff cites only three examples of what she claims constituted disparate treatment.   In contrast to the treatment allegedly received by her proposed comparators, plaintiff claims that she : (1) was "not given advance notice of meetings on numerous occasions" whereas "similarly situated younger non-white teachers, such as Yisena Leon and Lynnea Moore" received such notice (*id.* at  ¶ 34); (2) was not permitted to park closer to school (*id.* at ¶ 36); and (3) was denied the opportunity to earn "certain" per session income during the 2015-2016 and 2016-2017 school years.  *Id.* at ¶ 30.[9]

First, as discussed Section 1(A), *supra*, and Section 1(D), *infra*, none of these actions – even assuming they occurred – constitute adverse employment actions.   Second, plaintiff identifies only two teachers by name, and only in the context of claiming these two teachers, unlike plaintiff, allegedly received "advanced notice" of meetings.  *See* Am. Compl. at ¶ 34.   Plaintiff, however, sets forth no factual allegations specifying who the unnamed and unidentified "younger" and "non-white" teachers are that were purportedly offered more per session income opportunities than she and were permitted to park closer to school.  *See* Am. Compl. at ¶¶ 36-37.   Accordingly, without further factual amplification, Plaintiff's generic

---

[9] Plaintiff also claims "[u]pon information and belief…Defendants issued letters to file to and held disciplinary conferences exclusively and only with white teachers at the school."  *See* Am. Compl. at ¶ 35.  However, these are not entitled to be taken as true or into account for plaintiff's discrimination claims.  *See e.g.  Bohnet v. Valley Stream Union free Sch. Dist. 13*, 30 F.Supp.3d 174, 181 (E.D.N.Y. 2014) (granting motion to dismiss age discrimination claims where plaintiff failed to accompany her facts pled upon information and belief with a statement of facts upon which the belief was founded); *Munoz-Nagel v. Guess, Inc.*, 2013 U.S. Dist. LEXIS 61710 at *24 (S.D.N.Y. Apr. 30, 2013) (granting motion to dismiss ADEA claims where they were pled "upon information and belief" without a statement of facts upon which the belief is founded).

allegations of disparate treatment in relation to an unspecified of group of "younger…non-white" individuals, are simply not sufficient to nudge Plaintiff's claims across the line from conceivable to plausible.  *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing claims of disparate treatment where the amended complaint "fail[ed] to describe who [the comparators] are, what their responsibilities were, how their workplace conduct compared to [plaintiff's], or how they were treated"); *see also Blige v. City Univ. of New York*, 2017 U.S. Dist. LEXIS 8345 at * 27 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.* who they are, what their positions or responsibilities were, how their conduct compared to plaintiffs' or how they were treated differently by defendants") (citations omitted); *Haggood*, 2014 U.S. Dist. LEXIS 161674 at *28-29 (granting motion to dismiss where, while identifying specific comparators, plaintiffs failed to demonstrate that they were similarly situated in all material respects).

### C.    Plaintiff Fails to Plead that Her §3020-a Disciplinary Charges Occurred Under Circumstances Giving Rise to Discrimination

As already noted Plaintiff fails to plead that either of the individually-named defendants – or anyone else at the DOE – made any comments pertaining to her age or race.  *See generally* Am. Compl.  Plaintiff also notably fails to explicitly plead that the institution of her §3020-a disciplinary charges, or the alleged resultant actions (loss of per session income, summer school pay, and a $2,000 fine), were the product of discrimination based on her race or age.  *See* Am. Compl. at ¶¶ 34-53, 59-70.  While Plaintiff alleges that the §3020-a disciplinary charges, resulting reassignment, and fine, constituted adverse employment actions for the purposes of her ADEA, Title VII,  SHRL, and CHRL claims (*see* Compl. at ¶¶ 59-70), the Amended Complaint is devoid of any facts supporting the contention that plaintiff's §3020-a

charges occurred on account of plaintiff's race or age.  *See generally* Compl.  Instead, plaintiff simply includes the §3020-a charges in her sections entitled "Discrimination and Hostile Work Environment Due to Age and Race" (Am. Compl. at page 4) and "Claims for Relief," but fails to draw any connection between the charges and her race or age.  *See id.* at ¶¶ 34-53, 59-70.  Thus, it is insufficient to simply recite the "false syllogism: (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)."  *Bermudez v. City of New York*, 783 F.Supp.2d 560, 581 (S.D.N.Y. 2011); *see also Ortiz v. Standard & Poor's*, 2011 U.S. Dist. LEXIS 99122, 14 (S.D.N.Y. Aug. 29, 2011) ("The fact that plaintiff was (a) fifty-nine years old and (b) terminated, cannot, without more, constitute a plausible age discrimination claim").  Even under the CHRL, plaintiff must set forth some allegations tending to demonstrate a causal connection between her race or age, something she has failed to do.  *See Mihalik*, 715 F.3d at 113.

Accordingly, because plaintiff sets forth no plausible factual allegations supporting an inference that her §3020-a charges, or any resulting employment actions, such as plaintiff's purported inability to earn per session income or summer school pay (*see* Am. Compl. at ¶ 41), occurred on account of her race or age, such actions cannot support her discrimination claims.

### D.   Plaintiff's Alleged Discriminatory Denial of Per-Session Opportunities is Nevertheless Deficient As a Matter of Law

Unlike the first complaint, where plaintiff claimed that she was denied the opportunity to earn per session income during the 2015-2016 and 2016-2017 school years (*see* Ex. F at ¶ 30), she now contends that she was denied the opportunity to "earn *certain* per session income."  *See* Am. Compl. at ¶ 37 (emphasis added).  Despite claiming – devoid of any support or factual specifics – that "younger, non-white teachers" were "directly given" per session

opportunities, plaintiff candidly admits that she nonetheless earned per session income during the aforementioned school years.  It appears that, at this point, plaintiff's sole qualm is over the apparent amount of per session income that she earned.

To reiterate, "[p]er session work is a job performed by teachers before or after school hours, such as supervising or leading extracurricular activities or offering extra academic help." *Dimatracopoulos v. City of New York*, 26 F,Supp.3d 200, 209 (E.D.N.Y. 2014) (internal quotations omitted). Notably absent from plaintiff's amended complaint, just as was from her first complaint (*See* Ex. F at ¶ 30), are any allegations that she actually applied for, or even asked to apply for, and was denied any per session or summer opportunities.  *See generally* Am. Compl.  Accordingly, without any plausible allegations that she applied for – or asked for any opportunities – and was actually denied the ability to perform per session or summer work, plaintiff's claimed loss of opportunities is "too speculative" and incapable of serving as a predicate for her discrimination claims.  *Giordano-Forkan v. New York City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 153977 at *9 n.2 (S.D.N.Y. Oct. 17, 2014) (quotations omitted); *see also Lebowitz v. New York City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 50950 at *18-19 (E.D.N.Y. Mar. 31, 2017) (declining to consider an alleged loss of per session work an adverse employment action where plaintiff failed to allege that "he ever applied for other employment, rendering speculative his claim that he was denied other potential work opportunities"); *cf. Carmellino v. Dist. 20 of the N.Y. City Dep't of Educ.*, 2006 U.S. Dist. LEXIS 63705 at *95 (S.D.N.Y. Sept. 6, 2006) (rejecting an ADEA retaliation claim where plaintiff failed to demonstrate that he, among other things, actually applied for and was denied per session work).

Accordingly, Plaintiff's race and age discrimination claims should be dismissed in their entirety.

2.      **Plaintiff's Deficient Hostile Work Environment Claim**

For a viable hostile work environment claim under federal and State law, a plaintiff must set forth facts demonstrating that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Rivera v. Rochester Genesee Reg'l Transp. Auth*., 702 F.3d 685, 698 (2d Cir. 2012) (Title VII). Although the CHRL standard is less demanding, to survive a motion to dismiss under the CHRL, a plaintiff must allege more than petty slights or trivial inconveniences. *France v. Touro Coll.*, 2016 U.S. Dist. LEXIS 20006, *32 (E.D.N.Y. Feb. 16, 2016).

In considering whether a work environment is hostile, courts look to the "totality of the circumstances," which include the frequency and severity of the conduct, whether the conduct is threatening and humiliating or merely an offensive utterance, and whether the conduct unreasonably interferes with the plaintiff's work performance. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). To be considered "pervasive," the incidents must be "more than episodic," they must be "sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). This inquiry is intended to filter out complaints "attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'" and to ensure that the only actionable conduct is that which is sufficiently "extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted).

At the outset, plaintiff fails to allege that any remarks were made by the individual defendants – or anyone, for that matter – that plaintiff considered to be discriminatory. *See generally* Am. Compl. Rather, it appears that her hostile work environment claim based on age and race is predicated on the alleged disparate treatment, discussed Section B, *supra*, along

16

with plaintiff's alleged exclusion from a school potluck luncheon and graduation ceremony along with the placement of letters to her file "in contravention of lawful procedure" (s*ee id.* at ¶¶ 44-48), none of which can plausibly support a hostile work environment.  *See e.g. Littlejohn*, 795 F.3d at 321 (holding that a hostile work environment is not supported where plaintiff alleged that: "[supervisor] made negative statements about [plaintiff] to [agency director]; [supervisor] was impatient and used harsh tones with [plaintiff]; [supervisor] distanced herself from [plaintiff] when she was nearby; [supervisor] declined to meet with [plaintiff]; [supervisor] required [plaintiff] to recreate reasonable accommodation logs; [supervisor] replaced [plaintiff] at meetings; [supervisor] wrongfully reprimanded [plaintiff]; and [supervisor] increased [plaintiff]'s reporting schedule.  [Supervisor] also sarcastically told [plaintiff] 'you feel like you are being left out,' and that [plaintiff] did not 'understand the culture' at [the agency]"); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (Summary Order) (no hostile work environment where "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").  Moreover, as discussed in Section 1(B) and (C), *supra*, plaintiff has failed to plausibly plead any discriminatory animus or that any actions occurred on account of her race or age, rendering her hostile work environment claim under the CHRL similarly deficient.  *See Sotomayor*, 862 F. Supp. 2d at 261 (dismissing CHRL hostile work environment claim where plaintiff could not show that the environment was created "because of her race, age, or national origin") (internal quotations omitted).

## POINT II

## PLAINTIFF FAILS TO ESTABLISH FIRST AMENDMENT RETALIATION

A public employee bringing a First Amendment retaliation claim must demonstrate that: (1) the speech at issue was made as a citizen on matters of public concern; (2) she suffered an adverse employment action; and (3) the speech was "at least a substantial or motivating factor in the adverse employment action." *Garcia v. Hartford Police Dept*, 706 F.3d 120, 129-130 (2d Cir. 2013) (internal quotation marks, modification brackets, and citations omitted). In assessing whether a matter is of public concern, the Court must determine whether the employee's speech was made to redress a personal grievance or whether it had a broader public purpose. *See Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008). "[S]peech made 'pursuant to' a public employee's job duties," is "'speech that owes its existence to a public employee's professional responsibilities,'" and is not protected by the First Amendment. *Weintraub v. Board of Education of the City School District of the City of New York*, 593 F.3d 196, 201 (2d Cir. 2010) (quoting *Garcetti v. Ceballos*, 547 U.S. 410 at 421 (2006)). Importantly, "If the plaintiff spoke as a public employee, or if the subject of the plaintiff's speech was not a matter of public concern, that is the end of the matter." *Payson v. Bd. of Educ. of Mt. Pleasant Cottage Sch.*, 2017 U.S. Dist. LEXIS 154296 at *40 (S.D.N.Y. Sept. 20, 2017).

As a threshold matter, plaintiff claims that the PERB decision "may have collateral estoppel effect on her First Amendment retaliation claims herein." Am. Compl. at ¶ 33. While it is well-settled that New York "courts give quasi-judicial administrative *fact finding* preclusive effect," (*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 728 (2d Cir. 2001) (emphasis added), whether plaintiff spoke as a citizen on a matter of public concern is a question of law and plaintiff's PERB decision is entitled to no preclusive effect as to those

issues, *see e.g. Levich v. Liberty Cent. Sch. Dist.*, 361 F.Supp.2d 151, 161 (S.D.N.Y. 2004) (several district courts "have declined to extend preclusive effect to unreviewed agency determinations of law").   Thus, to the extent plaintiff attempts to use the PERB decision to preclude this Court from deciding whether she spoke as a citizen on a matter of public concern, such an argument would contravene the law of this Circuit and would seek to usurp an important role of this Court in deciding a question of law.

### 1.      Plaintiff Spoke as a Public Employee, Not a Private Citizen

Plaintiff characterizes herself as a "surrogate to the union chapter leader" and sets forth five separate acts of alleged protected speech: (1) a November 14, 2016 grievance filed on behalf of faculty and staff at her school complaining that "parking permits were not extended to all staff members at the school;" (*see* Am. Compl. ¶ 18); (2)  a December 1, 2016 "grievance against her administration on behalf of students at the School relating to students with special needs not receiving mandated services;" (*see id.* at ¶ 19); (3) a February 1, 2017 grievance pertaining to the administration's alleged "failure to file an Occurrence Report about an incident with a student;" (*id.* at ¶ 20);[10] (4) a May 1, 2017 grievance for an improper post-evaluation procedure pertaining to observations on April 20 and 26, 2017; (*id.* at ¶ 21); and (5) a May 23, 2017 grievance pertaining to a disciplinary letter to file.  *Id.* at ¶ 22.

As discussed in greater detail below, it is axiomatic that such speech – made in plaintiff's capacity as a union surrogate, or her individual grievances – "owes [its] existence to her professional responsibilities," and cannot constitute protected speech.  *Ross v. N.Y.C. Dept. of Educ.*, 935 F.Supp.2d 508, 516 (E.D.N.Y. 2013).   Moreover, as there is no "civilian analogue[]" for plaintiff's union activity, it is necessarily part and parcel of her role as a public

---

[10] Plaintiff fails to define the term "Occurrence Report" and omits any factual information about the alleged incident.  *See* Am. Compl. at ¶ 20.

employee, and does not constitute protected speech.  *See Payson*, 2017 U.S. Dist. LEXIS 154296 at *56.  As the Second Circuit held in *Weintraub*, "[t]he lodging of a union grievance is not a form or channel of disclosure available to non-employee citizens," *see Weintraub*, 593 F.3d at 204, a holding which is fatal to plaintiff's claim.

### A.  Plaintiff's Purported Grievance on Behalf of Students with Special Needs was Part and Parcel of Her Duties as a Teacher

Turning to plaintiff's purported grievance on behalf of students with special needs, for the same reasons discussed *supra*, because this speech, as even plaintiff concedes, was made in plaintiff's purported capacity as a union surrogate (*see* Am. Compl. at ¶¶ 13, 17), such speech was made as a public employee, not a citizen, and is not entitled to First Amendment protection.  *See e.g. Payson*, 2017 U.S. Dist. LEXIS 154296 at *56.  Moreover, where a plaintiff "use[s] channels of communication only available to [her] in [her] official capacity as a teacher," as plaintiff did here when she admittedly "filed a grievance" (Am. Compl. at ¶ 19), it is beyond dispute that such speech was not made as a private citizen.  *Nadolecki v. William Floyd Union Free Sch. District.*, 2016 U.S. Dist. LEXIS 88399 at *17-18 (E.D.N.Y. July 6, 2016) (Report and Recommendation adopted by 2016 U.S. Dist. LEXIS 124221 (E.D.N.Y., Sept. 13, 2016) (citing cases for the same proposition)).

Furthermore, courts in this Circuit have routinely held that complaints made by teachers of special needs and special education students are done so pursuant to their official duties, not as private citizens.  *See e.g. Woodlock v. Orange Ulster B.O.C.E.S.*, 281 Fed. Appx. 66, 68 (2d Cir. 2008) (Summary Order) ("[Plaintiff's] communications regarding…the lack of physical education and art classes at the Cornwall satellite were made pursuant to her official duties as a special education counselor, in which capacity she was responsible for monitoring her students' behavior, needs, and progress"); *Agyeman v. Roosevelt Union Free Sch. Dist.*, 254 F.

Supp. 3d 524, 527-529, 535-539  (E.D.N.Y. 2017) (plaintiff's letter to outside offices and internal emails complaining of, *inter alia*, the lack of resources and support for and  the failure of the school to provide "mandated accommodations" for students were made in her official capacity not as a private citizen); *Ehrlich v. Dep't of Educ.*, 2012 U.S. Dist. LEXIS 17285 at *1-2 8 (S.D.N.Y. Feb. 6, 2012) (granting defendants' motion to dismiss plaintiff's First Amendment claim of retaliation where plaintiff complained to "DOE employees and…two private advocacy groups…about Defendants' alleged failure to deliver appropriate educational services to…disabled students in her…class"); *Rodriguez v. Int's Leadership Charter Sch.*, 2009 U.S. Dist. LEXIS 26487 at *8-9 (S.D.N.Y. Mar. 30, 2009) (granting defendants' motion to dismiss First Amendment retaliation claims where a teacher complained to the New York State Department of Education about the schools' failure to provide special needs students with certain services, finding that such speech was pursuant to her official duties as a teacher).

While plaintiff fails to specify in the amended complaint that she in fact teaches students with special needs, her SDHR charge sheds light on that issue.  *See* Ex. B at 13-14.  In her SDHR charge, she wrote that she was observed by her principal teaching a class where a "number" of special education students were present and she further wrote that she "teach[es] English, and in order to differentiate and offer various entry points as well as visual learning opportunities to students, particularly special education students, [she] was forced to show them speeches and the like on [her] mobile phone."  *See* Ex. B at 13-14.  Thus, as the cases cited above instruct, plaintiff's alleged grievance pertaining to students with special needs not receiving mandated services was made in her capacity as a teacher.  Indeed, if we are to accept as true plaintiff's purported motivation for filing the grievance, where she writes in the amended complaint that the school was violating "city and state law" by not providing mandated services

(Am. Compl. at ¶ 19), such speech would be "directly related to her responsibilities as a teacher because reporting a violation of state law to ensure the welfare of students *is a duty of a teacher*, and in furtherance of the execution of one of her core duties." *Agyeman*, 254 F. Supp 3d at 537 (internal quotations omitted) (emphasis added).

        Accordingly, because plaintiff spoke as a public employee, not a private citizen when she filed the union grievances at issue, her First Amendment retaliation claim must fail on that ground alone.

**2.**      **A Majority of Plaintiff's Purported Speech Did Not Touch on Matters of Public Concern**

        While plaintiff claims that her grievances are evidence of "union advocacy and representation on behalf of other union members" and that the grievances "touched on matters that affected not just Plaintiff individually," her own allegations actually refute this self-serving conclusion. *See* Am. Compl. at ¶¶ 23-24.  Speech that is calculated to advance an individual's employment grievance "does not advance a public purpose" and therefore does "not constitute speech on a matter of public concern." *Ruotolo*, 514 F.3d at 189; *see also N.Y. State Law Officers Union v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) ("mere employee grievances do not qualify as matters of public concern").  Moreover, "speech on a purely private matter, such as an employee's dissatisfaction with the conditions of [her] employment, does not pertain to a matter of public concern." *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999); *see also Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (employee's complaints would have been on a matter of public concern only if they implicated "system-wide discrimination").  Indeed, complaints of individualized wrongdoing which "are not connected to any broader policy or practice … do not raise a public concern of systemic discrimination." *Norton v. Breslin*, 565 F. App'x 31, 34 (2d Cir. 2014).

Plaintiff's (1) a November 14, 2016 grievance filed on behalf of faculty and staff at her school complaining that "parking permits were not extended to all staff members at the school;" (*see* Am. Compl. ¶ 18); (2) February 1, 2017 grievance pertaining to the administration's alleged "failure to file an Occurrence Report about an incident with a student;" (*id.* at ¶ 20);[11] (3) a May 1, 2017 grievance for an improper post-evaluation procedure pertaining to observations on April 20 and 26, 2017; (*id.* at ¶ 21); and (4) a May 23, 2017 grievance pertaining to a disciplinary letter to file all fail to rise to the level of speech that touches on a matter of public concern. *See e.g. Ross v. New York City Dep't of Educ.*, 935 F.Supp. 2d 508, 524 (E.D.N.Y. 2013) ("Speech that, although touching on a topic of general importance, primarily concerns and issue that is personal in nature and generally related to [the speaker's] own situation, such as his or her assignments, promotion, or salary, does not address matters of public concern") (internal quotations omitted).  Indeed, "Government offices could not function if every employment decision became a constitutional matter" (*Garcetti*, 547 U.S. at 419), "[r]ather, a topic is a matter of public concern for First Amendment purposes if it is of general interest, or of legitimate news interest, or of value and concern to the public at the time of the speech." *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011).

Accordingly, plaintiff's First Amendment retaliation claim should be dismissed.

---

[11] To briefly reiterate, as set forth *supra*, footnote 10, plaintiff fails to define the term "Occurrence Report" and omits any factual information about the alleged incident.  *See* Am. Compl. at ¶ 20.

23

## POINT III

### PLAINTIFF'S SHRL AND CHRL CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENTS IN EDUCATION LAW §3813(1)

Section 3813(1) of the Education Law requires that a notice of claim be filed before any suit may be brought against the DOE or its officers:

> No action . . . or claim against the district or any such school, or involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education . . . or any officer of a school district, [or] board of education . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school ***within three months after the accrual of such claim***, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

N.Y. Education Law § 3813(1) (emphasis added).

"Compliance with Section 3813(1) is a prerequisite for a suit naming a school district or its officers, and a plaintiff's failure to plead compliance with New York's notice of claim requirements mandates dismissal." *Lewinter v. New York City Dep't of Educ.*, 2010 U.S. Dist. LEXIS 68493, 7 (S.D.N.Y. July 9, 2010), *citing PBS Building Systems, Inc. v. City of New York*, 1996 U.S. Dist. LEXIS 15006, 3 (S.D.N.Y. Oct. 8, 1996) ("The appropriate remedy for failure by the plaintiff to comply with a statutory notice of claim requirement is dismissal of the action, even if the claim is meritorious."). "Failure to satisfy [§ 3813's] requirements is 'fatal' to a claim filed against a school board under state or city law, regardless of whether the claim is brought in state or federal court." *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 360 (E.D.N.Y. 2013).

Plaintiff fails to plead that she filed a notice of claim; consequently, her SHRL and CHRL claims must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant DOE respectfully requests that the Court grant its motion to dismiss the amended complaint in its entirety, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:          New York, New York
                September 14, 2018


                              **ZACHARY W. CARTER**
                              Corporation Counsel of the
                              City of New York
                              Attorney for Defendant DOE
                              100 Church Street, Room 2-184
                              New York, New York 10007
                              (212) 356-2428
                              epiercey@law.nyc.gov

                              By:  _____/s/_____
                                   Evan M. Piercey
                                   Assistant Corporation Counsel


Donald C. Sullivan
Evan M. Piercey,
Of Counsel.