UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/31/19

---

MARGUERITE BAGAROZZI,

                Plaintiff,

-v-

NEW YORK CITY DEPARTMENT OF
EDUCATION; SHOMARI SKIL, PRINCIPAL
of QUEENS ACADEMY HIGH SCHOOL;
NATHIFA MORRIS, ASSISTANT
PRINCIPAL of QUEENS ACADEMY HIGH
SCHOOL,

                Defendants.

No. 18-CV-4893 (RA)

MEMORANDUM OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Marguerite Bagarozzi, a high school teacher, filed this action alleging that Defendants New York City Department of Education ("DOE"), Queens Academy High School Principal Shomari Akil, and Assistant Principal Nathifa Morris discriminated against her, subjected her to a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the New York State Human Rights Law, the New York City Human Rights Law, and the First Amendment to the United States Constitution. The DOE moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Section 3813 of the New York State Education Law. For the reasons stated below, the motion is granted and Plaintiff's action is dismissed, albeit without prejudice.

## BACKGROUND[1]

Plaintiff has been employed as a high school English teacher at Queens Academy High School ("School") since 2007. She is a 68-year-old white woman, and is among the oldest teachers at the School. Defendants Akil and Morris ("Individual Defendants"), who were removed from the School in 2017, are black and significantly younger than Plaintiff. Plaintiff was the surrogate for the union chapter leader for the Jamaica campus of the School since the beginning of the 2016–17 school year. Throughout her teaching career, Plaintiff has generally been rated Satisfactory, Effective and/or Highly Effective.

A series of disputes arose between Plaintiff and the Individual Defendants between 2015 and 2018. Several of these disputes involved Plaintiff—acting as a "union surrogate"—filing grievances against the School administration. On November 15, 2016, after being denied the ability to park closer to the School due to a foot injury and noticing that Principal Akil permitted such parking by younger, non-white teachers, Plaintiff filed a grievance on behalf of the School's faculty and staff regarding parking permits that were not extended to all faculty and staff members. All faculty and staff were thereafter permitted to park near the back of the School. This permission was subsequently rescinded, yet several non-white faculty members allegedly continued to park in the lot.

Next, on December 1, 2016, Plaintiff filed a grievance against the School administration on behalf of students at the School with special needs who were not receiving mandated services, in violation of city and state law. On or about February 1, 2017, Plaintiff, along with union chapter leader Jennifer Squires, filed a grievance relating to the administration's failure to file a report

---

[1] These facts are drawn from the Amended Complaint and documents incorporated by reference into the Amended Complaint, which the DOE appended to its memorandum of law. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (documents to which plaintiff refers, or had knowledge of and upon which plaintiff relied in bringing the action, may be considered on a motion to dismiss).

about an incident with a student. On May 1, 2017, Plaintiff filed a grievance in response to improper procedures relating to observations, and on May 23, 2017, she filed another grievance relating to a disciplinary letter which was issued to her more than three months after an incident, in violation of certain provisions of her contract. After Plaintiff filed these grievances, she alleges she started receiving more critical evaluations despite having earned a Highly Effective Measure of Teacher Performance ("MOTP") and Effective Advance Overall Rating the year before. Plaintiff ultimately received the lower rating of Developing MOTP during the 2016–17 school year as a result of these evaluations.

Plaintiff contends that Defendants also treated "similarly situated, younger, non-white teachers" better than her on several occasions. First, rather than posting "per session income" opportunities, Defendants gave the majority of them directly to younger, non-white teachers.[2] Plaintiff was therefore unable to earn certain per session income during the 2015–16 and 2016–17 school years. Although Plaintiff did receive some per session income during these two school years, she alleges she would have applied for more opportunities to earn such income if they had been publicly posted. Second, as noted, younger, non-white teachers were allowed to park closer to the School, while Plaintiff was not. Third, younger, non-white teachers were given advance notice of meetings and observations, which she was not. Fourth, Defendants issued disciplinary letters and held disciplinary conferences "exclusively and only with white teachers" at the School. The Amended Complaint lists numerous disciplinary letters that Plaintiff received, and alleges Defendants issued these letters in contravention of required procedures.

---

[2] "Per session" work is "a job performed by teachers before or after school hours, such as supervising or leading extracurricular activities or offering extra academic help." *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 209 (E.D.N.Y. 2014) (citation omitted).

Plaintiff was also involved in several adversarial proceedings against the School administration. First, after Plaintiff fell at the School on December 22, 2016, she filed an incident report, and Principal Akil accused her of attempting to defraud the DOE so as to receive medical leave time. The DOE then commenced a disciplinary proceeding against Plaintiff, pursuant to New York State Education Law § 3020–a, accusing her of attempting to defraud the agency in order to secure a personal benefit and, in connection with a separate alleged incident, refusing to assist a student when he asked for help with revising an essay.[3] The hearing officer dismissed the fraud claim but sustained the refusal-to-assist claim, issuing Plaintiff a $2,000 penalty and requiring her to go through training on how to better assist students.

Second, after the DOE commenced this disciplinary proceeding against Plaintiff, she initiated her own proceeding against the DOE and Principal Akil with the Public Employment Relations Board ("PERB").[4] On August 16, 2018, the PERB judge issued a decision finding that the DOE and Akil had retaliated against Plaintiff due to her union activities by issuing her a disciplinary letter and by pursuing disciplinary charges against her. The DOE was ordered to cease retaliating against Plaintiff, remove from her file the May 18, 2017 disciplinary letter, make her whole for lost per session work and the $2,000 fine she incurred as a result of the disciplinary proceedings, and to post a public notice of the award.

Third, on the same day she commenced her PERB proceedings, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR") against Defendants, alleging age and race discrimination as well as retaliation. *See* Def. Decl. Ex. B. The SDHR dismissed

---

[3] The actual charge against Plaintiff included five distinct "specifications," but for purposes of simplicity, the Court groups them into these two categories. *See* Def. Decl. Ex. C at 2–3.

[4] Documents related to the PERB proceeding identify the Respondent as "Board of Education of the City School District of the City of New York." *See* Def. Decl. Ex. D. at 1. For consistency, the Court refers to this entity as the DOE.

Plaintiff's complaint for administrative convenience, in light of her intention to file the present action in federal court.

Plaintiff alleges that the commencement of disciplinary proceedings against her caused her significant economic and proprietary loss, as well as exclusion from School events. Because the proceedings led to her reassignment from her duties, she says she has been unable to earn per session and summer school pay. She was also denied access to her classroom to collect her personal and professional belongings, and was repeatedly denied access to her personnel file. Plaintiff was only permitted access to the file after she threatened to contact her union. Moreover, according to Plaintiff, she was the only teacher not invited to the School's annual Staff Potluck Luncheon and the School's graduation ceremony.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Lopez v. Acme Am. Envtl. Co., Inc.*, No. 12-CV-511, 2012 WL 6062501, at *2 (S.D.N.Y. Dec. 6, 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not accepted as true and "do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    Claims Against the Individual Defendants are Dismissed for Lack of Service

Defendants Akil and Morris have not appeared in this case, and in the DOE's motion to dismiss, it notes that, "[u]pon information and belief, the putative individual defendants have not been properly served in this action." Mot. at 1 n.1. The Affidavit of Service of Summons and Complaint as to the Individual Defendants states that the documents were delivered to "the respondent's place of Work within the State of New York" at Queens Academy High School, 142-10 Linden Blvd., Jamaica, NY 11426, and left with the current principal and assistant principal. Dkt. 12. Under N.Y. C.P.L.R. § 308, personal service may be made by delivering the summons to a person of suitable age and discretion at the actual place of business of the person to be served. The Amended Complaint, however, acknowledges that neither Individual Defendant has worked at Queens Academy High School since 2017. Am. Compl. ¶¶ 15–16. Under C.P.L.R. § 308, an actual place of business is a "defendant's business address at the time of service, and not when the cause of action arose." *Jackson v. Cty. of Nassau*, 339 F. Supp. 2d 473, 478 (E.D.N.Y. 2004). Plaintiff offers no explanation for why she attempted service on the Individual Defendants at an address she knew was not their present place of business. *Cf. McCord v. Larsen*, 18 N.Y.S.3d 458, 460 (N.Y. App. Div. 2015) (permitting service on defendant's former spouse at his old residence and business location where "plaintiff produced proof that, among other things, at the time of the deliver and mail service, defendant still advertised the [] location as his business address and he had not changed his address from such location with either the post office or the Department of Motor Vehicles"). Without any such explanation from Plaintiff, Queens Academy High School does not qualify as the Individual Defendants' "actual place of business" for purposes of C.P.L.R. § 308. *See Silvering v. Sunrise Family Med.*, P.C., 78 N.Y.S.3d 143, 144–45 (N.Y. App. Div. 2018) (failure to serve under C.P.L.R. § 308 where plaintiffs attempted service on defendant's former

employer); *Barnes v. City of New York*, No. 13-CV-7283, 2015 WL 4076007, at *21 (S.D.N.Y. July 2, 2015), *report and recommendation adopted*, No. 13-CV-7283, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015) (same). As the Individual Defendants were not served within 90 days since the Amended Complaint was filed, the Court dismisses the action as to these defendants, but does so without prejudice. *See* Fed. R. Civ. P. 4(m).

## II.     Plaintiff's SHRL and CHRL Claims are Procedurally Barred

The DOE argues that Plaintiff's state and municipal claims must be dismissed because Plaintiff failed to serve it with a "notice of claim" as required by state law. New York Education Law § 3813 requires a plaintiff to present a notice of claim to the governing body of the relevant district or school prior to initiating a lawsuit "against any school district, board of education, board of cooperative educational services, school [or] . . . any officer of a school district, board of education, board of cooperative educational services, or school." N.Y. Educ. Law § 3813(1). "[T]he failure to serve the proper public body with a notice of claim is a fatal defect mandating dismissal of th[e] action." *Wesley–Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 411 (S.D.N.Y. 2013) (internal quotation marks omitted).

The DOE was entitled to a notice of claim before Plaintiff could commence her action in federal court, and Plaintiff admits she did not file such notice. Instead, Plaintiff argues that "the Court should consider that Defendants were on notice through Plaintiff's official complaint filing with the New York State Division of Human Rights as early as August 10, 2017." Opp. at 13. Although some courts have held that filing an EEOC or SDHR complaint may satisfy the notice of claim requirement, *see, e.g., Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, No. 14-CV-6416, 2017 WL 2374363, at *8 (S.D.N.Y. May 31, 2017), *aff'd*, 750 F. App'x 41 (2d Cir. 2018), the plaintiff must still plausibly allege that the administrative complaint met § 3813's

requirements. Here, however, Plaintiff "alleges only the date that she filed the EEOC [and SDHR] charge." *Legrá v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 14-CV-9245, 2016 WL 6102369, at *3 (S.D.N.Y. Oct. 19, 2016). She does not allege that these complaints provided notice of a "written verified claim upon which such action or special proceeding is founded," that she served these complaints on the governing arm of the school district, or that she did so within three months of the time her claims accrued. N.Y. Educ. Law § 3813(1). Accordingly, Plaintiff has failed to satisfy § 3813(1)'s notice of claim requirement, and her state and municipal claims against the DOE are procedurally barred.

### III.    Plaintiff Fails to State a Title VII or ADEA Claim

As the Individual Defendants have been dismissed for lack of service, and the state and municipal claims against the DOE have been dismissed pursuant to N.Y. Educ. Law § 3813, the only disparate treatment claims that remain are the Title VII and ADEA claims of unlawful discrimination and hostile work environment.[5] Title VII and the ADEA impose "[t]he same pleading requirements" both for discrimination claims, *see Sinopoli v. Regula*, 125 F.3d 844

---

[5] In this Circuit, to establish *Monell* liability against a municipal agency under § 1983, a plaintiff must show "(1) the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." *Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011) (summary order) (citation omitted). "[T]he single act of a municipal policymaker, *i.e.*, a person with the authority to set municipal policy, can constitute official policy, and thus, can give rise to municipal liability." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citation omitted). Such authority rests only with "the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 482–83, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). Plaintiff, however, does not allege that Principal Akil or Assistant Principal Morris had final policymaking authority, and Defendant fails to provide any argument on this issue. Because the Court dismisses the action on other grounds, it need not resolve this issue, and assumes, for purposes of this discussion only, that the Individual Defendants acted as final policymakers for the DOE.

(table), 1997 WL 624987, at *1 (2d Cir. Oct. 7, 1997), and hostile work environment claims. *See Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

## A. Unlawful Discrimination

"[T]o defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). On the first prong, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry*, 336 F.3d at 138 (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (alteration and internal quotation marks omitted).

While Plaintiff alleges various actions taken by Defendants against her, she appears to concede in her memorandum in opposition that only three could plausibly constitute adverse employment actions: "1) Suffered lost wages as a result of losing per session overtime opportunity; 2) Been charged with § 3020–a disciplinary charges seeking termination of her employment; 3) Lost income as a result of her § 3020–a hearing."[6] Opp. at 8. Each of these qualifies as an adverse

---

[6] The other alleged discriminatory conduct under the heading "Discrimination and Hostile Work Environment Due to Age and Race" in the Amended Complaint—conduct which Plaintiff does not allege constituted adverse employment actions—is considered in the assessment of Plaintiff's hostile work environment claim. *See infra* Part II.B.

employment action. As to Plaintiff's claimed loss of per session income, there appear to be two components to this allegation. First, Plaintiff has alleged that, as a general matter, Defendants selectively offered per session income opportunities to younger, non-white teachers. The DOE contends that this cannot qualify as an adverse employment action because Plaintiff's Amended Complaint is devoid of "any allegations that she actually applied for, or even asked to apply for, and was denied any per session or summer opportunities." Memo. at 15. Plaintiff responds that it was impossible to apply for and be denied these opportunities as "the majority of opportunities were *only* offered directly to younger, non-white teachers." Opp. at 8 (emphasis in original). Yet Plaintiff does not identify *any* specific opportunities from which she was excluded. The sweeping allegation that she was unable to apply for "the majority of opportunities" is simply too vague and "too speculative" to constitute an adverse employment action, *Giordano-Forkan v. New York City Dep't of Educ.*, No. 13-CV-6950, 2014 WL 5369426, at *3 n.2 (S.D.N.Y. Oct. 17, 2014), particularly given that she acknowledges she was able to apply for certain opportunities.

The second component of her per session income allegation, however, qualifies as an adverse employment action. Plaintiff alleges that when she was served with disciplinary charges, she was "reassigned from her teaching assignment" which rendered her "unable to earn any per session and summer school pay—which she had obtained the previous three years—causing her significant economic loss." Am. Compl. ¶¶ 38, 41. Plaintiff's allegation is supported by the record in the PERB hearing, where Defendant Akil testified that the Office of Special Investigations had "recommended that Bagarozzi be removed from the classroom and not participate in per session or summer school work." Def. Decl. Ex. D at 7. Unlike Plaintiff's first allegation, this one identifies an adverse action that was directed at her specifically, which is corroborated by the DOE's own citation of the administrative record. Thus, Plaintiff's loss of per session income as a result of the

10

disciplinary proceeding qualifies as an adverse employment action.[7] Similarly, with regard to the § 3020–a disciplinary charge and resulting penalties, Plaintiff has plausibly pled an adverse employment action. The proceedings resulted in disciplinary penalties, both monetary and non-monetary, against Plaintiff. Def. Decl. Ex. C at 17. Because these penalties caused Plaintiff "a material loss in benefits," they qualify as adverse employment actions.

Next, "at the pleadings stage of an employment discrimination case, a plaintiff has a '*minimal* burden' of alleging facts 'suggesting an inference of discriminatory motivation'" for the adverse employment action. *Vega*, 801 F.3d at 85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). A plaintiff can meet her burden "through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (citations omitted). "A plaintiff may prove discrimination indirectly either by . . . showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Id.* (citations omitted).

Here, Plaintiff does not point to any direct evidence of Defendants' intent to discriminate. Instead, she relies exclusively on indirect evidence, alleging four instances at work where she was purportedly treated less favorably than employees without her protected status. First, "similarly situated younger non-white teachers, such as Yisena Leon and Lynnea Moore," were allegedly

---

[7] By contrast, Plaintiff does not plausibly allege she was "unable to pursue" an offer of a 2017 summer school position "due to her pending Section 3020-a case," as she admitted in the PERB hearing that she "turned it down because of the pending § 3020-a case and because she was 'trying to be honorable and do the right thing.'" Def. Decl. Ex. D at 5. This Court agrees with the PERB hearing officer that "the District cannot be held accountable for a decision she voluntarily made, despite the asserted rationale for her reason." *Id.* at 11.

"given advance notice of meetings and observations on numerous occasions," while Plaintiff was not. Am. Compl. ¶ 34. Second, Defendant Akil allegedly denied Plaintiff permission to park closer to the school after she injured her foot and had difficulty walking, while granting such permission to younger, non-white teachers. *Id.* ¶ 36. Third, as discussed, Plaintiff was denied the opportunity—available to "similarly situated younger, non-white teachers"—to earn per session income. *Id.* ¶ 37. Finally, Defendants allegedly "issued letters to file and held disciplinary conferences exclusively and only with white teachers at the school."[8] *Id.* ¶ 35.

These allegations fail to "suggest[] an inference of discriminatory motivation" for the disciplinary action taken against Plaintiff. *Vega*, 801 F.3d at 87. First, Plaintiff cites to no evidence that, with regard to the disciplinary charge and proceeding, she was treated less favorably than similarly situated employees without her protected characteristics. Her only allegation is that the school "issued letters to file and held disciplinary conferences exclusively and only with white teachers at the school" and is based solely upon information and belief. "Though a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded." *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013) (internal citations and quotation marks omitted). Plaintiff offers no factual support for her claim that only white teachers at her school are

---

[8] That an adverse employment action results in a finding of just cause for discipline does not preclude a plaintiff from stating a discrimination claim. In the context of § 3020–a disciplinary proceedings, "[t]he Second Circuit has held that a finding of just cause for termination or discipline, resulting from a § 3020–a hearing, does not necessarily preclude the possibility that the adverse employment action was 'motivated by unlawful animus.'" *Jackson v. City of New York*, No. 14-CV-5755, 2015 WL 5698535, at *3 (S.D.N.Y. Sept. 28, 2015) (citing *Leon v. N.Y. City Dep't of Educ.*, No. 14–1811, 2015 WL 2444502, at *1 (2d Cir. May 22, 2015)).

placed in disciplinary proceedings; for instance, she has not identified any non-white teachers who engaged in similar misconduct and were not placed in disciplinary proceedings.

Moreover, facts alleged upon information and belief should be "peculiarly within the possession and control of the defendant[,]" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted), whereas Plaintiff makes no allegations regarding Defendants' possession of such information. Instead, she appears to acknowledge that she has enough information to specify similarly situated individuals, but has not identified them in her Amended Complaint because she wishes to safeguard the privacy interests of "other individuals with the same positions (teacher) and the same workplace (her school) who suffered similar treatment." Opp. at 12. Plaintiff appears to misunderstand what is required in a discrimination case: she must identify similarly situated individuals who received different, more favorable treatment. *See Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 896 (2d Cir. 2012) (affirming dismissal of plaintiff's claim where plaintiff "fail[ed] to identify any material difference between his treatment and that of similarly situated persons who do not fall within his protected classes").

The other allegations—regarding parking privileges, per session income opportunities, and advance notice of meetings and observations—also fail to support an inference of discriminatory intent. The parking privileges and per session income allegations do not include any relevant facts about Plaintiff's similarly situated comparators. "Although Plaintiff need not proffer evidence of a similarly situated comparator at this stage, the Court must still determine, based on the factual allegations in the Complaint, if it is plausible that a jury could determine that the comparators are similarly situated and that they were treated differently." *Rosario v. Town of Mount Kisco*, No. 16-CV-8766, 2018 WL 2209487, at *7 (S.D.N.Y. May 11, 2018). For the parking privileges and per session opportunity allegations, besides referring to "similarly situated younger, non-white

13

teachers," Am. Compl. ¶¶ 34, 37, Plaintiff "fails to identify, let alone describe, any purported comparator." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014).

The allegation about other teachers receiving advance notice of meetings and observations does name two individuals who received such notice (Yisena Leon and Lynnea Moore), but is wholly unrelated to the adverse employment actions described above. In other words, the allegedly preferential treatment Leon and Moore received with respect to notice of meetings and observations does not support an inference that Plaintiff's protected status "was a motivating factor *in the employment decision.*" *Vega*, 801 F.3d at 86 (emphasis added). *Cf. Estevez v. S & P Sales & Trucking LLC*, No. 17-CV-1733, 2017 WL 5635933, at *3 (S.D.N.Y. Nov. 22, 2017) (plaintiff was fired for stealing, whereas a similarly situated employee of a different race was not fired for stealing). Here, Plaintiff fails to allege any facts connecting the foregoing examples of disparate treatment to her employer's motive for pursuing the disciplinary action. In her allegation regarding advance notice of meetings and observations given to younger, non-white teachers, for example—the only allegation where she identifies specific individuals who received favorable treatment—Plaintiff mentions neither who provided such notice to these teachers nor when this disparate treatment happened in relation to the May 25, 2017 commencement of disciplinary proceedings against her. That two non-white, younger teachers received advance notice of meetings and observations at an unknown date from an unknown school administrator does not support an inference that the school principal subjected Plaintiff to disciplinary proceedings because of her age and race. *See Sank v. City Univ. of New York*, No. 10-CV-4975, 2011 WL 5120668, at *9 (S.D.N.Y. Oct. 28, 2011) (allegations of past discrimination against women and gender-discriminatory faculty appointments were "unrelated" to alleged adverse employment action of the school re-allocating plaintiff's storage space).

For the foregoing reasons, Plaintiff's discrimination claims under Title VII and the ADEA fail to state a claim for relief.

## B.    Hostile Work Environment

"To establish a hostile work environment under Title VII . . . , a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (citation omitted). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* at 321 (citation omitted). A court must consider the totality of the circumstances in evaluating a hostile work environment claim, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Even if a plaintiff is able to demonstrate "severe or pervasive" wrongdoing toward her at the workplace, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

The only allegations in the Amended Complaint that arguably support an inference of discriminatory intent in the hostile work environment claim, however, are those the Court has already found insufficient in the context of Plaintiff's age and race discrimination claims. *See, e.g.*, *Hicks v. Rubin*, 6 F. App'x 70, 73 (2d Cir. 2001) (summary order) (affirming dismissal of hostile work environment claim for "same reason" as disparate treatment claim where plaintiff failed to establish that supervisors' conduct toward plaintiff "was motivated by her race"). For the same

reasons Plaintiff fails to plausibly allege she suffered an adverse action because of her age or race, her hostile work environment claim fails.

## IV.     Plaintiff Fails to State a First Amendment Retaliation Claim

Plaintiff next alleges she was subjected to retaliation for her advocacy as a union surrogate. As a threshold matter, Plaintiff suggests that an administrative law decision in her favor "may have collateral estoppel effect on her First Amendment retaliation claim herein." Am Compl. ¶ 33. In support of this claim, she references the Public Employment Relations Board decision holding that Defendants Akil and the DOE retaliated against her by issuing her a May 18, 2017 disciplinary letter and by "preferring" Education Law Section § 3020–a charges against her. *Id.* To invoke collateral estoppel in New York, "there must be an 'identity of issue which has necessarily been decided in the prior action and is decisive of the present action,' and the party to be estopped must have had a 'full and fair opportunity to contest the decision now said to be controlling.'" *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001) (quoting *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71 (1969)). "The burden of proving identity of the issue rests on the proponent of collateral estoppel." *Id.* Here, Plaintiff makes no attempt, either in her Amended Complaint or her memorandum in opposition to Defendant's motion, to discuss the merits of the PERB decision, let alone explain how the issues are identical. Rather, she asserts only that the PERB decision "may" collaterally estop the First Amendment inquiry here. Am Compl. ¶ 33. Defendant has further failed to set forth any argument that it did not have a full and fair opportunity to contest the PERB decision. The Court need not settle the question of whether Defendant had an opportunity to contest the decision, however, as the decision only has preclusive effect with respect to factual determinations, *see Univ. of Tennessee v. Elliott*, 478 U.S. 788, S. Ct. 3220, 92 L. Ed. 2d 635 (1986), and on a motion to dismiss, the Court only makes legal determinations while

construing facts in Plaintiff's favor. *See Ray v. Weit*, 708 F. App'x 719, 722 (2d Cir. 2017) (summary order) ("[A] factual dispute . . . could not have been resolved on a motion to dismiss[.]"). Thus, even if the PERB decision had "fact-finding preclusive effect" on this claim, its legal determinations—which cited only to prior PERB decisions and did not mention the First Amendment—are not binding on this Court. *See Buttaro v. City of New York*, No. 15-CV-5703, 2016 WL 4926179, at *6 (E.D.N.Y. Sept. 15, 2016), *on reconsideration in part*, No. 15-CV-5703, 2017 WL 1906725 (E.D.N.Y. May 8, 2017). The Court will therefore decide *de novo* whether Plaintiff has plausibly alleged a First Amendment retaliation claim.

"To prove that a public employer unlawfully retaliated against an employee for their speech in violation of the First Amendment, the plaintiff must show that (1) the speech at issue was 'made as a citizen on matters of public concern rather than as an employee on matters of personal interest,' (2) he or she suffered an adverse employment action, and (3) 'the speech was at least a substantial or motivating factor in the [adverse employment action].'" *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 129–30 (2d Cir. 2013) (alteration in original) (citations omitted). On the first prong, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960, 164 L. Ed. 2d 689 (2006). The Supreme Court in *Garcetti* defined speech made "pursuant to" official duties as "speech that owes its existence to a public employee's professional responsibilities." *Id.* Put another way, in such cases "there is no relevant analogue to speech by citizens who are not government employees." *Id.* at 424. Whether the speech was part of an employee's official, written duties is not dispositive. "[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or

17

included in, the employee's job description, or in response to a request by the employer." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010).

Of the five grievances Plaintiff references in the Amended Complaint, three clearly did not constitute speech as a private citizen: the February 1, 2017 grievance regarding the administration's failure to file an "Occurrence Report," the May 1, 2017 grievance for "improper post-evaluation procedures relating to observations," and the May 23, 2017 grievance relating to a disciplinary letter placed in her file which was issued in contradiction of contractual provisions. Am. Compl. ¶¶ 20–22. These individual grievances, which Plaintiff does not allege she lodged on behalf of others, relate exclusively to her ability to "properly execute [her] duties as a public school teacher." *Weintraub*, 593 F.3d at 203. The conclusion that Plaintiff's speech in these three examples was pursuant to her job duties "is supported by the fact that [her] speech ultimately took the form of an employee grievance, for which there is no relevant citizen analogue." *Id.* These three grievances were therefore not protected by the First Amendment.

Next, Plaintiff alleges her grievance relating to staff parking privileges was protected. Even assuming Plaintiff spoke about parking privileges as a private citizen, however, this is not a matter of public concern. Plaintiff's allegation that she made this grievance as a union representative on behalf of others does not elevate its public importance to the level of, for example, the grievances in *Pekowsky v. Yonkers Board of Education*, 23 F. Supp. 3d 269 (S.D.N.Y. 2014), which "champion[ed] teachers' due process rights, insist[ed] on union representation for teachers, and oppos[ed] [management's] compensation proposal regarding extracurricular supervision." *Id.* at 277. Whereas "[u]nion representation is a matter of importance to the functioning of our public education system" and thus a matter of public concern, *id.*, the issue of where staff members can park their cars is not.

18

Finally, Plaintiff alleges her grievance relating to the lack of mandated services for students with special needs was protected. Numerous courts have found similar employee speech to be professional, not private, and therefore unprotected. *See Agyeman v. Roosevelt Union Free Sch. Dist.*, 254 F. Supp. 3d 524, 536 (E.D.N.Y. 2017) (collecting cases). For example, one court in this district dismissed a First Amendment retaliation claim because the "[p]laintiff's speech pertaining to the location and scheduling of the services for her special education students clearly falls within the scope of her professional duties." *White v. City of New York*, No. 13-CV-7156, 2014 WL 4357466, at *11 (S.D.N.Y. Sep. 3, 2014). The fact that a non-employee citizen could analogously report a lack of mandated services for students with special needs does not alter this result, as "[r]eporting a violation of state law to ensure the welfare of students is a duty of a teacher, and 'in furtherance of the execution of one of her core duties.'" *Harris v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 230 F. Supp. 3d 88, 102 (E.D.N.Y. 2017) (quoting *Weintraub*, 593 F.3d at 203).

Plaintiff responds that "she is not a Special Education teacher, but an English teacher," and argues that "ensuring that . . . students with special needs receive their mandated services falls outside the scope of [her] employment duties." Opp. at 15. *Garcetti* and numerous cases since, however, have rejected the argument that job title determines whether a plaintiff spoke as a citizen. *See O'Connor v. Huntington U.F.S.D.*, No. 11-CV-1275, 2014 WL 1233038, at *8 (E.D.N.Y. Mar. 25, 2014) ("Taking plaintiff's position—that the 'pivotal' distinction 'is whether the speech relates to the plaintiffs' own students, classrooms, curricula, safety, and employment'—to its natural conclusion, a teacher would not be speaking as an employee if she reported that another teacher's students cheated or that another teacher abused her student.") (citation omitted). Furthermore, Plaintiff does not allege that, through the filing of this grievance, she engaged in "policy-oriented

speech [that] was neither part of [her] job description nor part of the practical reality of [her] everyday work." *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015). At bottom, the vast majority of cases involving speech similar to Plaintiff's have found the speech unprotected under the "functional approach" endorsed by *Garcetti*. *Matthews v. City of New York*, 779 F.3d 167, 173 (2d Cir. 2015).

Even if Plaintiff's speech were protected, however, and addressed a matter of public concern, there is no plausible allegation that it was "at least a substantial or motivating factor in the [adverse employment actions].'" *Garcia*, 706 F.3d at 129–30. "A plaintiff can establish the causal connection between protected expression and an adverse employment determination indirectly by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir.2004) (internal quotation marks omitted). Nowhere in Plaintiff's Amended Complaint or opposition to the present motion does she allege a causal connection between her speech on services for students with special needs and the various adverse employment actions discussed above. There is no allegation, for example, that the speech was "closely followed in time by the adverse [employment] action[s]." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (internal quotation marks omitted). After all, Plaintiff filed the grievance on December 1, 2016, and the adverse employment actions did not begin until May of 2017. Thus, even if Plaintiff spoke as a public citizen on behalf of special needs students, her Amended Complaint is devoid of any plausible allegations linking this speech to subsequent retaliation.

## CONCLUSION

For the foregoing reasons, the DOE's motion to dismiss is granted and the claims against the Individual Defendants are dismissed for lack of service. Plaintiff has thirty days to file a second amended complaint, provided that she has a good faith basis for doing so. Otherwise, the case will be closed and all of Plaintiff's federal, state, and municipal law claims will be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to close the motion pending at docket number 19.

SO ORDERED.

Dated:     March 31, 2019
          New York, New York

Ronnie Abrams
United States District Judge