UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

MARGUERITE BAGAROZZI

                                Plaintiff,

            -against-


NEW YORK CITY DEPARTMENT OF
EDUCATION; SHOMARI AKIL, PRINCIPAL
of QUEENS ACADEMY HIGH SCHOOL;
NATHIFA MORRIS, ASSISTANT
PRINCIPAL of QUEENS ACADEMY HIGH
SCHOOL,

                           Defendants.

_____

**SECOND**
**AMENDED COMPLAINT**

18-cv-04893 (RA)

JURY TRIAL DEMANDED


      Plaintiff **MARGUERITE BAGAROZZI**, by and through her attorneys GLASS &

HOGROGIAN LLP, as and for her Second Amended Complaint, alleges as follows:


## PRELIMINARY STATEMENT

      1.      Plaintiff tenured English teacher Marguerite Bagarozzi brings this action against

the New York City Department of Education ("NYCDOE"), as well as her former Principal,

Shomari Akil, and former Assistant Principal, Nathifa Morris, (1) pursuant to 42 U.S.C. Section

1983 for retaliation based on her union activities as protected by the First Amendment; (2)

pursuant to the Age Discrimination in Employment Act ("ADEA") for discrimination,

retaliation, and hostile work environment; (3) pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII") for discrimination, retaliation, and hostile work environment; (4) pursuant to

the New York State Human Rights Law ( "NYSHRL") for discrimination, retaliation, and hostile

work environment due to her age and race; and (5) pursuant to the New York City Human Rights

1

Law ( "NYCHRL") for discrimination, retaliation, and hostile work environment due to her age and race.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves the First Amendment, ADEA, Title VII, and Section 1983.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

4.      Plaintiff Marguerite Bagarozzi is a resident of the City of New York and State of New York.

5.      At all times relevant herein, Defendant NYCDOE is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq.*, and a recipient of federal and state funds.

6.      At all times relevant herein, Shomari Akil was the Principal of Queens Academy High School, a high school in District 25 of Queens, New York, within the NYCDOE. Upon information and belief, he is approximately 53 years old and is black.  He is sued in his individual and official capacity.

7.      At all times relevant herein, Nathifa Morris was an Assistant Principal at Queens Academy High School in Queens, New York, within the NYCDOE. Upon information and belief, she is approximately 40 years old and black.  She is sued in her individual and official capacity.

## FACTUAL ALLEGATIONS

8.    Plaintiff has been employed as a high school English teacher at Queens Academy High School ("the School") since 2007.

9.    She has been teaching within the NYCDOE since 2000.

10.    Plaintiff has generally been rated Satisfactory and/or Effective and/or Highly Effective throughout her teaching career.

11.    Plaintiff is 68 years old and white.

12.    Plaintiff is among the eldest and most senior teachers at the School.

13.    Plaintiff was the surrogate for the union chapter leader for the Jamaica campus of the School since the beginning of the 2016-17 school year. As union surrogate for the Jamaica campus, Plaintiff acted on behalf and in the stead of the former union chapter leader, Jennifer Squires.

14.    Defendants Akil and Morris are significantly younger than Plaintiff and black.

15.    Upon information and belief, Defendant Akil has been principal at the School since the 2015-16 school year. However, Defendant Akil was removed as principal of the School in or around August 2017.

16.    Upon information and belief, Defendant Morris was excessed from the School in or around September 2017.

### First Amendment Retaliation

17.    During the 2016-17 school year, Plaintiff filed grievances on behalf of herself and other staff members at the School as surrogate to the union chapter leader.

18.    On November 14, 2016, Plaintiff filed a grievance on behalf of the faculty and staff at the School regarding parking permits that were not extended to all staff members at the school. Following the filing of this grievance, all faculty and staff were granted the privilege to

3

park by the back of the School.  Parking privileges were rescinded shortly thereafter; yet there were several non-white faculty members that continued to park in the lot.

19.     On December 1, 2016, Plaintiff filed a grievance against her administration on behalf of students at the School relating to students with special needs not receiving mandated services, which was in violation of city and state law. Eventually, as a result of this union grievance, a self-contained special education teacher was hired at the school.

20.     Shortly thereafter, on or about February 1, 2017, Plaintiff, along with chapter leader Jennifer Squires, grieved the administration's failure to file an Occurrence Report about an incident with a student.

21.     On May 1, 2017, Plaintiff filed a grievance for improper post-evaluation procedures relating to observations conducted on April 20 and 26, 2017.

22.     On May 23, 2017, Plaintiff filed a grievance relating to a disciplinary letter to file which was issued to her more than three months after an incident, in contradiction of contractual provisions.

23.     In filing these aforementioned grievances, Plaintiff engaged in union advocacy and representation on behalf of other union members, which qualifies as conduct as a private citizen, and which is protected under the First Amendment.

24.     Additionally, the grievances that Plaintiff filed touched on matters that affected not just Plaintiff individually, but which affected all or many union members at her school. **The grievances regarding special needs violations at the school filed on behalf of students touch upon matters of public concern.**

25.     Following the issuance of these grievances, during the second half of the 2016-17 school year, Plaintiff suddenly started receiving less-than-effective evaluations after having

4

received a Highly Effective Measure of Teacher Performance ("MOTP") and Effective Advance Overall Rating the year before.

26.    Plaintiff ultimately received a Developing MOTP rating during the 2016-17 school year as a result of these less-than-effective evaluations.

27.    Plaintiff also received unwarranted disciplinary letters from administration and became the subject of unwarranted investigations during the 2016-17 school year.

28.    Specifically, after Plaintiff fell at school on December 22, 2016 due to a slippery floor, Defendant Akil falsely accused Plaintiff of intentionally falling in order to defraud Defendant NYCDOE of medical leave time. Defendant Akil initiated an unwarranted investigation with the Special Commissioner of Investigation for the New York City School District ("SCI"), which was substantiated by SCI, but later unsubstantiated and dismissed by an impartial Section 3020-a hearing officer at Plaintiff's subsequent disciplinary hearing.

29.    On March 10, 2017, Defendant AP Morris issued Plaintiff a letter advising her to change her grading policy. Plaintiff complied with this directive, yet Defendants failed to memorialize this in writing.

30.    On May 5, 2017, Assistant Principal ("AP") Derek Phillips issued Plaintiff a disciplinary letter, at the direction of Defendants, substantiating an allegation of verbal abuse against her, which was issued late to her, in violation of the UFT-DOE contract.

31.    On May 18, 2017, AP Phillips, at the direction of Defendants, issued Plaintiff another letter informing Plaintiff once again that the same allegation as contained in the May 5, 2017 letter was substantiated, again which was issued late to her, in violation of the UFT-DOE contract.

32.     Plaintiff filed an Improper Practice Charge with the Public Employment Relations Board ("PERB") on or about August 10, 2017.

33.     On August 16, 2018, PERB Administrative Law Judge Elena Cacavas issued a decision holding that Defendants Shomari Akil and NYCDOE retaliated against Plaintiff due to her union activities by issuing her the May 18, 2017 letter to file and by preferring Education Law Section 3020-a charges against her, which may have collateral estoppel effect on her First Amendment retaliation claim herein. **Defendant NYCDOE appealed the ALJ's decision, but the appeal was affirmed by the PERB appeal board that Plaintiff was the victim of union-based retaliation, as noted by the attached decision dated December 17, 2018.**

**Discrimination and Hostile Work Environment Due to Age and Race**

34.     Plaintiff is aware of similarly situated, younger, non-white teachers at the School who have been treated better than Plaintiff, including, but not limited to, not being given advance notice of meetings and observations on numerous occasions that the similarly situated younger non-white teachers, such as Yisena Leon and Lynnea Moore, were given notice of.   **Ms. Leon and Ms. Moore are significantly younger than Plaintiff and nonwhite.**

35.     Upon information and belief of Plaintiff, Defendants issued letters to file to and held disciplinary conferences exclusively and only with white teachers at the school.

36.     In or around October 2016, Plaintiff injured her foot/toe and had difficulty walking. She requested from Defendant Principal Akil permission to park closer to the school, but he denied her request. However, Plaintiff was aware of other younger, non-white teachers, **including Yesenia Leon, Lynnea Moore, and Dr. Lawrence,** who had been given permission to park closer to the school than Plaintiff by Defendant Akil.

6

37.     Additionally, Plaintiff was denied the opportunity to earn certain per session income during the 2015-16 and 2016-17 school years than similarly situated younger, non-white teachers were given. These opportunities were not even posted by the school administration, as they should have been, but were rather directly given to certain individuals by Defendants. Although Plaintiff did receive some per session income during these two school years, the majority of opportunities were only offered directly to younger, non-white teachers. Had these opportunities been publicly posted and available for Plaintiff to apply to, she would have sought to work in such capacity.   **Specifically, for the summer of 2017, Plaintiff was offered two summer employment per session teaching opportunities in early or mid June 2017 at Bryant High School and Pathways High School in Queens, NY.  Plaintiff was not allowed to take these positions because of pending Section 3020-a charges during this time period. This caused approximate loss of pensionable income of about $4,000-$5,000.   Plaintiff was told by DOE communications that she could not accept these positions with 3020-a charges pending and did not want to risk additional discipline by taking a position she was not entitled to.**

38.     **In late May and early June 2017, Plaintiff was not permitted to conduct Regents tutoring at Queens Academy for six hours of week, which resulted in a loss of approximately $1,000 in pensionable income.  Because of the pending Section 3020-a charges, she was not allowed to accept this tutoring.  Previously to the charges, Plaintiff had retention rights for this per session activity and was guaranteed the position in English.**

39.     On or about May 25, 2017, Plaintiff was reassigned from her teaching assignment because she had been served with Education Law Section 3020-a ("3020-a") disciplinary charges that same day. However, Plaintiff remained in the building at all times. Upon information and

belief of Plaintiff, Defendant Akil made the decision to initiate and serve Education Law Section 3020-a charges on Plaintiff.

40.     The Section 3020-a charges contained five distinct specifications relating to two alleged incidents.

41.     The first allegation dated back to the 2014-15 school year, while the second allegation dated back to the 2016-17 school year.

42.     Because of Plaintiff's reassignment from her duties, as noted above, she has been unable to earn any per session and summer school pay—which she had obtained the previous three years—causing her significant economic loss.

43.     Indeed, Plaintiff was initially offered a summer school position, but, as noted above, was unable to pursue this opportunity due to her pending Section 3020-a case.

44.     From May 25, 2017 until the end of the school year, the school administration denied Plaintiff access to her classroom to collect her personal and professional belongings. Plaintiff had no access to her library of materials, costly decorations and various accoutrements, resulting in personal financial loss.

45.     On June 21, 2017, the School's annual Staff Potluck Luncheon took place. Plaintiff was the only teacher not given an email regarding this event.

46.     On June 28, 2017, the School's graduation ceremony took place. Plaintiff was the only individual not invited to the ceremony.

47.     On or about July 3, 2017, due to her pending Section 3020-a hearing, Plaintiff went to the School to obtain a copy of her personnel file, as was her right. From about May 25, 2017, Plaintiff had repeatedly requested access to her file, but the school administration denied such access.

8

48.     On July 3, 2017, when she arrived at the School, AP Phillips denied Plaintiff the opportunity to see her file after three requests. Only after Plaintiff threatened to contact her union and SCI was she granted access to her file in the fall of 2017.

49.     Upon examining her file, Plaintiff saw that new letters had been placed in her file that she had never seen, in contravention of lawful procedure.

50.     On August 10, 2017, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") against Defendants, alleging race and age discrimination, as well as retaliation.  **This SDHR complaint provided notice to Defendants of a "written verified claim upon which [this] action … is founded," was served on the governing arm of the school district, and done within three months of several of the adverse actions she was suffering, including receipt of 3020-a charges, her reassignment, and denial of per session work for the summer of 2017.**

51.     Beginning October 18, 2017, and continuing on December 12, 13, 19, 2017 and January 3, 8 and 10, 2018, Plaintiff attended scheduled hearing days for her Section 3020-a disciplinary hearing.

52.     On January 30, 2018, Lisa C. Charles, a Section 3020-a Hearing Officer, issued a decision substantiating the allegation dating back to the 2014-15 school year but dismissing the allegation related to the 2016-17 school year against Plaintiff.  She issued Plaintiff a $2,000 penalty as a result of the Section 3020-a hearing.

53.     Notably, the Hearing Officer dismissed every allegation initiated against her by Defendant Akil.

54.     **Defendant Akil did give preferential treatment regarding Section 3020-a charges to similarly situated nonwhite teachers.  Specifically, Zakir Islam, a younger**

nonwhite teacher, was not disciplined with Section 3020-a charges, despite falling at the school and putting in for leave time.   Specifically, Irene Arholekas, a younger teacher, was not disciplined with Section 3020-a charges, despite falling at the school and putting in for leave time.  Neither of these teachers' injury claims were investigated like Plaintiff's similar on the job injury.

55.     **Defendant Akil also did give preferential parking to younger nonwhite teachers.  For example, during the 2016-17 school year, Yesenia Leon and Lynnea Moore, an African-American teacher named Dr. Lawrence, and nonwhite guidance counselor Brandon Alford were given special parking privileges at the school to park within restricted areas designated for administrators, which was expressly denied to Plaintiff starting in September 2016.  Plaintiff has photos of these teachers' cars in restricted areas during November 2016.   During the Spring 2017 term, Ms. Leon was given advance notice of meetings and observations and unposted per session opportunities by Principal Akil during the 2016-17 school year, even while being a very co-teacher of Plaintiff in the same class.  Ms. Moore, a music teacher at the school, was given advance notice of meetings and observations as well during the 2016-17 school year.**

56.     Plaintiff received a Notice of Right to Sue letter from the U.S. Equal Employment Opportunity Commission dated March 5, 2018. A copy of Plaintiff's Right to Sue letter is annexed hereto.

57.     **Since filing her protected federal discrimination complaint on or about June 1, 2018, and amending her discrimination complaint in late August 2018, Plaintiff has been retaliated against by the Defendant NYCDOE through her new DOE administrators at the Queens Academy Flushing site after, upon information and belief, Principal Akil was**

**forced to resign from the DOE and Assistant Principal Morris was forced to leave. Plaintiff had no issues with the same DOE administrators in the 2017-18 school year when the instant lawsuit was not pending, and she received a Satisfactory overall rating for the 2017-18 school year.**

58.     **Since the filing of her amended federal complaint based on age and race discrimination, Plaintiff has been blatantly retaliated against this school year by receiving from the Queens Academy Flushing site administration an unprecedented barrage of disciplinary notices against her, culminating in approximately 10 disciplinary letters to file, and 2 poorly rated observations from the school administration during the present 2018-19 school year.   The school administration started to issue these disciplinary notices against her in November 2018.**

## FIRST CLAIM FOR RELIEF

### (Against all Defendants – First Amendment Retaliation)

59.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

60.     Plaintiff, as union surrogate chapter leader, filed grievances on behalf of herself and the faculty and staff at the School.

61.     Some of the grievances filed on behalf of Plaintiff touched on matters of public concern.

62.     **In particular, Plaintiff filed a grievance on December 1, 2016, regarding lack of mandated services for special education students even though she was not a special education teacher.   Almost immediately upon filing this grievance, Principal Akil initiated an SCI investigation against Plaintiff on December 22, 2016, regarding the circumstances**

11

**regarding her fall in the school, which was the genesis of the Section 3020-a charges against**
**her. This SCI investigation was initiated within three weeks of Plaintiff filing this grievance**
**against school administration.**

63.     Defendants, through the aforementioned conduct, have violated 42 U.S.C. Section
1983, by retaliating against Plaintiff by advocating for other members and for students as a union
surrogate in violation of the First Amendment.

64.     As a result, Plaintiff has suffered damages to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Against Defendant NYCDOE – Age Discrimination in Violation of ADEA)

65.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if
fully set forth herein.

66.     Defendants, through the aforementioned conduct, have violated the federal Age
Discrimination in Employment Act, by discriminating against Plaintiff by rating her in a less-
than-effective manner; issuing her unwarranted disciplinary letters to file; bringing her up on
Education Law Section 3020-a disciplinary charges; reassigning Plaintiff away from her duties;
and denying Plaintiff the opportunity to earn per session and summer school pay.

67.     As a result, Plaintiff has suffered damages to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Against Defendant NYCDOE – Race Discrimination in Violation of Title VII)

68.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if
fully set forth herein.

69.    Defendant, through the aforementioned conduct, has violated Title VII, by discriminating against Plaintiff by rating her in a less-than-effective manner; issuing her unwarranted disciplinary letters to file; bringing her up on Education Law Section 3020-a disciplinary charges; reassigning Plaintiff away from her duties; and denying Plaintiff the opportunity to earn per session and summer school pay.

70.    As a result, Plaintiff has suffered damages to be determined at trial.

## FOURTH CLAIM FOR RELIEF

**(Against all Defendants – Age and Race Discrimination in Violation of NYSHRL)**

71.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

72.    Defendants, through the aforementioned conduct, have violated the NYSHRL, by discriminating against Plaintiff by rating her in a less-than-effective manner; issuing her unwarranted disciplinary letters to file; bringing her up on Education Law Section 3020-a disciplinary charges; reassigning Plaintiff away from her duties; and denying Plaintiff the opportunity to earn per session and summer school pay.

73.    As a result, Plaintiff has suffered damages to be determined at trial.

## FIFTH CLAIM FOR RELIEF

**(Against all Defendants – Age and Race Discrimination in Violation of NYCHRL)**

74.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

75.     Defendants, through the aforementioned conduct, have violated the NYCHRL, by discriminating against Plaintiff by rating her in a less-than-effective manner; issuing her unwarranted disciplinary letters to file; bringing her up on Education Law Section 3020-a disciplinary charges; reassigning Plaintiff away from her duties; and denying Plaintiff the opportunity to earn per session and summer school pay.

76.     As a result, Plaintiff has suffered damages to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (Against Defendant NYCDOE – Retaliation for Age and Race Discrimination in Violation of Title VII)

77.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

78.     **Since filing her protected federal discrimination complaint on or about June 1, 2018, and amending her discrimination complaint in late August 2018, Plaintiff has been retaliated against by the NYCDOE through her new DOE administrators at the Queens Academy Flushing site after Principal Akil was forced to resign from the DOE.  Plaintiff had no issues with the same DOE administrators in the 2017-18 school year when her lawsuit was not pending and she received a Satisfactory overall rating for the 2017-18.**

79.     **Since the filing of her amended federal complaint based on age and race discrimination, Plaintiff has been blatantly retaliated against this school year by receiving from the Queens Academy Flushing site administration an unprecedented barrage of disciplinary notices, culminating in approximately 10 disciplinary letters to file, and 3 poorly rated observations from the school administration during the present 2018-19**

school year.   The administration started to issue these disciplinary notices and letters and poor observations against her commencing in November 2018 through the present day.

80.      **Plaintiff also received an affirmance of her PERB decision by the New York State PERB board on December 17, 2018, a copy which is attached.  To date, Defendants have not, nor made any attempt to, comply with the now affirmed PERB decision.**

81.      As a result, Plaintiff has suffered damages to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for declaratory relief and damages as follows:

A.      A declaratory judgment that Defendant NYCDOE is in violation of the First Amendment;

B.      A declaratory judgment that Defendant NYCDOE is in violation of the federal ADEA;

C.      A declaratory judgment that Defendant NYCDOE is in violation of Title VII;

D.      A declaratory judgment that Defendants are in violation of New York State Human Rights Law;

E.      A declaratory judgment that Defendants are in violation of New York City Human Rights Law;

F.      Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to the

ADEA, Title VII, 42 U.S.C. Section 1983, and the New York State and City

Human Rights Law;

G.    Awarding Plaintiff costs and reasonable attorneys' fees; and

H.    Such other and further relief as to this Court may deem necessary, just and proper.

Dated:    New York, New York
          April 30, 2019

GLASS & HOGROGIAN LLP
Attorneys for Plaintiff
85 Broad Street, 18th Floor @ Wework
New York, NY 10007
(212) 537-6859

By: s/ Bryan D. Glass
    Bryan D. Glass, Esq.

16