18-cv-04893 (RA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARGUERITE BAGAROZZI,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
SHOMARI AKIL, PRINCIPAL of QUEENS
ACADEMY HIGH SCHOOL; NATHIFA MORRIS,
ASSISTANT PRINCIPAL of QUEENS ACADEMY
HIGH SCHOOL,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DEPARTMENT OF EDUCATION'S
MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorneys for Defendant*
*New York City Department of Education*
*City of New York*
*100 Church Street, Rm. 2-184*
*New York, New York 10007*

*Of Counsel: Evan M. Piercey*
*Tel: (212) 356-2428*
*Matter No.: 2018-038284*

Donald C. Sullivan,
Evan M. Piercey,
Of Counsel

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS. ..................................................................................... 4

        A.  Plaintiff's Grievances ........................................................... 4

        B.  Plaintiff's §3020-a Hearing ................................................. 6

        C.  Plaintiff's Public Employment Relations Board Decision ............................................................................... 8

        D.  Plaintiff's New York State Division of Human Rights & EEOC Charges .................................................... 9

ARGUMENT

    POINT I

        PLAINTIFF'S TITLE VII AND ADEA CLAIMS ARE BARRED BECAUSE SHE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ...................................... 10

    POINT II

        THE SAC FAILS TO STATE A CLAIM OF RACE OR AGE DISCRIMINATION ...................................... 11

        A.  Plaintiff Largely Fails to Set Forth Adverse Employment Actions ......................................................... 12

        B.  Plaintiff Fails to Plausibly Allege Discriminatory Animus ................................................... 14

        C.  Plaintiff Failed to Properly Plead that Her §3020-a Disciplinary Charges Occurred Under Circumstances Giving Rise to Discrimination ................................. 15

**Page**

POINT III

      PLAINTIFF FAILS TO ESTABLISH THAT SHE
WAS SUBJECTED TO A HOSTILE WORK
ENVIRONMENT ................................................................................ 17

POINT IV

      PLAINTIFF FAILS TO ESTABLISH TITLE VII
OR ADEA RETALIATION ................................................................. 19

POINT V

      PLAINTIFF FAILS TO ESTABLISH FIRST
AMENDMENT RETALIATION ........................................................... 23

POINT VI

      PLAINTIFF'S SHRL AND CHRL CLAIMS
MUST BE DISMISSED BECAUSE PLAINTIFF
FAILED TO COMPLY WITH THE NOTICE OF
CLAIM REQUIREMENTS IN EDUCATION
LAW §3813(1) ................................................................................... 24

CONCLUSION ........................................................................................... 26

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Abdu-Brisson v. Delta Air Lines, Inc*.,
239 F.3d 456 (2d Cir. 2001),
*cert. denied*, 534 U.S. 993 (2001) ............................................................................11

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)........................................................................................18

*Arista Records LLC v. Doe*,
604 F.3d 110 (2d Cir. 2010)........................................................................................14

*Austin v. Ford Models*,
149 F.3d 148 (2d Cir. 1998)........................................................................................11

*Birch v. City of New York*,
184 F.Supp.3d 21 (E.D.N.Y. 2016) ............................................................................22

*Blige v. City Univ. of New York*,
2017 U.S. Dist. LEXIS 8345 (S.D.N.Y. Jan. 19, 2017)..............................................15

*Bohnet v. Valley Stream Union free Sch. Dist. 13*,
30 F.Supp3d 174, 181 (E.D.N.Y. 2014) .....................................................................14

*Brown v. City of New York*,
622 Fed. Appx. 19 (2d. Cir. 2015) ..............................................................................21

*Butts v. New York City Department of Housing Preservation and Development*,
990 F.2d 1397 (2d Cir. 1993),
*superseded by statute on other grounds as stated in Hawkins v. 1115 Legal
Serv. Care*, 163 F.3d 2d Cir. 1998 .............................................................................10

*Carmellino v. Dist. 20 of the N.Y. City Dep't of Educ.*,
2006 U.S. Dist. LEXIS 63705 (S.D.N.Y. Sept. 6, 2006).............................................13

*Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*,
641 Fed. Appx. 60 (2d Cir. 2016) ...............................................................................11

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)..........................................................................................4

*Chuang v. T.W. Wang Inc.*,
647 F. Supp. 2d 221 (E.D.N.Y. 2009) .........................................................................22

*Chung v. City Univ. of N.Y.*,
605 Fed. Appx. 20 (2d Cir. 2015)................................................................................12

**Cases**                                                                                            **Pages**

*Cifra v General Electric Co.*,
    252 F.3d 205 (2d Cir. 2001)..................................................................................20

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991)....................................................................................4

*Davis v. Goodwill Indus. Of Greater N.Y. & N.J.*,
    2017 U.S. Dist. LEXIS 48014 (S.D.N.Y. Mar. 29, 2017) ......................................11

*Day v. City of New York*,
    No. 15-Civ. 4399, 2015 U.S. Dist. LEXIS 161206 (S.D.N.Y. Nov. 30, 2015),
    *report and recommendation adopted* by 2016 U.S. Dist. LEXIS 37153
    (S.D.N.Y. Mar. 22, 2016) ....................................................................................17

*Dowrich-Weeks v. Cooper Square Realty, Inc.*,
    535 F. App'x 9 (2d Cir. 2013) .............................................................................13

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)............................................................................................18

*Fleming v. MaxMara USA, Inc.*,
    371 F. App'x 115 (2d Cir. 2010) (Summary Order)..............................................18

*France v. Touro Coll.*,
    2016 U.S. Dist. LEXIS 20006 (E.D.N.Y. Feb. 16, 2016)......................................17

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)............................................................................................23

*Garcia v. Hartford Police Dept*,
    706 F.3d 120 (2d Cir. 2013)................................................................................23

*Giordano-Forkan v. New York City Dep't of Educ.*,
    2014 U.S. Dist. LEXIS 153977 (S.D.N.Y. Oct. 17, 2014) ....................................13

*Grady v. Affiliated Cent., Inc.*,
    130 F.3d 553 (2d Cir. 1997),
    *cert. denied*, 525 U.S. 936 (1998)......................................................................22

*Haggood v. Rubin & Rothman, LLC*,
    2014 U.S. Dist. LEXIS 161674 (E.D.N.Y. Nov. 17, 2014)....................................12

*Haiai Yang v. Dep't of Educ.*,
    2016 U.S. Dist. LEXIS 97496 (E.D.N.Y. July 21, 2016)......................................12

**Cases**                                                                                    **Pages**

*Halebian v. Berry*,
    644 F.3d 122 (2d Cir. 2011)..................................................................................4

*Henry v. NYC Health & Hosp. Corp.*,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014).........................................................15, 17

*Hernandez v. New York City Dep't of Sanitation*,
    No. 18-cv-1808 (LGS), 2018 U.S. Dist. LEXIS 184906
    (S.D.N.Y. Oct. 29, 2018) ....................................................... 15, 16-17, 22

*Holowecki v. Fed. Express Corp.*,
    440 F.3d 558 (2d Cir. 2006),
    *aff'd by Fed. Express Corp. v. Holowecki* 552 U.S. 389 (2008) ...........................................10

*Hyek v. Field Support Servs. Inc.*,
    702 F.Supp.2d 84 (E.D.N.Y. 2010) ..................................................................12

*Jones v. Target Corp.*,
    2016 U.S. Dist. LEXIS 61 (E.D.N.Y. Jan. 4, 2016) ...........................................11

*Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*,
    716 F.3d 10 (2d Cir. 2013)................................................................................19

*Kessler v. Westchester County Dep't of Soc. Servs.*,
    461 F.3d 199 (2d Cir. 2006)..............................................................................19

*Kopchik v. Town of E. Fishkill*,
    No. 18-1182-cv, 2018 U.S. App. LEXIS 36443 (2d Cir. Dec. 26, 2018)................................19

*Lebowitz v. New York City Dep't of Educ.*,
    2017 U.S. Dist. LEXIS 50950 (E.D.N.Y. Mar. 31, 2017) ....................................13

*Lewinter v. New York City Dep't of Educ.*,
    2010 U.S. Dist. LEXIS 68493 (S.D.N.Y. July 9, 2010) ......................................25

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015)..............................................................................11

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)........................................................................11, 12

*Munoz-Nagel v. Guess, Inc.*,
    2013 U.S. Dist. LEXIS 61710 (S.D.N.Y. Apr. 30, 2013)....................................14

*Murray v. Visiting Nurse Servs. Of N.Y.*,
    528 F.Supp.2d 257 (S.D.N.Y. 2007)..................................................................21

**Cases**           **Pages**

*Nicastro v. N.Y. City Dep't of Design & Constr.*,
125 F. App'x 357 (2d Cir. 2005) ...................................................................21

*Patane v. Clark*,
508 F.3d 106 (2d Cir. 2007)..........................................................................18

*Payson v. Bd. of Educ. of Mt. Pleasant Cottage Sch.*,
2017 U.S. Dist. LEXIS 154296 (S.D.N.Y. Sept. 20, 2017)..........................23

*PBS Building Systems, Inc. v. City of New York*,
1996 U.S. Dist. LEXIS 15006 (S.D.N.Y. Oct. 8, 1996) ..............................25

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
702 F.3d 685 (2d Cir. 2012)..........................................................................17

*Ruotolo v. City of New York*,
514 F.3d 184 (2d Cir. 2008)..........................................................................23

*Slattery v. Swiss Reinsurance Am. Corp.*,
248 F.3d 87 (2d Cir. 2001).............................................................................21

*Sotomayor v. City of New York*,
862 F. Supp. 2d 226 (E.D.N.Y. 2012) ....................................................11, 19

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
663 F.3d 556 (2d Cir. 2011)..........................................................................13

*Thomas v. N.Y.C. Dep't of Educ.*,
938 F. Supp. 2d 334 (E.D.N.Y. 2013) ..........................................................25

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015).......................................................................11, 19

*Walcott v. Cablevision*,
Case No. 10-CV-2602 (DLI) (LB) 2012 U.S. Dist. LEXIS 137511
(E.D.N.Y. Sept. 24, 2012).......................................................................20-21

*Wang v. Palmisano*,
51 F. Supp. 3d 521 (S.D.N.Y. 2014)..............................................................11

*Ward v. Shaddock*,
2016 U.S. Dist. LEXIS 106438 (S.D.N.Y. Aug. 11, 2016)...........................13

*Weintraub v. Board of Education of the City School District
of the City of New York*,
593 F.3d 196 (2d Cir. 2010)...........................................................................23

**<u>Statutes</u>**                                                                                   **<u>Pages</u>**

42 U.S.C. §1983 .................................................................................................................1

Education Law § 209-a(1)(a) ...........................................................................................8

Education Law § 209-a(1)(c) ...........................................................................................8

Education Law §3020-a ........................................................2, 6, 7, 8, 12, 14, 15, 16, 17

Education Law § 3813 .....................................................................................................25

Education Law §3813(1) ............................................................................................24-25

## PRELIMINARY STATEMENT

Marguerite Bagarozzi ("Plaintiff"), a tenured teacher with the New York City Department of Education ("DOE"), commenced this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1983 ("§1983"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the New York State and City Human Rights Laws ("SHRL" and "CHRL" respectively), claiming that she was discriminated against on the basis of her age (68) and race (white), and was allegedly retaliated against in violation of the First Amendment, enforceable through 42 U.S.C. §1983, for filing unions grievances purportedly on behalf of herself, fellow teachers, and special needs students.

In a March 31, 2019 Memorandum Opinion ("the Decision"), the Court granted Defendant DOE's motion to dismiss plaintiff's Amended Complaint in its entirety. The Court did permit Plaintiff leave to file a second amended complaint within thirty days, "provided that she ha[d] a good faith basis for doing so." *See* Dkt. No. 28 at 21. On April 30, 2019, Plaintiff filed the instant Second Amended Complaint ("SAC"), setting forth largely the same deficient set of allegations that the Court already addressed – and dismissed –from the Amended Complaint. For largely the same reasons set forth in Defendants' prior two sets of moving papers (Dkt. Nos. 13-15 and 19-21, 27), the SAC still fails to state a claim upon which relief can be granted and should be dismissed in its entirety, with prejudice.[1]

First, Plaintiff's First Amendment retaliation claim remains deficient as a matter of law. Plaintiff largely ignores the Court's Decision that explicitly held that Plaintiff's grievance regarding mandated services for special needs students was not protected speech. The

---

[1] Based on lack of proper service, the Court dismissed all claims against the putative individual defendants in its March 31, 2019 Decision. Upon information and belief, the putative individual defendants still have not been properly served in this action, which supports dismissal with prejudice. While no appearance is being made on their behalf, the arguments supporting dismissal would also apply to them, had they been served.

Court reached this conclusion after explicitly rejecting Plaintiff's argument that this grievance fell outside of her job duties.  Nevertheless, Plaintiff still fails to present any facts that cure this fatal deficiency.  Moreover, Plaintiff fails to provide any new allegations that transform her other union grievances into protected speech.  In short, the SAC wholly fails to remedy any of the deficiencies set forth in the Court's Decision dismissing Plaintiff's First Amendment retaliation claims and, as such, these claims should be dismissed, with prejudice.

Second, Plaintiff's ADEA and Title VII claims remain similarly deficient.  As the Court's Decision held, nearly all of the alleged employment actions Plaintiff complains of fail to rise to the level of actionable adverse actions.  Furthermore, Plaintiff failed to cure the separate deficiency cited by the Court, in that she failed to establish an inference of discrimination between her race or age and any actual adverse action.  While Plaintiff did provide additional details with respect to the "certain per session income" she claims to have lost due to the §3020-a charges, she nonetheless fails to plead facts establishing a nexus between these alleged actions and her race or age.  In that same vein, despite providing some additional allegations pertaining to purported comparators, Plaintiff's still cannot establish disparate treatment.  For example, the Decision noted that other teachers purportedly receiving advance notice of meetings, observations, and apparent "parking privileges," failed to "support an inference that Plaintiff's protected status was a motivating factor in [any actionable] employment decision."  *See* Decision, Dkt. No. 28, at 14 (internal quotation and citation omitted).  As such, Plaintiff's ADEA and Title VII claims remain deficient, and should be dismissed in their entirety, with prejudice.  Moreover, Plaintiff's SHRL and CHRL claims are also subject to dismissal because Plaintiff again fails to plead that she followed applicable notice of claim provisions.

Finally, while Plaintiff has wholly failed to cure the deficiencies that plagued the Amended Complaint, she adds, for the first time, entirely new claims of retaliation. Specifically, Plaintiff now belatedly contends that she has been retaliated against under Title VII since the filing of her lawsuit in and around June 1, 2018. As purported evidence, Plaintiff contends that five months following the filing of her lawsuit, beginning in and around November 2018, the school administration retaliated against her by issuing her negative performance evaluations and disciplinary letters to file. In addition to the fact that, under Second Circuit law, the acknowledged five-month span June 1, 2018 to November 2018 – is too long to support any inference of causation, Plaintiff also fails to set forth any basis to conclude that "the school administration" was actually retaliating against Plaintiff for the filing of the lawsuit. Indeed, Plaintiff's admission that administration officials began issuing her discipline and denying her the opportunity to view her school file *prior* to the filing of the instant lawsuit further severs the causal link between her lawsuit and any alleged future employment actions. As such, these cannot support a retaliation claim, and Plaintiff's attempt to add an entirely new claim of retaliation should be rejected.

Accordingly, because Plaintiff has failed to cure the deficiencies cited by the Court in the prior Decision, her now Second Amended Complaint should be dismissed in its entirety, with prejudice.

**STATEMENT OF FACTS.**[2]

On or about 2000, Plaintiff, commenced her employment with the DOE.  *See* SAC, a copy of which is annexed to the Piercey Decl. as Exhibit A, at ¶¶ 9 and 11.  Since 2007, Plaintiff has been employed as an English teacher at Queens Academy High School ("QA").  *See id.* at ¶ 8.  In her capacity as an English teacher at QA, Plaintiff has taught classes containing special needs students as well as general-education students.  *See* Plaintiff's State Division of Human Rights Charge, Ex. B at 13-14 (explaining that Plaintiff was observed teaching classes containing both general-education and special education students).  Plaintiff self-identifies as white and 68 years old in the Second Amended Complaint.  *See* SAC, Exhibit A, at ¶ 9 and 11.

Beginning in the 2015-2016 school year, Shomari Akil, whom plaintiff claims is "approximately 53 years old and is black," served as the Principal at QA.  *See* SAC at ¶¶ 6 and 15.  At the conclusion of the 2015-2016 school year, Plaintiff claims that she received a "Highly Effective" rating on her Measure of Teacher Practice ("MOTP") and an "Effective" Overall rating.  *Id.* at ¶¶ 10, 25.

Nathifa Morris, whom Plaintiff claims is "40 years old and black," served as an Assistant Principal at QA during the following school year, 2016-2017.  *Id.* at ¶ 7.

**A.    Plaintiff's Grievances**

Beginning in the 2016-2017 school year, Plaintiff claims that she served as a "surrogate to the union chapter leader" and acted  "on behalf of and in the stead of the former

---

[2] Unless otherwise noted, all Exhibits referenced are annexed to the supporting Declaration of Assistant Corporation Counsel Evan Piercey ("Piercey Decl.").  The Court may consider these documents on this motion.  The documents attached hereto are admissible evidence because on a motion to dismiss, the Court may consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the amended complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  *See also Halebian v. Berry*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (Court may consider "documents incorporated by reference in the complaint") (internal quotation marks omitted); *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (may consider documents that are "integral to the plaintiff's claim").

union chapter leader, Jennifer Squires," a role which purportedly entailed filing grievances "on behalf of [Plaintiff] herself and others."  *Id.* at ¶¶ 13, 17.

On November 14, 2016, Plaintiff claims that she filed a grievance "regarding parking permits that were not extended to all staff members at the school."  *Id.* at ¶ 18.  At some point thereafter, Plaintiff claims that all faculty and staff were granted parking privileges.  *Id.* On December 1, 2016, Plaintiff claims that she filed a grievance on behalf of students at QA with special needs allegedly not receiving mandated services.  *Id.* at ¶ 19.  Plaintiff claims that, as a result of this grievance, the school hired a "self-contained special education teacher."  *Id.* On February 1, 2017, Plaintiff claims that she, along with Squires, "grieved the administration's failure to file an Occurrence Report[3] about an incident with a student."  *Id.* at ¶ 20.  On May 1, 2017, Plaintiff claims that she filed a grievance for improper post-evaluation procedures pertaining to two separate observations on April 20 and 26, 2017,  *Id.* at ¶ 21.  On May 23, 2017, Plaintiff claims that she filed a grievance "relating to a disciplinary letter to file" that she received.  *Id.* at ¶ 22.

Plaintiff claims that, after filing these grievances, she was retaliated against in the following ways: (1) she received "less-than-effective" evaluations and eventually received a Developing MOTP rating for the 2016-2017 school year (*id.* at ¶¶ 25-26); (2) received disciplinary letters to file (*id.* at ¶¶ 29-31, 48); and (3) had an "unwarranted investigation" initiated against her by Principal Akil shortly after plaintiff allegedly fell on the floor at school. *Id.* at ¶¶ 27-28, 62.

Plaintiff also claims that she was disparately treated on the basis of her race and age, as she claims that younger and non-white teachers were afforded advance notice of meetings

---

[3] Plaintiff does not define the term "Occurrence Report" nor does she provide any further details regarding this alleged incident.  *See* SAC at ¶ 20.

and classroom observations and were permitted to park closer to school.  *Id.* at ¶¶ 34-37, 54-55.

Plaintiff acknowledges that she did earn per session income during the 2015-2016 and 2016-2017 school years, but claims that she was denied "certain" per session income during the aforementioned years, while younger, non-white teachers were purportedly "given" per session opportunities.  *Id.* at ¶ 37.  Plaintiff also claims that other younger, non-white teachers who fell at school were not brought up on §3020-a charges or investigated by Akil.  *Id.* at ¶ 54.  Plaintiff also fails to mention whether these younger, non-white teachers were the subject of investigations by the independent Office of Special Investigations ("OSI") which substantiated charges of "fraudulent reporting" or whether they were similarly brought up on charges pertaining to their failure to assist students.  *See, generally id.  See also* Ex. D at 4, 6-7 (describing the OSI investigation); and Ex. C at 2-4 (describing Plaintiff's §3020-a charges). Additionally, Plaintiff also claims that she was the only teacher not invited to the school's annual staff potluck (*id.* at ¶ 44) or the school's graduation ceremony (*id.* at ¶ 45) and had received disciplinary letters to file "in contravention of lawful procedure.  *Id.* at ¶¶ 46-48.

**B.**     **Plaintiff's §3020-a Hearing**

On May 25, 2017, Plaintiff claims that she was served with five separate disciplinary charges pursuant to Education Law §3020-a (*id.* at ¶¶ 39-40):

**SPECIFICATION 1:**  On or about April 13, 2015, [plaintiff]:

**1.**     Refused to assist student [name redacted] when he asked for an explanation regarding written feedback given to him by [plaintiff] for revising an essay;

**2.**     Caused [student name redacted] to experience stress, and/or anxiety, and/or panic, and/or feel uncomfortable.

**SPECIFICATION 2:**  On or about December 22, 2016, [plaintiff] attempted to defraud the New York City Department of Education in order to gain a personal benefit, in that [plaintiff] deliberately staged her own fall, in that she placed a bag on the ground and proceeded to trip over it.

**SPECIFICATION 3:**   On or about December 2016, [plaintiff] attempted to defraud the New York City Department of Education in order to gain a personal benefit, in that [plaintiff] completed and submitted document(s) purporting to explain an incident pertaining to an injury that allegedly occurred back on December 22, 2016, when in fact such incident or injury did not occur.

**SPECIFICATION 4:**  By committing one, some or all of the actions described in Specifications 1, [plaintiff] acted in a manner that had or would have had the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical well-being.

**SPECIFICATION 5:**  By committing one, some or all of the actions described in Specifications 1, [plaintiff] knowingly acted in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old.

*See* §3020-a Opinion and Award, SED File No. 32,002, Ex. C at 2-4.

As a result of these charges, Plaintiff claims, her "teaching assignment" was changed, but she remained in the building at QA.  *See* SAC at ¶ 39.  After receiving these disciplinary charges, Plaintiff claims that she was denied access to her classroom and personnel file, was not invited to school events, and was not able to take advantage of certain per-session or tutoring opportunities.  *See id.* at ¶¶ 37-38, 42-48.

Beginning on December 12, 2017 and continuing December 13 and 19, 2017 and January 3, 8, and 10, 2018, plaintiff's §3020-a hearings were conducted before Lisa C. Charles, a Hearing Officer ("HO Charles").  *See* Ex. C §3020-a Opinion and Award at 1.  Plaintiff was represented by David Eisenstein, Esq., from the Office of Robert T. Reilly and the DOE was represented by Kareen Evans-McKay.  *Id.* at 1.  At the conclusion of Plaintiff's hearings, on January 30, 2018, HO Charles issued an Opinion and Order, sustaining Specifications 1, 4 and 5, and dismissing 2 and 3.  *Id.* at 16-17.  As a result, HO Charles issued a penalty, requiring that Plaintiff pay a $2,000 fine and take training.  *Id.* at 17.  While HO Charles did not substantiate the charge that Plaintiff "completed and submitted documents about an incident that did not occur," she did note that Plaintiff's "submitted explanation about what caused the fall is

inconsistent with the video evidence." *Id.* at 16. Notwithstanding this "inconsistent" explanation, HO Charles noted that Plaintiff "was not charged with false of inaccurate explanation of the fall," a conclusion necessitating dismissal of the charge. *Id.*

**C.**     **Plaintiff's Public Employment Relations Board Decision**

On or about August 10, 2017, Plaintiff claims that she filed an Improper Practice Charge with the Public Employment Relations Board ("PERB"). *See* SAC at ¶ 32. On March 14, 2018, a hearing was held before Administrative Law Judge Elena Cacavas ("ALJ Cacavas"), during which Plaintiff was represented by Bryan D. Glass, her attorney in the instant lawsuit, and the DOE was represented by Anjanette D. Pierre. *See* Ex. D, Decision in Case No. U-35863, In the Matter of Marguerite M. Bagarozzi, (hereafter "PERB Decision") at 1 and 12. ALJ Cacavas found that Plaintiff had filed five separate grievances during the 2016-2017 year, mirroring those referenced in the SAC, and discussed *supra*. *Compare* PERB Decision at 2-3 *with* SAC ¶¶ 18-22. ALJ Cacavas found that Morris had issued Plaintiff negative evaluations on February 27 and April 26, 2017 (*id.* at 3), had called Plaintiff in for a meeting to discuss grading policy (*id.*), and gave Plaintiff notice of a disciplinary meeting that never occurred. *Id.* However, ALJ Cacavas ultimately found that AP Morris had no notice of Plaintiff's grievances and complaints, thus severing any causal connection between actions by Morris and Plaintiff's union grievances. *See id.* at 8-9.

ALJ Cacavas ultimately found that the DOE "violated §§ 209-a(1)a) and (c) of the [Public Employees' Fair Employment Act] when [Principal] Akil initiated an investigation against [plaintiff], when he supported disciplinary charges against her [the §3020-a charges], when he denied her per session work, and when he issued [the] May 18, 2017 disciplinary letter." *Id.* at 11-12. ALJ Cacavas credited Plaintiff's testimony that Akil, in and around the spring of 2017 asked plaintiff "why she could not resolve her issues directly with him, instead of

involving the UFT?"  *Id.* at 4-5.  ALJ Cacavas explained that the "investigation" was initiated by

Akil in the Spring of 2017 and it pertained to Plaintiff's December 2016 alleged slip and fall on

school premises and Plaintiff's claim that she slipped on a wet floor, which was contradicted by

"school custodians and a surveillance video."  *Id.* at 4.  ALJ Cacavas also noted that in and

around May 2017, Principal Akil received a report from OSI, substantiating the claim of

"fraudulent reporting" and recommending "that [Plaintiff] be removed from the classroom and

not participate in per session or summer school work."  *Id.* at 4, 6-7.

**D.      Plaintiff's New York State Division of Human Rights & EEOC Charges**

On August 10, 2017, Plaintiff filed a charge with the New York State Division of

Human Rights ("SDHR"), alleging race and age discrimination along with retaliation.  *See* SAC

at ¶ 41; *see also* Ex. B (SDHR Charge).  In her SDHR charge, Plaintiff set forth allegations of

race and age discrimination, mirroring those set forth in the instant Complaint.  *Compare* SAC

*with* Ex. B (SDHR Charge at the "Addendum" and "Description").  On January 8, 2018, the

SDHR dismissed Plaintiff's charge for administrative convenience, explaining that Plaintiff

"intend[ed] to pursue federal remedies in court."  *See* SDHR Determination and Order of

Dismissal for Administrative Convenience, Ex. E.  SDHR noted that Plaintiff's charge was filed

with the EEOC under Title VII and the ADEA.  *See id.*  On March 5, 2018, Plaintiff reportedly

received a Notice of Right to Sue from the EEOC.  *See* SAC at ¶ 53.

On June 1, 2018, Plaintiff filed a Complaint in the Southern District of New York.

*See generally* Compl. Dkt. No. 1.  On August 31, 2018, plaintiff filed an amended complaint.

*See* Amended Complaint, Dkt. No. 18.  On September 14, 2018, Defendant filed a motion to

dismiss the Amended Complaint.  *See* Dkt. Nos. 19-22, 27.  On March 31, 2019, the Court issued

its Decision, granting Defendant's motion to dismiss in its entirety, and dismissing the Amended

Complaint, without prejudice.  On April 30, 2019, Plaintiff filed the instant SAC.  *See* Ex. A.

## ARGUMENT

### POINT I

### PLAINTIFF'S TITLE VII AND ADEA CLAIMS ARE BARRED BECAUSE SHE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

A plaintiff must file a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") prior to commencing an action under Title VII or the ADEA.   Exhaustion of this administrative remedy is a mandatory precondition to commencing suit under Title VII and the ADEA.  *See Butts v. New York City Department of Housing Preservation and Development*, 990 F.2d 1397, 1402-03 (2d Cir. 1993),*superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 2d Cir. 1998; *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 566 (2d Cir. 2006) , *aff'd by Fed. Express Corp. v. Holowecki* 552 U.S. 389 (2008) ("The ADEA requires the filing of a timely charge with the EEOC").

In the SAC, Plaintiff alleges, for the first time, claims of retaliation pursuant to Title VII.  *See* SAC at ¶¶ 77-81.  However, Plaintiff admits that she received a notice of right to sue on March 5, 2018 (*see id.* at ¶ 56), which could not possibly encompass those new claims of retaliation that she alleges did not even begin until November 2018, eight months following her receipt of the right to sue letter.  *See id.* at ¶¶ 57-58.  As such, Plaintiff's retaliation claims under Title VII and to the extent also brought pursuant to the ADEA must be dismissed.

## POINT II

## THE SAC FAILS TO STATE A CLAIM OF
## RACE OR AGE DISCRIMINATION

"The same framework and pleading standard governs" Title VII, ADEA[4], and SHRL claims. *See Austin v. Ford Models*, 149 F.3d 148 (2d Cir. 1998) (Title VII and ADEA); *Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 466 (2d Cir. 2001), *cert. denied*, 534 U.S. 993, (2001). To survive a motion to dismiss, an employment discrimination complaint "must be plausibly supported [with] facts alleged in the complaint that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and [establish] at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015).

Under Title VII, the ADEA, and the SHRL, an adverse employment action is one that is a "materially adverse change in the terms and conditions of employment." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 253 (E.D.N.Y. 2012) (internal citations omitted); *see also Davis v. Goodwill Indus. Of Greater N.Y. & N.J.*, 2017 U.S. Dist. LEXIS 48014 (S.D.N.Y. Mar. 29, 2017).[5] Moreover, for ADEA claims, "at the pleading stage, a plaintiff must plausibly allege that (1) [not only] her employer took an adverse employment action against her; [but also] (2) her age was the 'but-for' cause of the employer's adverse action." *Jones v. Target Corp.*, 2016 U.S. Dist. LEXIS 61 at *11 (E.D.N.Y. Jan. 4, 2016) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)). When bringing suit under a theory that plaintiff was

---

[4] Neither Title VII nor the ADEA provide for individual liability. *See Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 Fed. Appx. 60, 61-62 (2d Cir. 2016) (Title VII); *Wang v. Palmisano*, 51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014) (ADEA). Consequently, to the extent that Plaintiff is making any claims under Title VII or the ADEA against the individual defendants, such must be dismissed.

[5] While courts must analyze CHRL discrimination claims independently from state and federal law, "[t]he NYCHRL is not a general civility code" and, accordingly, plaintiff must show that "the conduct is caused at least in part by discriminatory or retaliatory motives." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109, 113 (2d Cir. 2013).

treated less favorably than those outside her protected group, a plaintiff must "show that the employee to whom she compares herself is similarly situated in all material respects."  *Hyek v. Field Support Servs. Inc.*, 702 F.Supp.2d 84, 97 (E.D.N.Y. 2010) (internal quotations omitted); *see also Haiai Yang v. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 97496 at *24 (E.D.N.Y. July 21, 2016) (internal quotations omitted).  At the pleading stage "a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the [purported] comparators are similarly situated."  *Haggood v. Rubin & Rothman, LLC*, 2014 U.S. Dist. LEXIS 161674 at *28 (E.D.N.Y. Nov. 17, 2014) (quotations omitted).

## A.   Plaintiff Largely Fails to Set Forth Adverse Employment Actions

Other than Plaintiff's claim that she was brought up on §3020-a charges, which resulted in a $2,000 fine, and her allegation that she was denied per session work – both of which are discussed in greater detail Section C, *infra*, Plaintiff fails to allege any actionable adverse employment actions under federal or state law.  The following still do not constitute adverse employment actions: (1) negative performance evaluations (*See* SAC at ¶¶ 25, 27, 60, 63, 66, 69);[6] (2) received disciplinary letters to file (*id.* at ¶¶ 29-31, 35, 48); (3) did not receive "advance notice of meetings" and events (*id.* at ¶ 34); (4) was denied a request to park closer to school (*id.* at ¶ 36); and (5) was denied access to the school following her reassignment due to §3020-a charges (*id.* at ¶¶ 43-48).[7] *See e.g. Chung v. City Univ. of N.Y.*, 605 Fed. Appx. 20, 22 (2d Cir. 2015) ("a negative performance review, without more, does not represent an adverse

---

[6] While it appears that plaintiff solely contends these negative evaluations were in retaliation for alleged protected speech, in an excess of caution, defendant analyzes these as potential adverse employment actions for the purposes of her discrimination claims.  *See* SAC at ¶¶ 17-33.

[7] Even under the CHRL standard, plaintiff must show discriminatory animus, *see Mihalik, supra,* and, as discussed in sub-points B and C below, she cannot do so.

employment action."); *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11-12 (2d Cir. 2013) (negative remarks about plaintiff, moving plaintiff from an office to a cubicle, and not permitting plaintiff to take advantage of an alternative work schedule were not adverse employment actions); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567-572 (2d Cir. 2011) (criticism not adverse employment action); c*f Ward v. Shaddock*, 2016 U.S. Dist. LEXIS 106438, *15-16 & n. 4 (S.D.N.Y. Aug. 11, 2016) (granting motion to dismiss on discrimination claims and holding that assigning plaintiff to allegedly inferior equipment, assigning the plaintiff to a less desirable shift, and reducing plaintiff's supervisory authority did not support such claims).  Indeed, the Court came to this same conclusion in the Decision (*see* Dkt. No. 28 at 8-9), and Plaintiff herself appeared to concede that the foregoing did not constitute adverse employment actions.  *See* Plaintiff's Opposition MOL, Dkt. No. 26 at 7-8.

With respect to Plaintiff's claim that she was denied the opportunity to earn "certain per session income during the 2015-16 and 2016-17 school years," (*see* ¶¶ 37 55), this claim is still deficient as a matter of law for the same reasons previously reached by the Court namely, that Plaintiff's still "sweeping allegation that she was unable to apply for the 'majority of opportunities' is simply too vague and 'too speculative' to constitute an adverse employment action."  *See* Decision, Dkt. No. 28 at 10 *citing Giordano-Forkan v. New York City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 153977 at *9 n.2 (S.D.N.Y. Oct. 17, 2014); *see also Lebowitz v. New York City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 50950 at *18-19 (E.D.N.Y. Mar. 31, 2017) (declining to consider an alleged loss of per session work an adverse employment action where plaintiff failed to allege that "he ever applied for other employment, rendering speculative his claim that he was denied other potential work opportunities"); *cf. Carmellino v. Dist. 20 of the N.Y. City Dep't of Educ.*, 2006 U.S. Dist. LEXIS 63705 at *95 (S.D.N.Y. Sept. 6, 2006)

(rejecting an ADEA retaliation claim where plaintiff failed to demonstrate that he, among other things, actually applied for and was denied per session work).

**B.**    <u>Plaintiff Fails to Plausibly Allege Discriminatory Animus</u>

As the Court articulated in its Decision, Plaintiff did not "point to any direct evidence [in the Amended Complaint] of Defendants' intent to discriminate." *See* Dkt. No. 28 at 11. Plaintiff still fails to do so in the SAC. *See generally* SAC. Instead, in another unavailing attempt to establish discriminatory animus, Plaintiff again relies on the same flawed logic that the Court previously rejected. Just as she did in the Amended Complaint, Plaintiff attempts to establish that her §3020-a charges – and attendant loss of per-session opportunities and $2,000 fine – occurred under circumstances evidencing discrimination by pointing to unrelated, and largely vague references, of preferential treatment received allegedly by "similarly situated, younger, non-white teachers." *See* SAC at ¶¶ 34-37, 54-55.[8]

As discussed Section A, *supra*, a majority of these alleged employment actions (i.e. advance notice of meetings and parking privileges) – even assuming they occurred – do not constitute adverse employment actions. Second, with the exception of a single passing reference to an alleged "unposted per session opportunity" received by Yesenia Leon at some unidentified point during the 2016-2017 year (*see* SAC at ¶ 55), Plaintiff again simply claims "similarly situated younger, non-white teachers" received *certain* opportunities, but notably fails to name

---

[8] Plaintiff still claims "[u]pon information and belief…Defendants issued letters to file to and held disciplinary conferences exclusively and only with white teachers at the school." *See* SAC at ¶ 35. However, these are not entitled to be taken as true or into account for plaintiff's discrimination claims. *See e.g. Bohnet v. Valley Stream Union free Sch. Dist. 13*, 30 F.Supp.3d 174, 181 (E.D.N.Y. 2014) (granting motion to dismiss age discrimination claims where plaintiff failed to accompany her facts pled upon information and belief with a statement of facts upon which the belief was founded); *Munoz-Nagel v. Guess, Inc.*, 2013 U.S. Dist. LEXIS 61710 at *24 (S.D.N.Y. Apr. 30, 2013) (granting motion to dismiss ADEA claims where they were pled "upon information and belief" without a statement of facts upon which the belief is founded). *See also* Decision, at 13 (noting that in the amended complaint plaintiff failed to properly support such allegations and further noting that" facts alleged upon information and belief should be 'peculiarly within the possession and control of the defendant'") (citng *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)).

any actual teachers who received such *certain* opportunities that she did not.  *See id.* at ¶¶ 37, 50, 55.  Moreover, with respect to the alleged opportunity received by Leon, there is no indication that this was an opportunity that Plaintiff, in fact, applied for – or was eligible for – and was denied, rendering it also too speculative to serve as an adverse action for the reasons discussed *supra* Point A.  Accordingly, without further factual amplification, Plaintiff's largely generic allegations of disparate treatment in relation to a largely unspecified of group of "younger…non-white" individuals who purportedly received per-session income that she did not, are simply not sufficient to nudge Plaintiff's claims across the line from conceivable to plausible.  *See e.g. Hernandez v. New York City Dep't of Sanitation*, No. 18-cv-1808 (LGS), 2018 U.S. Dist. LEXIS 184906 at *7-8 (S.D.N.Y. Oct. 29, 2018) (granting a motion to dismiss race discrimination claims where, other than stating that the comparators were fellow supervisors, the plaintiff failed to provide any specifics); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing claims of disparate treatment where the amended complaint "fail[ed] to describe who [the comparators] are, what their responsibilities were, how their workplace conduct compared to [plaintiff's], or how they were treated"); *see also Blige v. City Univ. of New York*, 2017 U.S. Dist. LEXIS 8345 at * 27 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.* who they are, what their positions or responsibilities were, how their conduct compared to plaintiffs' or how they were treated differently by defendants") (citations omitted).

C.    **Plaintiff Failed to Properly Plead that Her §3020-a Disciplinary Charges Occurred Under Circumstances Giving Rise to Discrimination**

The primary issue cited by the Court in rejecting Plaintiff's contention that her §3020-a charges occurred under circumstances evidencing discrimination was that Plaintiff

"fail[ed] to allege any facts connecting" the other examples of alleged preferential treatment (i.e. parking privileges and meeting notices) "to her employer's motive for pursuing the disciplinary action [the 3020-a charges]."  *See* Decision, Dkt. No. 28 at 14.  Plaintiff still fails to do so.

Plaintiff's proffered facts to establish discriminatory animus surrounding the §3020-a charges, and the attendant loss of per session opportunities and $2,000 fine (*see* SAC at ¶¶ 37-39, 42-43), are largely unavailing for the same reasons cited in the Decision.  *See* Decision at 14.  Plaintiff does however, appear to attempt to establish disparate treatment by claiming that Akil did not prefer disciplinary charges against other teachers, namely Zakir Islam, a younger non-white teacher and Irene Arholekas, a younger teacher, for "falling at school and putting in for leave time."  This facile attempt at analogizing Plaintiff's disciplinary charges – which were predicated on a *substantiated* independent OSI investigation that found that she had fraudulently reported her fall, as well as entirely unrelated charges pertaining to Plaintiff's conduct with students – to vague references to other teachers "falling" and not being disciplined, is unavailing.

Plaintiff's purported comparison is notably devoid of the following: (1) any facts detailing when these alleged "falls" occurred; (2) when these individuals took leave and what the actual reason for the leave consisted of; (3) whether they were, in fact, investigated by OSI – the independent body that found Plaintiff to have fraudulently reported the alleged incident; (4) whether OSI made any recommendations for disciplining these other teachers; and, (5) whether these other teachers were also disciplined for other incidents involving the conduct of students.  *See* Ex. C at 2-4; Ex. D at 4, 6-7.  Given the notable absence of any facts analogizing these two teachers' circumstances to Plaintiff's, it is axiomatic they cannot serve as comparators sufficient to establish that Plaintiff's §3020-a disciplinary charges – and attendant consequences – were motivated by discriminatory intent.  *See e.g. Hernandez*, No. 18-cv-1808 (LGS), 2018 U.S. Dist.

16

LEXIS 184906 at *7-8; *Henry*, 18 F. Supp. 3d at 408; *Day v. City of New York*, No. 15-Civ. 4399, 2015 U.S. Dist. LEXIS 161206 at *46 (S.D.N.Y. Nov. 30, 2015), *report and recommendation adopted* by 2016 U.S. Dist. LEXIS 37153 (S.D.N.Y. Mar. 22, 2016) (under the CHRL, a plaintiff still must nonetheless demonstrate that she is similarly situated to purported comparators for disparate treatment).

Accordingly, because Plaintiff sets forth no plausible factual allegations supporting an inference that her §3020-a charges, or any resulting employment actions, such as Plaintiff's purported inability to earn per session income or summer school pay (*see* SAC at ¶ 41), occurred on account of her race or age, such actions cannot support her discrimination claims, and should be dismissed, with prejudice.

## POINT III

### PLAINTIFF FAILS TO ESTABLISH THAT SHE WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT

As discussed in greater detail below, to support a hostile work environment claim, a plaintiff must show both discriminatory animus and an abusive environment.  Taking the latter prong first, for a viable hostile work environment claim under federal and State law, a plaintiff must set forth facts demonstrating that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 698 (2d Cir. 2012) (Title VII). Although the CHRL standard is less demanding, to survive a motion to dismiss under the CHRL, a plaintiff must allege more than petty slights or trivial inconveniences.  *France v. Touro Coll.*, 2016 U.S. Dist. LEXIS 20006, *32 (E.D.N.Y. Feb. 16, 2016).

In considering whether a work environment is hostile, courts look to the "totality of the circumstances," which include the frequency and severity of the conduct, whether the conduct is threatening and humiliating or merely an offensive utterance, and whether the conduct unreasonably interferes with the plaintiff's work performance. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). To be considered "pervasive," the incidents must be "more than episodic," they must be "sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). This inquiry is intended to filter out complaints "attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'" and to ensure that the only actionable conduct is that which is sufficiently "extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted).

Just as in the Amended Complaint, Plaintiff fails to allege that any discriminatory remarks were made by the putative individual defendants – or anyone, for that matter. *See generally* SAC. Instead, her hostile work environment claims are premised on the same facts that support her discrimination claim, namely, alleged disparate treatment (*supra* Points B-C), along with Plaintiff's alleged exclusion from a school potluck luncheon and graduation ceremony along with the placement of letters to her file "in contravention of lawful procedure" (s*ee id.* at ¶¶ 44-48), none of which can plausibly support a hostile work environment. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (Summary Order) (no hostile work environment where "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"). Moreover, as discussed in Points B and C, *supra*, Plaintiff has failed to plausibly plead any discriminatory

animus or that any actions occurred on account of her race or age, rendering her hostile work environment claim under any statute, including the CHRL, deficient. *See Sotomayor*, 862 F. Supp. 2d at 261 (dismissing CHRL hostile work environment claim where plaintiff could not show that the environment was created "because of her race, age, or national origin") (internal quotations omitted). Accordingly, for largely the same reasons the Court already dismissed Plaintiff's hostile work environment claim, this claim is again subject to dismissal. *See* Decision, at 15-16.

## POINT IV

## PLAINTIFF FAILS TO ESTABLISH TITLE VII OR ADEA RETALIATION

To set forth a prima facie case of retaliation under both Title VII and the ADEA, plaintiff must "demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted); *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). Furthermore, with ADEA claims, for an "adverse retaliatory action to be because a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Kopchik v. Town of E. Fishkill*, No. 18-1182-cv, 2018 U.S. App. LEXIS 36443 at *5-6 (2d Cir. Dec. 26, 2018) (summary order) (*quoting Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).

Plaintiff's retaliation claim fails as a matter of law based on the timeline she has set forth in the SAC. To review, the relevant timeline of alleged protected activities and corresponding events is as follows: (1) on May 5 and 18, 2017, Derek Phillips, an Assistant

Principal at Queens Academy, issued Plaintiff disciplinary letters to file (*see* SAC at ¶¶ 30-31); (2) on July 3, 2017, AP Phillips "denied Plaintiff the opportunity to see her file;" (*see id.* at ¶ 48); (3) on August 10, 2017, Plaintiff filed a complaint alleging discrimination and retaliation with the SDHR; (*see* SAC at ¶ 50); (4) in and around August or September 2017, both Akil and Morris left Queens Academy; (*see id.* at ¶¶ 8, 15-16); (5) notwithstanding the SDHR complaint of discrimination filed a month earlier, and the issues she had with Queens Academy administrators other than Morris and Akil (i.e. AP Phillips) during the 2016-2017 school year, Plaintiff acknowledges in the SAC that she had "no issues with the same DOE administrators," ostensibly including AP Phillips, during 2017-2018 school year, and received a "Satisfactory" overall rating; (*id.* at ¶¶ 57-58); (6) after filing of the instant lawsuit on June 1, 2018, beginning at some point in November 2018, Plaintiff began again receiving disciplinary letters to file, and at some point thereafter, either during 2018 or 2019, received two "poorly rated observations," all of which she received from the same "school administration" present during the prior years. *See id.* This timeline highlights the flawed nature of Plaintiff's retaliation claim, namely, that she cannot establish causation because of the significant time gaps and the fact that she received alleged employment actions of similar magnitude both before and after the protected activity.

First, because Plaintiff does not allege any direct evidence of retaliatory animus (i.e. comments by these unidentified "DOE administrators"), Plaintiff must demonstrate that the protected activity was closely followed in time by the alleged adverse actions. *See Cifra v General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001). District courts in the Second Circuit have consistently held that "a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Walcott v. Cablevision*, Case No. 10-CV-2602 (DLI) (LB) 2012 U.S. Dist. LEXIS 137511, at *42

(E.D.N.Y. Sept. 24, 2012) (collecting cases); *see also Brown v. City of New York*, 622 Fed. Appx. 19, 20 (2d. Cir. 2015) (finding time periods including two months were "too attenuated to establish that the alleged adverse employment actions were the product of retaliatory motive"); *see also Murray v. Visiting Nurse Servs. Of N.Y.*, 528 F.Supp.2d 257, 275 (S.D.N.Y. 2007) (courts "have consistently held that the passage of two to three months between the protected activity and the adverse employment action *does not allow for an inference of causation*") (emphasis added). Plaintiff's largely unclear timeline renders it nearly impossible to determine the precise time between the filing of her lawsuit – June 1, 2018 – and the first actual adverse employment action – as she claims they "started" in November 2018, but provides they allegedly occurred throughout the school year. *See* SAC at ¶ 58. At a minimum, the least amount of time between when Plaintiff filed the lawsuit and the first alleged adverse action would be five months, rendering it insufficient to establish causation.

Even if the Court were to find that Plaintiff established causation through temporal proximity, her retaliation claim must fail because the SAC claims that she incurred similar actions both prior to and following her June 1, 2018 lawsuit. Indeed, "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise'" *Nicastro v. N.Y. City Dep't of Design & Constr.*, 125 F. App'x 357, 358 (2d Cir. 2005) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). As discussed *supra*, Plaintiff received disciplinary letters to file and admonishments by administration officials *other than* Akil and Morris prior to her engagement in any protected activity and alleged receipt of similar employment actions after filing June 1, 2018 lawsuit. *See supra*. Thus, because Plaintiff claims to have incurred comparable employment actions both before and after the alleged

protected activity, her retaliation claim cannot be sustained.  *See e.g. Hernandez*, No. 18-cv-1808 (LGS), 2018 U.S. Dist. LEXIS 184906 at *11-13 (no causal connection where plaintiff received comparable discipline both before and after the protected activity).

Additionally, it need only be noted that despite filing the SDHR charge in August 2017 – another instance of alleged protected activity – she claims that she had "no issues" with the new administration during the 2017-2018 school year, but then contends that these issues again arose during the 2018-2019 year – more than a year after the SDHR filing.  Because "[i]t is difficult to impute bias against a plaintiff in a protected class where the person making the adverse employment decision also made a recent favorable employment decision regarding the plaintiff," (*Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, (E.D.N.Y. 2009) (*citing Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997), *cert. denied*, 525 U.S. 936 (1998)), her claim of retaliation is further weakened by the acknowledgment of positive evaluations during the 2017-2018 school year from the school administration.  *See* Am. Compl. at ¶¶ 78-79. Plaintiff apparently wants this Court to believe that immediately after she filed her SDHR Charge, she had "no issues" at the school for an entire academic year, culminating in a satisfactory evaluation, (*see id.* at ¶ 78), but then, beginning several months into the following academic year, retaliation for her filing occurred.  *See id.* at ¶ 79.  This position is untenable.  *See Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, (E.D.N.Y. 2009) (*citing Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997), *cert. denied*, 525 U.S. 936 (1998)); *see also Birch v. City of New York*, 184 F.Supp.3d 21, 32 (E.D.N.Y. 2016) ("Indeed, it is the rare case that finds a plausible claim when nearly a year rather than months have gone by.  Retaliatory intent does not sit patiently like a spider in a web hoping that prey will wander in; the daily employment relationship provides for constant opportunities and temptations to retaliate for protected activity

if an employer is of a mind to do so").  On account of all the foregoing, Plaintiff's retaliation claims under Title VII and the ADEA fail as a matter of law, and should be dismissed, with prejudice.

**POINT V**

**PLAINTIFF FAILS TO ESTABLISH FIRST AMENDMENT RETALIATION**

A public employee bringing a First Amendment retaliation claim must demonstrate that: (1) the speech at issue was made as a citizen on matters of public concern; (2) she suffered an adverse employment action; and (3) the speech was "at least a substantial or motivating factor in the adverse employment action." *Garcia v. Hartford Police Dept*, 706 F.3d 120, 129-130 (2d Cir. 2013) (internal quotation marks, modification brackets, and citations omitted).  In assessing whether a matter is of public concern, the Court must determine whether the employee's speech was made to redress a personal grievance or whether it had a broader public purpose.  *See Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008).  "[S]peech made 'pursuant to' a public employee's job duties," is "'speech that owes its existence to a public employee's professional responsibilities,'" and is not protected by the First Amendment.  *Weintraub v. Board of Education of the City School District of the City of New York*, 593 F.3d 196, 201 (2d Cir. 2010) (quoting *Garcetti v. Ceballos*, 547 U.S. 410 at 421 (2006)).  Importantly, "If the plaintiff spoke as a public employee, or if the subject of the plaintiff's speech was not a matter of public concern, that is the end of the matter."  *Payson v. Bd. of Educ. of Mt. Pleasant Cottage Sch.*, 2017 U.S. Dist. LEXIS 154296 at *40 (S.D.N.Y. Sept. 20, 2017).

But for two minor additions to the SAC (*see* SAC at ¶¶ 24, 62), Plaintiff essentially concedes the meritless nature of her First Amendment retaliation claims.  Importantly, Plaintiff failed to even attempt to cure the fatal deficiencies that plagued the Amended

Complaint, namely, that, as the Court held, (1) three[9] [of the grievances ostensibly at issue] "clearly [do] not constitute speech as a private citizen;" (2) Plaintiff's grievance pertaining to parking privileges did not constitute speech as a matter of public concern, as it was admittedly made in Plaintiff's purported capacity as a union representative (*see* Decision, at 18); and (3) Plaintiff's grievance pertaining to the lack of mandated services for students with special needs was made in her capacity as a public employee, not a private citizen.  *See* Decision at 19.  Other than conclusorily arguing in response to the Court's Decision that the "grievances regarding special needs violations at the school filed on behalf of students touch upon matters of public concern," Plaintiff did nothing to transform this activity into protected **First Amendment** speech.  *See* SAC at ¶ 24.

Thus, for the same reasons argued in Defendant's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint and Reply Memorandum in Further Support (ECF Dkt. Nos. 20 and 27), and those held by Your Honor in the March 31, 2019 Decision (*see* Dkt. No. 28 at 18-20), Plaintiff's **First Amendment** retaliation claims are still deficient as a matter of law, and should be dismissed, with prejudice.

## POINT VI

**PLAINTIFF'S SHRL AND CHRL CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENTS IN EDUCATION LAW §3813(1)**

Section 3813(1) of the Education Law requires that a notice of claim be filed before any suit may be brought against the DOE or its officers.  *See* N.Y. Education Law §

---

[9] The Court listed these three grievances: "the February 1, 2017 grievance regarding the administration's failure to file an "Occurrence Report," the May 1, 2017 grievance for 'improper post-evaluiation procedures relating to observations,' and the May 23, 2017 grievance relating to a disciplinary letter."  *See* Decision, Dkt. No. 28 at 18 *citing* Am. Compl. at ¶¶ 20-22; *compare with* SAC at ¶¶ 20-22 (alleging the same three grievances).

3813(1). "Compliance with Section 3813(1) is a prerequisite for a suit naming a school district or its officers, and a plaintiff's failure to plead compliance with New York's notice of claim requirements mandates dismissal." *Lewinter v. New York City Dep't of Educ.*, 2010 U.S. Dist. LEXIS 68493, 7 (S.D.N.Y. July 9, 2010), *citing PBS Building Systems, Inc. v. City of New York*, 1996 U.S. Dist. LEXIS 15006, 3 (S.D.N.Y. Oct. 8, 1996) ("The appropriate remedy for failure by the plaintiff to comply with a statutory notice of claim requirement is dismissal of the action, even if the claim is meritorious."). "Failure to satisfy [§ 3813's] requirements is 'fatal' to a claim filed against a school board under state or city law, regardless of whether the claim is brought in state or federal court." *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 360 (E.D.N.Y. 2013).

This Court rejected Plaintiff's SHRL and CHRL claims based on Plaintiff's failure to file a notice of claim. *See* Decision, at 7-8. Consequently, while her SHRL and CHRL claims are subject to dismissal on the grounds set forth in Points II and III, her SHRL and CHRL are also subject to dismissal on this ground.

## CONCLUSION

For the foregoing reasons, Defendant DOE respectfully requests that the Court grant its motion to dismiss the Second Amended Complaint in its entirety, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              June 4, 2019

                                    **ZACHARY W. CARTER**
                                    Corporation Counsel of the
                                    City of New York
                                    Attorney for Defendant DOE
                                    100 Church Street, Room 2-184
                                    New York, New York 10007
                                    (212) 356-2428
                                    epiercey@law.nyc.gov

                                    By:        /s/
                                          _____
                                          Evan M. Piercey
                                          Assistant Corporation Counsel

Donald C. Sullivan
Evan M. Piercey,
Of Counsel.

26