```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARGUERITE BAGAROZZI,

            Plaintiff,

       v.                              18 CV 4893 (RA)

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

            Defendants.

------------------------------x
                                       New York, N.Y.
                                       November 12, 2019
                                       2:35 p.m.
Before:

                    HON. RONNIE ABRAMS,

                                       District Judge

                         APPEARANCES

GLASS & HOGROGIAN LLP
     Attorneys for Plaintiff
BY:  BRYAN D. GLASS

GEORGIA M. PRESTANA, Corporation Counsel
For the City of New York
     Attorneys for Defendants
BY:  LEO T. ERNST
```

            (Case called)

            THE DEPUTY CLERK:  Counsel, please state your appearances.

            MR. GLASS:  Good afternoon.  Brian Glass for Plaintiff Marguerite Bagarozzi.

            THE COURT:  Good afternoon to both of you.

            MR. ERNST:  Good afternoon, your Honor.  Leo Ernst, Corporation Counsel, for Defendant Department of Education.

            THE COURT:  Good afternoon to you as well.

            So I scheduled today's conference to discuss the Department of Education's motion to dismiss plaintiff's second amended complaint.  No party requested oral argument, and I'm prepared to rule.  And I thought, for efficiency, I would do so orally.  You'll have the transcript, but that way we can move forward with the case promptly.

            In short, I'm going to grant defendant's motion to dismiss in part and deny it in part.  Specifically, I'm going to grant the motion as to Counts One, Two, and Six and deny it as to Counts Three, Four, and Five.

            I'm going to assume the parties' familiarity with the facts alleged in the complaint which are accepted as true at this stage and construed in the light most favorable to plaintiff.

            The Court's opinion of March 31, which granted the Department of Education's first motion to dismiss, described

the relevant facts in detail. So I'm not going to do that again here.

I will though note for the record that the second amended complaint includes a new claim of retaliation under Title VII. Plaintiff alleges that after she filed her amended complaint in June of 2018, the DOE retaliated against her in two ways.

First, she received "an unprecedented barrage of disciplinary notices," and that's a quote from paragraph 58 of the complaint. And second, she received two poorly rated observations from the school administration from the 2018/'19 school year. That's from the same paragraph.

So I'll just briefly state the legal standard for the record. To survive a defendant's motion to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." That's a quote from *Twombly* at page 570.

"A claim has facial plausibility when it contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678.

As an initial matter, the Court dismisses this action without prejudice against the two individual Defendants Akil and Morris because plaintiff has failed to serve them pursuant to Federal Rule of Civil Procedure 4.

1        For a court to have personal jurisdiction over a
2   defendant, the defendant must be properly served.  Under
3   Rule 4(m), a plaintiff has 90 days from filing a complaint,
4   absent an extension of time, to serve a defendant.
5        The Court previously dismissed plaintiff's action
6   against the individual defendants without prejudice because
7   they were not served within the 90 days since the amended
8   complaint was filed.
9        But in spite of that holding, plaintiff has not served
10  the second amended complaint on those two individual
11  defendants.  On June 25, in her opposition brief to the DOE's
12  motion to dismiss, plaintiff conceded that she had not yet done
13  so, writing that she's in the process of serving and locating
14  the individual defendants who have left the school and will
15  file affidavits with the Court upon successful service of them.
16  However, to date, she has not filed that affidavit, nor
17  requested an extension for good cause.
18       So turning first to plaintiff's First Amendment
19  retaliation claim, I'll note that it's nearly identical to the
20  one raised in her first amended complaint which the Court
21  dismissed.  Plaintiff alleges that she was retaliated against
22  for filing five grievances while serving as a union surrogate.
23       To prove a First Amendment retaliation claim, the
24  plaintiff must show that the speech at issue was made as a
25  citizen on matters of public concern rather than as an employee

on matters of personal interest; two, she suffered an adverse employment action; and three, the speech was at least a substantial or motivating factor in the adverse employment action. *Garcia v. Hartford Police Department*, 706 F.3d at 129 to 130.

As the Court previously held in granting the DOE's first motion to dismiss, plaintiff has failed to plausibly allege that any of the five grievances satisfied these requirements.

Her minor revisions to the second amended complaint do not alter this holding. Nor does the Public Employment Relation Board's December 2018 decision affirming the ALJ's decision that plaintiff was retaliated against because that legal decision is not binding on this Court. See e.g. *Buttaro v. City of New York*, 2016 WL 4926179.

As discussed in detail in the prior opinion, her three 2017 grievances did not constitute speech as a private citizen as that term is defined in the law because firing them were "standard and anticipated actions in furtherance of her core duty of teaching." That's a quote from *Hagan v. City of New York*, 39 F.Supp.3d at 511.

Similarly, the December 1, 2016, grievance regarding the lack of mandated services for students with special needs also did not constitute speech as a private citizen.

Numerous courts in this circuit have addressed similar

factual scenarios where teachers spoke out about the needs of disabled students in their schools and held that this speech falls within the teachers' professional duties and is thus unprotected. See e.g. *Agyeman v. Roosevelt Union Free School District*, 254 F.Supp.3d at 535 to 536 (collecting cases).

Plaintiff's conclusory allegation in paragraph 24 that the grievances regarding special needs violations at the school filed on behalf of students touch upon matters of public concern does not change this analysis.

Finally, even if plaintiff's November 14, 2016, grievance regarding parking privileges constituted speech as a private citizen, it did not touch on a matter of public concern.

Parking privileges are not a public concern simply because plaintiff made a grievance on behalf of the staff as a whole. Rather, grievances like this one, which relate to an employee's dissatisfaction with the conditions of his employment do not touch on matters of public concern. See *Sousa v. Roque*, 578 F.3d at 174.

Next, plaintiff alleges that she was discriminated against due to her age and race because, broadly speaking, similarly situated, younger, non-white teachers at the school had been treated better than plaintiff.

Under the ADEA and Title VII, plaintiff must plausibly allege that: One, she is a member of the protected class

and/or age group; two, she is qualified for the position; three, she suffered an adverse employment action; and four, the circumstances give rise to an inference of discrimination. See the *Vega* case, 801 F.3d at 83.

A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. *Galabya v. New York City Board of Education*, 202 F.3d at 640.

Regarding causation, under Title VII, plaintiff is required to show that race was a substantial motivating factor contributing to the employee's decision to take the action, whereas the ADEA claim requires plaintiff to allege that age was the but-for cause of the employer's adverse action, *Vega* at 85 to 86. Here, the DOE does not dispute that plaintiff was a member of the protected class and age group and that she's qualified for her position.

I first find that the second amend the complaint which details largely the same actions as the first amended complaint plausibly alleges that she suffered adverse employment actions. As this Court's prior opinion explained, the majority of plaintiff's allegations do not plausibly constitute adverse actions because they were not more disruptive than a mere inconvenience or an alteration of job responsibilities, *Terry v. Ashcroft*, 336 F.3d at 138.

These alleged actions include that plaintiff: One,

was not provided advance notice of meetings and observations; two, received disciplinary letters and conferences; three, was not permitted to park closer to the school; four, was denied access to her classroom and personnel file; and five, was not invited to two school events.

Plaintiff, however, has plausibly alleged the following three adverse employment actions: One, the loss of wages due to losing per-session and tutoring opportunities that were either unposted and given to others or that she was unable to accept because Section 3020-a charges were pending; two, the initiation of Section 3020-a disciplinary charges seeking her termination; and three, the resulting penalties, monetary and nonmonetary, that she incurred as a result of the Section 3020-a charges.

Each of these caused plaintiff a material loss of benefits. *Terry* at 138. Moreover, being denied per-session or overtime opportunities may constitute an adverse action. See *Reiss v. Hernandez*, 2019 WL 4688639, at 6.

Next, the Court considers whether the circumstances give rise to an inference of discrimination. *Vega* at 83. Plaintiff relies on evidence of disparate treatment, in other words, how she was treated compared to her similarly situated coworkers, to establish an inference of discrimination. *Smith v. Xerox*, 196 F.3d at 370.

To successfully rely on this evidence, plaintiff must

plausibly allege the existence of at least one comparator who was more favorably treated despite being similarly situated to the plaintiff in all material respects.

Generally a comparator allegation should describe who those people are, what their responsibilities were, how their workplace conduct compared to plaintiff's, or how they were treated. *Henry v. New York City Health & Hospital Corporation*, 18 F.Supp.3d at 408.

Unlike plaintiff's first amended complaint, the second amended complaint identifies specific people. However, only two of the comparator allegations are relevant to the conduct that plausibly constitutes adverse employment actions.

In paragraph 54, plaintiff alleges that one non-white teacher, Zakir Islam, and one younger teacher, Irene Arholekas, fell at school and requested time off. But, unlike plaintiff, were not disciplined with Section 3020-a charges.

This comparator allegation is insufficiently specific to produce an inference of discrimination. Plaintiff does not say whether the teachers were similarly situated in the workplace or explain how the circumstances of their falls were similar to hers.

More significantly, Section 3020-a charges were only brought against plaintiff after an investigation into her fall and time-off request. But plaintiff does not say whether Islam and Arholekas were also investigated after their leave request,

1   which makes it unclear how similar their circumstances were to
2   hers.
3           However, plaintiff's second comparator allegation is
4   sufficiently specific.  She alleges that Yesenia Leon, a
5   younger, non-white teacher, who was plaintiff's co-teacher of
6   the same class, was given unposted per-session opportunities
7   during the 2016/2017 school year.
8           By contrast to the previous allegation, this is
9   sufficiently specific because plaintiff has identified a
10  specific person who did not belong to her protected class and
11  was in a substantially similar work position as plaintiff.
12          She also pinpointed when Leon received the benefit
13  that plaintiff did not.  Thus, this comparator allegation is
14  not too speculative as the DOE contends.  Accordingly, because
15  there is a reasonably close resemblance of the facts and
16  circumstances of plaintiff and comparator's cases, plaintiff
17  has established an inference of discrimination under Title VII.
18  See, e.g. *Carby v. Holder*, 2013 WL 3481722 at 9.
19          This is sufficient evidence for a reasonable jury to
20  conclude by a preponderance of the evidence that race was a
21  motivating factor for any employment practice.  *Desert Palace*
22  *v. Costa*, 539 U.S. at 101.
23          But as to the ADEA, this comparator allegation is
24  insufficient to establish a discriminatory inference.  Although
25  plaintiff has pointed to a specific employee in a similar work

position, plaintiff does not say anything more than that Leon was a younger teacher.

Without anything else that might buttress plaintiff's claim of age discrimination, such as ageist comments, she has offered no more than a vague, conclusory assertion that a younger employee was treated differently.

Courts in this circuit have consistently held that an ADEA claim based on comparator evidence is insufficient to withstand a motion to dismiss when allegations lack the specificity required to be more than an unadorned accusation. *Bohnet v. Valley Stream Union Free School District*, 30 F.Supp.3d at 180 to 81.

Accordingly, plaintiff's Title VII claim survives the DOE's motion to dismiss, but plaintiff's ADE claim does not.

In addition, plaintiff has not plausibly alleged a claim of hostile work environment under Title VII.  To establish a hostile work environment claim, plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

A court must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance and whether it

reasonably interferes with an employee's work performance.

Plaintiff's allegations are insufficient for a reasonable person to find her work environment hostile or abusive. *Harris v. Forklift Systems*, 510 U.S. at 21.

Her claim relies on the fact that she was not given advance notice of meetings or observations, received disciplinary letters, and was denied parking closer to the school, was denied per-session tutoring and opportunities, and had Section 3020-a charges brought against her.

I will note that for the reasons discussed below, I will not consider plaintiff's allegations of retaliatory conduct that took place after she filed the complaint in federal court.

Altogether, these alleged incidents do not support a finding of a hostile work environment that is pervasive or severe. *Fleming v. MaxMara*, 371 F.App'x at 119.

Moreover, the fact that plaintiff's Title VII race discrimination claim survives the DOE's motion to dismiss does not change this analysis because usually a single, isolated instance of harassment will not suffice to establish a hostile work environment unless it was extraordinarily severe. *Howley v. Town of Stratford*, 217 F.3d at 153.

As an initial matter, turning now to the New York State and New York City Human Rights Law allegations, the second amended complaint alleges enough for the Court to hold

that plaintiff's New York state and New York City Human Rights Law claims are not procedurally barred.

Plaintiff alleges that she provided a written, verified claim upon which this action is founded that was served on the governing arm of the school district within three months of several of the adverse actions she was suffering, including receipt of 3020-a charges, her reassignment, and denial of per-session work for the summer of 2017.

This is enough to find that plaintiff's complaint filed with the New York State Division of Human Rights substituted for a notice of claim because it put the school district on notice of the precise claims and thus satisfies New York Education Law Section 3813(1)'s notice of claim requirements.

As to plaintiff's New York State Human Rights Law claim, the Court analyzes this under the same legal framework as Title VII and the ADEA.  Therefore, applying the foregoing analysis of plaintiff's Title VII and ADEA claims, plaintiff's New York State Human Rights Law claim as to her wage discrimination survives the DOE's motion to dismiss, but her age discrimination claim, for the reasons I stated earlier, does not.

As to plaintiff's New York City Human Rights Law claim, this must be analyzed separately from the federal and state law claims.  See the *Mihalik* case, 715 F.3d at 109.

The city law is construed more broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.  Id.  Because plaintiff has plausibly alleged differential treatment of some degree based on a discriminatory motive, this is sufficient for her age and race claims under the New York City Human Rights Law to withstand the DOE's motion to dismiss.

Finally, plaintiff added a cause of action for retaliation under Title VII in her second amended complaint. She alleges that in November 2018, months after she filed her amended federal complaint, new Department of Education administrators began to retaliate against her by filing disciplinary notices and giving her poorly rated observations.

The Court must dismiss this claim, however, because plaintiff has not exhausted her administrative remedies as to these allegations.  It is well-established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court.

To do so, a plaintiff must first raise a claim before an investigating agency such as the EEOC or SDHR.  Nonetheless, even if a plaintiff does not do so, a court may still find the administrative remedies exhausted if the claim was reasonably related to the discrimination about which she had filed an earlier charge with the agency.  *Fowlkes*, 790 F.3d at 386.

To be reasonably related, the conduct complained of

must fall within the scope of the agency investigation which can reasonably be expected to grow out of the charge that was made. The central question is whether the complaint filed with the agency gave it adequate notice to investigate the allegations.

Plaintiff filed a complaint in August of 2017 with the EEOC and SDHR. This did not and could not have included her current allegations of retaliation because those are alleged to have occurred almost a year and a half after she filed that agency complaint.

Moreover, these retaliation allegations are not reasonably related to what plaintiff alleged in her agency complaint. It is true that plaintiff checked the box for retaliation on that complaint. However, that stemmed from entirely different circumstances, such as her union activity, than what she now alleges.

Not only are the present retaliation allegations said to have occurred nearly a year and a half after she filed that agency complaint, but plaintiff alleges that she was retaliated against by new DOE administrators.

She even acknowledges the Defendants Akil and Morris were no longer working at the school when this alleged retaliation began in November 2018. Thus, this new allegation is factually distinct and did not provide the agency with an opportunity to notify the prospective defendants and seek

conciliation, as is required for allegations to be reasonably related.

Accordingly, the Court will not consider this claim presented for the first time in a federal complaint. *Conce v. New York State Unified Court System*, 2011 WL 4549386 at 9.

So, in sum, the Court dismisses Counts One, the First Amendment retaliation claim; Two, the ADEA claim; and Six, the Title VII retaliation.  But Counts Three, the Title VII race discrimination; Four, the New York State Human Rights Law; and Five, the New York City Human Rights Law, survive the DOE's motion to dismiss.

So that's my ruling.  Thank you for your patience today.  I just thought this was a more efficient way of moving this forward.

Are you prepared to talk about a discovery schedule today?

Do you want to meet and confer and submit a proposed case management plan to me at this point?  I understand no discovery has begun.

Is that right?

MR. GLASS:  That's correct.

MR. ERNST:  That's correct.

MR. GLASS:  There are some procedural postural things that have changed because it's an ongoing work situation.  So if the city is amenable, maybe a mediation session would make

1   some sense.

2               THE COURT:  I'm happy to refer that.

3               Mr. Ernst, are you willing to attend a mediation?

4               MR. ERNST:  Sure.  I haven't had a chance to speak

5   with the client after the decision on the motion obviously, but

6   I can imagine there is no harm in mediating.

7               THE COURT:  Why don't we do this:  Why don't you send

8   me a joint letter within one week of today.  And you can either

9   say that you'd like to mediate.  And if you'd like to mediate,

10  you can tell me if you have a preference for the mediation, the

11  Southern District Mediation Program or the magistrate judge, if

12  you have a preference for that.  Or if you don't have a

13  preference, just leave it to me, and I'll do whichever I think

14  will happen quicker.

15              Mr. Ernst, if you're taking, for example, a no-pay

16  position and it would just be a waste of everyone's time to go

17  to mediation, why don't you jointly propose a case management

18  plan to me.

19              It's on the court website, what my standard template

20  is.  And you can just propose that to me and let me know if you

21  think there is a need to meet again in a conference to discuss

22  that.  Or if I agree with the dates contained therein, I'll

23  sign off on it.

24              MR. ERNST:  Okay.  If we are proceeding to mediation,

25  provided I'm not coming in with a no-pay position, would we

1  still be proceeding with discovery?  Or would we put that on
2  hold?
3         THE COURT:  Just to save time and money, I'm willing
4  to hold off on it for a month or two to let you focus your
5  energy and your time and efforts on mediation.  I'm happy to
6  hear you out on that.
7         MR. ERNST:  I would prefer that, your Honor, to go
8  through the mediation and then have discovery commence and
9  submit a joint plan after the mediation, if unsuccessful.
10         THE COURT:  Mr. Glass, does that make sense to you as
11  well?
12         MR. GLASS:  Yes.
13         THE COURT:  So why don't we do that.  As I said, I
14  won't enter a case management plan.  I'll wait to hear from you
15  on the mediation.  If I do order a mediation, I'm going to want
16  to get a status letter within a week of the mediation just to
17  let me know is this case proceeding further or do you think
18  settlement is a real possibility.
19         Okay?  All right.  Thank you again for your patience
20  today.  Of course you can get a copy of the transcript from the
21  court reporter.  Have a nice afternoon.
22         MR. ERNST:  Thank you, your Honor.
23         MR. GLASS:  Thank you, your Honor.
24         (Adjourned)
25